**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ALLEN ROBINSON

*Plaintiff;*

v.

WAYNE FRANO, VINCENT CELIO, CARL BRASIC, TIMOTHY MCDERMOTT, JOHN FOLINO, JR., PATRICK CONROY, DAVID ZELIG, PETER BABICH, and the CITY OF CHICAGO

*Defendants.*

No.23 CV 02724

Honorable Martha M. Pacold

Magistrate Judge Heather K. McShain

**JURY TRIAL DEMANDED**

<u>**DEFENDANT OFFICERS' ANSWER TO PLAINTIFF'S COMPLAINT**</u>

NOW COME Defendants, WAYNE FRANO, VINCENT CELIO, CARL BRASIC, TIMOTHY MCDERMOTT, JOHN FOLINO, JR., PATRICK CONROY, DAVID ZELIG, and PETER BABICH (collectively "Defendant Officers") by and through their counsel, Steven B. Borkan, Timothy P. Scahill, Emily E. Schnidt, Misha Itchhaporia, and Kathryn E. Boyle of BORKAN & SCAHILL, LTD. and for their Answer, state as follows:

**INTRODUCTION**

1.     Plaintiff Allen Robinson was wrongfully convicted of a 2008 murder and sentenced to 55 years in prison. He spent nearly 14 years unjustly imprisoned for a crime he did not commit before he was exonerated.

**ANSWER:     Defendant Officers admits Plaintiff was convicted for the December 3, 2008 shooting death of Christopher Hanford, that he was sentenced to 55 years. Defendant Officers lack knowledge sufficient to admit or deny the length of Plaintiff's incarceration. Defendant Officers deny the remaining allegations of Paragraph 1.**

1

2.      Plaintiff had nothing to do with the crime and he has always maintained his innocence.

**ANSWER:      Defendant Officers lack knowledge sufficient to admit or deny whether Plaintiff "has always maintained his innocence." Defendant Officers deny the remaining allegations of Paragraph 2.**

3.      Instead, Plaintiff's arrest, prosecution, and conviction were based on shocking misconduct by Defendant Chicago Police Officers Wayne Frano, Vincent Celio, David Zelig, Timothy McDermott, Carl Brasic, Patrick Conroy, John Folino, Jr., and Peter Babich.

**ANSWER:      Defendant Officers deny the allegations of Paragraph 3.**

4.      These Defendants built an entirely false case against Plaintiff based on coerced witness testimony.

**ANSWER:      Defendant Officers deny the allegations of Paragraph 4.**

5.      No physical or forensic evidence of any kind connected Plaintiff to the murder.

**ANSWER:      Defendant Officers deny the allegations of Paragraph 5.**

6.      Defendants also suppressed exculpatory evidence which Plaintiff could have used to defend himself against the fabricated evidence.

**ANSWER:      Defendant Officers deny the allegations of Paragraph 6.**

7.      Defendants also coerced individuals into testifying against Plaintiff.

**ANSWER:      Defendant Officers deny the allegations of Paragraph 7.**

8.      For example, Defendants pressured an individual to falsely identify Plaintiff by threatening to pursue drug charges against him if he did not. That individual became the state's key eyewitness at trial.

**ANSWER:      Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and**

indefinite. **Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 8.**

9.      As a result of these fabrications and this suppression of evidence, Plaintiff was wrongfully convicted of murder. He spent nearly 14 years in prison for a crime he did not commit.

**ANSWER:      Defendant Officers deny the allegations of Paragraph 9.**

10.      The Defendants' misconduct resulting in Plaintiff's wrongful conviction was part of a pattern of gross misconduct perpetrated by the Chicago Police Department.

**ANSWER:      Defendant Officers deny the allegations of Paragraph 10.**

11.      In May 2022, after a hearing on Plaintiff's post-conviction petition, Plaintiff's conviction was vacated and all charges against him were dropped. Nearly 14 years after his terrible ordeal began, Robinson was finally exonerated.

**ANSWER:      Defendant Officers admit that on May 2, 2022, Judge Mary Brosnahan granted Plaintiff a new trial based on ineffective assistance of counsel. Defendant Officers lack knowledge sufficient to admit or deny whether the charges against Plaintiff were dropped. Defendants deny the remaining allegations of Paragraph 11**

12.      Plaintiff now seeks justice for the harm that the Defendants have caused and redress for the loss of liberty and the terrible hardship that he has endured and continues to suffer as a result of the Defendants' misconduct.

**ANSWER:      Defendant Officers deny the allegations of Paragraph 12.**

**Jurisdiction and Venue**

13.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the Defendants' deprivation of Plaintiff's rights secured by the U.S. Constitution.

**ANSWER:** **Defendant Officers admit Plaintiff's Complaint purports to assert claims pursuant to 42 U.S.C. § 1983. Defendant Offices deny liability to Plaintiff for any and all claims asserted in the Complaint.**

14. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state law claim pursuant to 28 U.S.C. § 1367.

**ANSWER:** **Defendant Officers admit Plaintiff's Complaint purports to assert claims pursuant to federal statute that seeks to invoke the jurisdiction of this court. Defendant Officers admit 28 U.S.C. §1367 provides for supplemental jurisdiction over certain claims, and that Plaintiff's Complaint includes "state law" claims that seek to invoke the supplemental jurisdiction of this court. Defendant Offices deny liability to Plaintiff for any and all claims asserted in the Complaint.**

15. Venue is proper under 28 U.S.C. § 1391(b), as the majority of the Defendants reside in this judicial district and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

**ANSWER:** **Defendant Officers admit venue is proper in the United States District Court, Northern District of Illinois, for the claims asserted in Plaintiff's Complaint. Defendant Officers deny liability to Plaintiff for any and all claims in the Complaint.**

**Parties**

16. Plaintiff Allen Robinson is a 35-year-old Black man born and raised in Chicago. He is the father of a 16-year-old daughter and two 13-year-old sons.

**ANSWER:** **Upon information and belief, Defendants admit the allegations of Paragraph 16.**

17. At all relevant times, Defendants Wayne Frano, Vincent Celio, Carl Brasic, Timothy McDermott, John Folino, Jr., David Zelig, Peter Babich, Patrick Conroy, and other unknown law

enforcement officers were police officers in the Chicago Police Department acting under color of law and within the scope of their employment for the City of Chicago.

**ANSWER:** **Defendant Officers admit Defendant Officers were acting under color of state law and as employees, agents, or representatives of the City of Chicago and within the scope of their employment at all times relevant hereto. Defendant Officers deny they committed any acts complained of herein and deny they are liable to Plaintiff and deny any remaining allegations of Paragraph 17.**

18.     Defendant City of Chicago is an Illinois municipal corporation and is and/or was the employer of each of the Defendant Officers. The City of Chicago is liable for the acts of the Defendant Officers, which were undertaken within the scope of their employment with Chicago.

**ANSWER:** **Defendant Officers admit the City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois. Defendant Officers admit that at all times relevant hereto they were employed by the City of Chicago. Defendant Officers deny the remaining allegations contained in Paragraph 18 because those allegations constitute a legal conclusion and contain a vague, incomplete and/or inaccurate statement of the law and deny any allegations of wrongdoing or other misconduct alleged herein.**

19.     Each of the individual Defendants is sued in their individual capacity unless otherwise noted.

**ANSWER:** **Defendant Officers admit Plaintiff's Complaint seeks liability against them in their individual capacity but deny any allegation of wrongdoing and deny liability to Plaintiff.**

### The Crime

20.     On the night of December 3, 2008, Christopher Handford was tragically shot and killed in the Austin neighborhood of Chicago.

**ANSWER:**      **Defendant Officers admit the allegations of Paragraph 20.**

    21.     Handford died from his wounds.

**ANSWER:**      **Defendant Officers admit the allegations of Paragraph 21.**

<b>Plaintiffs Absolute Innocence</b>

    22.     Plaintiff Allen Robinson had absolutely nothing to do with this shooting.

**ANSWER:**      **Defendant Officers deny the allegations of Paragraph 22.**

    23.     At the time of the shooting, Mr. Robinson was picking up his mother from work.

**ANSWER:**      **Defendant Officers deny the allegations of Paragraph 23.**

<b>Defendants' Initial Investigation</b>

    24.     On the night of December 3, Defendants arrived at the crime scene.

**ANSWER:**      **Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit certain Defendant Officers arrived at the crime scene on December 3.**

    25.     Defendants canvassed the area and walked through the crime scene with Defendant Carl Brasic, the police forensic investigator.

**ANSWER:**      **Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers**

6

admit certain **Defendant Officers canvassed the area and walked through the crime scene with Defendant Brasic.**

26.     No witnesses or forensic evidence pointed to any suspects. Defendants set up a buy-bust to get one.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit detectives set up a buy-bust. Defendant Officers deny the remaining allegations of Paragraph 26.**

27.     In a buy-bust, an undercover officer buys drugs from an intended witness, arrests the witness, and then uses the potential charges as a means of extracting information from the witness.

**ANSWER:     Defendant Officers deny the allegations of Paragraph 27.**

28.     So began Defendants' months-long campaign of witness manipulation.

**ANSWER:     Defendant Officers deny the allegations of Paragraph 28.**

29.     The day after the shooting, Defendants set up a buy-bust and arrested an individual named Oscar Russell. Defendants brought him to Area Five Headquarters in handcuffs.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit certain Defendant Officers interviewed Oscar Russell at Area Five Headquarters.**

**Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 29.**

30.     Defendants proceeded to interrogate Russell in a locked interview room.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations that any officer interrogated Mr. Russell. Defendant Officers admit certain Defendant Officers interviewed Mr. Russell in an interview room, which, like all interview rooms at Area 5, has a lock on the door.**

31.     During the interrogation, Defendants threatened Russell that he would face extensive prison time for a drug offense if he did not identify Handford's shooter.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 31.**

32.     Defendants held Russell in the station for approximately 24 hours, without providing him with food or allowing him to sleep.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and**

indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 32.

33.     Without any reason of any kind to believe that Plaintiff had any involvement in the Handford murder, but with animosity towards Plaintiff, Defendants created a photo array that included Plaintiff and showed it to Russell.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit certain Defendant Officers showed Oscar Russell a photo array. Defendant Officers admit the photo array included a photograph of Plaintiff. Defendant Officers deny the remaining allegations of Paragraph 33.**

34.     Russell told the officers that he knew Plaintiff.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit Russell identified Plaintiff as the person who shot Christopher Handford. Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 34.**

35. Russell also named other individuals who he claimed were at the scene of the shooting.

**ANSWER:** **Defendant Officers admit the allegations of Paragraph 35.**

36. In fact, Russell had not been present at the shooting or witnessed it at all and did not know who was at the shooting.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 36.**

37. That same day, Deandre Guyton arrived at Area Five for questioning. Though Defendants had no reason to believe Guyton was a suspect, they interrogated him in a locked interview room and kept him there for eight hours.

**ANSWER:** **Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations that any officer interrogated Mr. Russell. Defendant Officers admit Deandre Guyton arrived at Area 5, that certain Defendant Officers interviewed him, and that he was not a suspect. Defendant Officers admit the interview took place in a room, which, like all interview rooms at Area 5, has a lock on the door. Defendant Officers deny the remaining allegations of Paragraph 37.**

38. Defendants presented a photo array to Guyton that included Plaintiff.

**ANSWER:** **Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant**

10

Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit certain Defendant Officers presented Mr. Guyton with a photo array that included Plaintiff.

39.    Like Russell, Guyton told police he knew Plaintiff He also recalled an argument Plaintiff had with Handford, in which Handford had stopped traffic and Plaintiff had honked his horn.

**ANSWER:    Defendant Officers admit the allegations in Paragraph 39 contains some of the information that Mr. Guyton told the police.**

40.    Defendants then pressured Guyton to view a lineup. Guyton refused, saying that he did not know who had shot Handford.

**ANSWER:    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 40.**

41.    The next day, Defendants brought in the other people Russell had named and interrogated them.

**ANSWER:    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers**

admit other individuals were questioned in Area 5 on December 5, 2008. Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 41.

42.     None of them had been present at the shooting and none of them could provide Defendants with any information about the crime.

**ANSWER:    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit other individuals were questioned in Area 5 on December 5, 2008. Defendant Officers deny that those individuals could not provide them with any information about the crime. Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 42.**

43.     Defendants released all those individuals that same day.

**ANSWER:    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit the interviewing detective released these individuals on the same day as their interview. Defendants deny the remaining allegations of Paragraph 43.**

### Defendants Coerce Witnesses into Identifying Plaintiff

44.     The case went cold for three months.

**ANSWER:    Defendant Officers deny the allegations of Paragraph 44.**

45. With mounting pressure to solve the case, Defendants invented a story implicating Plaintiff as the shooter.

**ANSWER: Defendant Officers deny the allegations of Paragraph 45.**

46. Defendant Officer Wayne Frano had had several run-ins with Plaintiff, including pulling over Plaintiff while he was driving without any reason whatsoever to believe Plaintiff was committing, had committed, or was about to commit a crime.

**ANSWER: Defendant Officers admit Defendant Frano had encountered Plaintiff on previous occasions before the December 3, 2008 shooting of Christopher Handford. Defendant Officers deny the allegations as phrased to the extent they stated Defendant Frano encountered Plaintiff after the December 3, 2008 shooting of Christopher Handford and deny the remaining allegations of Paragraph 46.**

47. Plaintiff became the perfect suspect on whom to pin the crime.

**ANSWER: Defendant Officers object to the argumentative nature of the allegations in this Paragraph. Subject to and without waiving this objection, the Defendant Offices admit that eyewitnesses had identified Plaintiff as the suspect in the Handford homicide.**

48. Defendants seized on Plaintiff's traffic argument with Handford as the motive for the shooting. They proceeded to reconduct identification procedures with witnesses they knew had not been present at the shooting to manufacture false identifications of Plaintiff as the shooter.

**ANSWER: Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant**

Officers can formulate a response, Defendant Officers state as follows: Defendant Officers denied the allegations of Paragraph 48.

49.     Defendants arrested Oscar Russell and brought him in again for questioning.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny they arrested Mr. Russell. Defendant Officers admit Mr. Russell returned to Area 5 for further interview.**

50.     Defendants again handcuffed Russell and placed him in a locked interview room, where he remained handcuffed for twelve hours, without food or sleep.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 50.**

51.     Defendants proceeded to interrogate Russell.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers**

admit that certain Defendants interviewed Mr. Russell. Defendant Officers deny they interrogated Mr. Russell and deny the remaining allegations as written in Paragraph 51.

52.     Once again, Defendants raised the specter of charging Russell for a drug offense and threatened that he would go to jail for a long time unless he identified Plaintiff.

**ANSWER:    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 52.**

53.     Defendants pressured Russell into identifying Plaintiff from a photo array and giving a false statement implicating Plaintiff

**ANSWER:    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 53.**

54.     After Russell falsely identified Plaintiff in the photo array and statement, Defendants released Russell.

**ANSWER:    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant**

Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit Mr. Russell identified a photograph of Plaintiff as Mr. Handford's shooter and provided a written statement to ASA Andy Dalkin and Detective McDermott. Defendant Officers deny holding Mr. Russell in custody and therefore deny the remaining allegations as written Paragraph 54.

55.     That same night, Defendants arrested Guyton as part of another buy-bust.

**ANSWER:**    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term **"Defendants"** without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit gang enforcement officers contacted certain Defendant Officers regarding Mr. Guyton. Defendant Officers deny arresting Mr. Guyton and therefore deny the remaining allegations as written in Paragraph 55.

56.     Defendants interrogated Guyton again for hours, from night until morning.

**ANSWER:**    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term **"Defendants"** without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit that certain Defendants interviewed Mr. Guyton. Defendant Officers deny they interrogated Mr. Guyton and deny the remaining allegations as written in Paragraph 51.

57.     Defendants similarly threatened Guyton, as they had Russell, if Guyton did not identify Plaintiff.

16

**ANSWER:     Defendant Officers deny the allegations of Paragraph 57.**

58.     This time, when presented with the photo array, Guyton falsely identified Plaintiff as the shooter.

**ANSWER:     Defendant Officers admit Mr. Guyton identified Plaintiff as the shooter in a photo array. Defendant Officers deny the remaining allegations of Paragraph 58.**

59.     Police then pressured Guyton to provide a witness statement implicating Plaintiff. Guyton refused and wrote a truthful statement about not seeing who shot Handford.

**ANSWER:     Defendants deny the allegations of Paragraph 59.**

60.     To shore up the case against Plaintiff, Defendants showed a photo array to Defendant Frano, who had previously and repeatedly pulled over Plaintiff while Plaintiff was driving with no basis.

**ANSWER: Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit Defendant Frano viewed a line-up and Defendant Frano identified Plaintiff as an individual he saw fleeing from the crime scene. Defendant Officers admit Defendant Frano encountered Plaintiff on previous occasions. Defendant Officers deny the remaining allegations of Paragraph 60.**

61.     Three months after the crime, Defendant Frano suddenly and falsely claimed that Plaintiff was involved in the shooting.

**ANSWER:     Defendant Officers admit that Defendant Frano viewed a line-up on March 4, 2009 and Defendant Frano identified Plaintiff as an individual he saw fleeing from the crime**

scene. **Defendant Officers deny Defendant Frano stated Plaintiff was involved in the shooting. Defendant Officers deny the remaining allegations of Paragraph 61 and Defendant Frano specifically denies that he provided any false statement or testimony.**

62.     On March 3, 2009, Defendants arrested Plaintiff and took him into custody solely on the basis of the coerced and fabricated witness identifications.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit certain Defendants arrested Plaintiff and took him into custody on March 3, 2009. Defendant Officers deny the remaining allegations of Paragraph 62.**

63.     Defendants interrogated Plaintiff, who truthfully denied any involvement in the shooting and maintained his innocence.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit that certain Defendant Officers interviewed Plaintiff and Plaintiff denied his involvement in the shooting. Defendant Officers deny the remaining allegations of Paragraph 63.**

64.     Defendants arrested Plaintiff's cousin that day as well. Defendants pressured him to falsely implicate Plaintiff in the shooting.

**ANSWER:** Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term **"Defendants"** without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit certain police officers transported Lamarius Robinson to Area 5 on March 3, 2009. Defendant Officers admit Defendant Folino and McDermott interviewed Plaintiff on March 3, 2009 and during that interview, Lamarius Robinson implicated Plaintiff in Mr. Handford's shooting. Defendant Officers deny the remaining allegations of Paragraph 64.

### Chicago's Policy and Practice of Wrongly Convicting Innocent Persons in Violation of the Constitution

65. The City of Chicago and the Chicago Police Department are responsible, by virtue of their official policies, for inflicting miscarriages of justice in scores of criminal cases like the one endured by Plaintiff.

**ANSWER:** Defendant Officers deny the allegations of Paragraph 65.

66. Since 1986, no fewer than 100 cases have come to light in which Chicago police officers fabricated false evidence and/or suppressed exculpatory evidence in order to cause the convictions of innocent persons for serious crimes they did not commit.

**ANSWER:** Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 66.

67. These cases include many in which Chicago police officers used the same tactics that Defendants employed against Plaintiff in this case, including concealing exculpatory evidence, manipulating witnesses in order to influence eyewitness identifications and testimony, and using other tactics to secure the arrest, prosecution, and conviction of a person without probable cause and without regard for the person's actual guilt or innocence.

19

**ANSWER:   Defendant Officers deny concealing exculpatory evidence, manipulating witnesses in order to influence eyewitness identifications and testimony, and using other tactics to secure the arrest, prosecution, and conviction of Plaintiff without probable cause and without regard for the person's actual guilt or innocence. Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 67.**

68.     At all relevant times, members of the Chicago Police Department, including the Defendants in this action, routinely fabricated and manipulated identification procedures to procure suspect identifications that they knew to be inaccurate.

**ANSWER:   Defendant Officers deny fabricating and manipulating identification procedures to procure suspect identifications they knew to be inaccurate. Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 68.**

69.     At all relevant times, members of the Chicago Police Department, including the Defendants in this action, systematically suppressed exculpatory and/or impeaching material by intentionally secreting discoverable reports, memos, and other information. This concealed material was kept in files that were maintained only at the Chicago Police Department and never disclosed to the participants of the criminal justice system. As a matter of widespread custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed or hidden at the close of the investigation rather than being preserved as part of the official file.

**ANSWER:   Defendant Officers deny systematically suppressing exculpatory and/or impeaching material by intentionally secreting discoverable reports, memos, and other information, concealing material in files that were maintained only at the Chicago Police Department. Defendant Officers deny not disclosing exculpatory and/or impeaching**

20

material to the participants of the criminal justice system, or withholding from the State's Attorney's Office and from Plaintiff exculpatory and/or impeaching material. Defendant Officers deny destroying or hiding exculpatory and/or impeaching material at the close of the investigation involving Plaintiff rather than being preserving the material as part of the official file. Defendant Officers deny such actions described in Paragraph 69 were widespread customs and practices and deny any allegation of misconduct or other wrongdoing directed against them as alleged in Paragraph 69.

70. Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Defendants, concealed exculpatory evidence from Plaintiff.

**ANSWER:** **Defendant Officers deny concealing exculpatory evidence from Plaintiff and deny any allegation of misconduct or other wrongdoing directed against them as alleged in Paragraph 70.**

71. The existence of this policy and practice of suppressing exculpatory and/or impeaching material in clandestine files was established and corroborated in the cases of, *inter alia, Rivera v. Guevara,* No. 12 C 4428 (N.D. Ill.), *Fields v. City of Chicago,* No. 10 C 1168 (N.D. Ill.), and *Jones v. City of Chicago,* No. 87 C 2536 (N.D. Ill.).

**ANSWER:** **Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 71.**

72. The policies and practices of file suppression at issue in *Fields* applied throughout the timeframe from the 1980s through the 2000s, including at the time of the Handford Murder and investigation at issue here.

**ANSWER:** **Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 72.**

21

73.     The policy and practice of suppressing exculpatory and/or impeaching material evidence was alive and well at all relevant times, including at the Area Five Detective Division during the investigation into the Handford Murder.

**ANSWER:   Defendant Officers deny suppressing exculpatory and/or impeaching material evidence from Plaintiff and deny any allegation of misconduct or other wrongdoing directed against them as alleged in Paragraph 70.**

74.     In addition, the City of Chicago and the Chicago Police Department routinely used illegal tactics, including torture, physical coercion, and psychological coercion, to extract involuntary and false confessions and statements from suspects and witnesses. There are well over 250 documented cases of Chicago Police officers using torture and coercion to illegally obtain confessions in homicide cases. The City had notice of this widespread practice of procuring false and coerced confessions long before the events at issue in this case.

**ANSWER:   Defendant Officers deny using illegal tactics, including torture, physical coercion, and psychological coercion, to extract involuntary and false confessions and statements from suspects and witnesses during the investigation into the Handford homicide. Defendant Officers deny any allegation of misconduct or wrongdoing directed against them as alleged in Paragraph 74.**

75.     Moreover, the City of Chicago and the Chicago Police Department routinely failed to investigate cases in which Chicago police detectives recommended charging an innocent person with a serious crime, and no Chicago police officer has ever been disciplined as a result of his misconduct in any of those cases.

**ANSWER:   Defendant Officers deny failing to investigate the case against Plaintiff and/or the Handford homicide. Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 75.**

76.     Prior to and during the period in which Plaintiff was falsely charged with and convicted of the Handford Murder, the City of Chicago also operated a dysfunctional disciplinary system for Chicago police officers accused of serious misconduct. The City almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. Further, the disciplinary apparatus had no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct.

**ANSWER:    Defendant Officers lack knowledge sufficient to admit or deny whether the disciplinary apparatus had no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct. Defendant Officers deny the remaining allegations of Paragraph 76.**

77.     In the case of *Klipfel v. Bentsen,* No. 94 C 6415 (N.D. Ill), a federal jury in Chicago returned a *Monell* verdict against the City, finding that the City was responsible for maintaining a code of silence and a deeply flawed disciplinary system that allowed Chicago police officers (operating out of the very same police facilities as the Defendant Officers in this case) to operate a far-reaching, long-running criminal enterprise that included the subversion of homicide investigations.

**ANSWER:    Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 77.**

78.     The *Klipfel* plaintiffs were two former federal agents from the Bureau of Alcohol, Tobacco and Firearms who brought allegations of rampant criminal misconduct among Gang Crimes officers to the attention of CPD officials. The evidence in that litigation included: Philip Cline, an Area Commander and future Chief of Detectives and Superintendent, personally filed two Internal Affairs complaints against Miedzianowski for tampering in homicide investigations, that resulted in no discipline whatsoever; and that Raymond Risley, an assistant deputy superintendent

and head of Internal Affairs, not only knew about misconduct in homicide cases but actively participated in efforts to subvert the disciplinary investigation into Miedzianowski that was at the heart of the *Klipfel* litigation.

**ANSWER:** **Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 78.**

79.     As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence within the Chicago Police Department, which has been acknowledged by Charlie Beck, the interim superintendent of the CPD. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

**ANSWER:** **Defendant Officers deny that they refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case. Defendant Officers deny there was a code of silence within the Chicago Police Department. Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 79.**

80.     As a result of the City of Chicago's established practices, officers (including the Defendants here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse circumstances. The practices that enable this belief include failing to track and identify police officers who are repeatedly accused of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct, and facilitating a code of silence within the Chicago Police Department. As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens.

24

**ANSWER:** Defendant Officers deny the allegations of Paragraph 80.

81. This belief extends to the Defendants in this case. By way of example, Chicago police officers have a long history of engaging in the kind of investigative misconduct that occurred in this case, including manipulating eyewitness identification as well as fabricating and concealing evidence in the course of maliciously prosecuting innocent persons. There are dozens of known cases in which Chicago police officers engaged in the serious investigative misconduct described above. They engaged in such misconduct because they had no reason to fear that the City of Chicago and its Police Department would ever discipline them for doing so.

**ANSWER:** Defendant Officers deny the allegations of Paragraph 81.

82. The City of Chicago and its Police Department also failed in the years prior to the Plaintiff's wrongful charging and conviction to provide adequate training to Chicago police detectives and other officers in many areas, including the following:

    a.    The conduct of live lineup, photographic, and other identification procedures.

    b.    The constitutional requirement to disclose exculpatory evidence, including how to identify such evidence and what steps to take when exculpatory evidence has been identified in order to ensure that the evidence is made part of the criminal proceeding.

    c.    The need to refrain from physical and psychological abuse, and manipulative and coercive conduct, in relation to suspects and witnesses.

    d.    The risks of wrongful conviction and the steps police officers should take to minimize risks.

    e.    The risks of engaging in tunnel vision during investigation.

  f.  The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

**ANSWER:**   **Defendant Officers deny the allegations of Paragraph 82, subparagraphs (a) through (f).**

83.  The need for police officers to be trained in these areas was and remains obvious. The City's failure to train Chicago police officers as alleged in the preceding paragraph caused Plaintiff's wrongful conviction and his injuries.

**ANSWER:**   **Defendant Officers deny the allegations of Paragraph 83.**

84.  The city's failure to train, supervise, and discipline its officers, including the Police Officer Defendants, condones, ratifies, and sanctions the kind of misconduct that the Defendants committed against Plaintiff in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and de facto policies, as alleged above.

**ANSWER:**   **Defendant Officers deny the allegations of Paragraph 84.**

85.  The City of Chicago and final policymaking officials within the Chicago Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

**ANSWER:**   **Defendant Officers deny the allegations of Paragraph 85.**

86.  The policies and practices described in the foregoing paragraphs were also approved by the City of Chicago policymakers, who were deliberately indifferent to the violations of constitutional rights described herein.

26

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 86 and deny any allegation of misconduct or other wrongdoing directed against them as alleged herein.**

### Plaintiff's Wrongful Conviction and Imprisonment

87.     As a result of the Defendants' misconduct and based on the false evidence described in this Complaint, Plaintiff was charged, prosecuted, and convicted of murder.

**ANSWER:** **Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit Plaintiff was charged, prosecuted, and convicted of murder. Defendant Officers deny the remaining allegations of Paragraph 87.**

88.     In the absence of the Defendants' misconduct, Plaintiff would never have been arrested, indicted, prosecuted, or convicted. At no point in time between 2008 and the present day has there been any credible evidence giving rise to probable cause to suspect Plaintiff of Handford's murder.

**ANSWER:** **Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 88.**

89.     The Defendants' fabrication of evidence was not disclosed to state prosecutors, Plaintiff, or his criminal defense attorneys in advance of his criminal trial. In fact, Defendants suppressed all evidence that exonerated Plaintiff.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 89.**

90.     The Defendants used false police reports to cover up their misconduct. They provided those false reports to state prosecutors, and those reports became the basis for charging and prosecuting Plaintiff.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 90.**

91.     Defendants also gave false statements to state prosecutors and provided false testimony at Plaintiff's criminal trial.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant**

**Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 91.**

92.     No inculpatory evidence other than the evidence fabricated by Defendants was introduced at Plaintiff's criminal trial.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 92.**

93.     At all times, Defendants suppressed the true circumstances of their identification and lineup procedures.

**ANSWER:     Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers deny the allegations of Paragraph 93.**

94.     At all times, Defendant Patrick Conroy was aware of Defendants' misconduct and their fabrication of a case against Plaintiff. As a supervisor, he nevertheless intentionally ignored the Defendants' misconduct and decided to make Plaintiff liable for a crime he did not commit, rather than directing the investigating officers to find the person who had actually committed the crime.

**ANSWER:     Defendant Officers deny the allegations of Paragraph 94.**

95.     In addition, on information and belief, the Defendants suppressed and destroyed additional evidence still unknown to Plaintiff, which would also have shown Plaintiff's innocence.

**ANSWER:    Defendant Officers object to this paragraph and moves to strike the allegations as speculative, vague, and improper, and to which an answer cannot reasonably formulated. Defendant Officers further object to the extent the allegation appears to lack a good faith factual basis. Without waiving these objections, and to the extent an answer is deemed necessary, Defendant Officers respond as follows: Defendant Officers deny the allegations of Paragraph 95.**

96.     Plaintiff maintained his innocence throughout the proceedings.

**ANSWER:    Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 96.**

97.     However, because of Defendants' false and manufactured evidence, Plaintiff was wrongly convicted and sentenced to 55 years in prison.

**ANSWER:    Defendant Officers object to Plaintiff's group pleading in this Paragraph; Plaintiff's use of the undifferentiated and interchangeable term "Defendants" without identifying specific individuals or Defendant Officers renders the Paragraph vague and indefinite. Subject to and without waiving this objection, and to the extent Defendant Officers can formulate a response, Defendant Officers state as follows: Defendant Officers admit Plaintiff was convicted and sentenced to 55 years in prison. Defendant Officers deny the remaining allegations of Paragraph 97.**

98.     He spent the next 13 years of his life imprisoned for a crime that he did not commit.

**ANSWER:    Defendant Officers deny the allegations of Paragraph 98.**

99.     Plaintiff's whole life was turned upside down without any warning. His young adulthood was entirely consumed by the horror of his wrongful imprisonment.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 99.**

100.   The conviction took a large toll on Plaintiff's family. At the time of his arrest, Plaintiff had a young daughter and two young sons were born shortly after. As a result of Defendants' misconduct, Plaintiff was imprisoned for most of his children's childhood and adolescence. Plaintiff lost his chance to raise his children, which has had a profound impact not only on his life, but also on his relationship with his children.

**ANSWER:** **Defendant Officers deny any allegation of misconduct or other wrongdoing directed against them as alleged herein. Defendant Officers admit Plaintiff had three children at the time of his conviction. Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 100.**

101.   Plaintiff missed countless milestones in his children's lives, including birthdays, first days of school, and graduations.

**ANSWER:** **Defendant Officers deny any allegation of misconduct or other wrongdoing directed against them as alleged herein. Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 101.**

102.   In addition, Plaintiff was taken away from and missed out on the lives of his family and friends. He returned home to relationships changed by or lost to over a decade of wrongful incarceration.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 102.**

103.   Plaintiff's grandmother passed away while he was in prison, and Plaintiff was not given permission to attend her funeral.

**ANSWER:** **Defendant Officers deny any allegation of misconduct or other wrongdoing directed against them as alleged herein. Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 103**

31

104.     Plaintiff was robbed of his young adulthood. He was deprived of opportunities to gain an education, to engage in meaningful labor, to develop a career, and to pursue his interests and passions. Plaintiff has been deprived of all of the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

**ANSWER:     Defendant Officers deny the allegations of Paragraph 104.**

105.     During his 13 years of wrongful imprisonment, Plaintiff was detained in harsh and dangerous conditions in maximum-security prisons.

**ANSWER:     Defendant Officers deny Plaintiff's incarceration was wrongful. Defendant Officers lack knowledge sufficient to admit or deny the remaining allegations of Paragraph 105.**

106.     Plaintiff never knew whether the truth would come out or whether he would ever be exonerated.

**ANSWER:     Defendant Officers deny the allegations of Paragraph 106.**

107.     In addition to the severe trauma of wrongful imprisonment and Plaintiff's loss of liberty, the Defendants' misconduct continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, constant fear, nightmares, anxiety, depression, despair, rage, and other physical and psychological effects.

**ANSWER:     Defendant Officers deny the allegations of Paragraph 107.**

108.     Plaintiff has been branded as a murderer. He has suffered profound reputational harm as a result.

**ANSWER:     Defendant Officers deny the allegations of Paragraph 108.**

### Plaintiff's Exoneration

109.     Plaintiff fought hard to prove his innocence.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 109.**

110. He has consistently and credibly maintained his innocence at every stage of his criminal proceedings.

**ANSWER:** **Defendant Officers Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 110.**

111. On May 2, 2022, Plaintiff's collateral petition requesting to have his conviction vacated was granted, and his conviction was set aside.

**ANSWER:** **Defendant Officers admit Judge Brosnahan granted Plaintiff a new trial based on ineffective assistance of counsel on May 2, 2022**

112. On May 9, 2022, all charges against Plaintiff were dropped.

**ANSWER:** **Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 112.**

113. On April 26, 2023, the Illinois courts granted Plaintiff a Certificate of Innocence.

**ANSWER:** **Defendant Officers lack knowledge sufficient to admit or deny the allegations of Paragraph 113.**

## COUNT I
### 42 U.S.C. § 1983 — Due Process
### (Fourteenth Amendment)

114. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:** **Defendant Officers restate and reallege their answers to the foregoing paragraphs as though fully stated herein.**

115. As described in detail above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and his right not to be wrongfully convicted and imprisoned.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 115.**

116. In the manner described more fully above, Defendants fabricated witness statements falsely implicating Plaintiff in the crime.

**ANSWER:** **Defendant Officers deny the allegations of 116.**

117. Defendants knew this evidence was false.

**ANSWER:** **Defendant Officers deny the allegations of 117.**

118. Defendants obtained Plaintiffs conviction using this false evidence, and they failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff during his criminal case.

**ANSWER:** **Defendant Officers deny the allegations of 118.**

119. In addition, Defendants deliberately withheld exculpatory evidence from state prosecutors, Plaintiff, and Plaintiff's criminal defense attorneys, including evidence that Defendants had manufactured false identifications of Plaintiff, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

**ANSWER:** **Defendant Officers deny the allegations of 119.**

120. In addition, based upon information and belief, Defendants concealed, fabricated, and destroyed additional evidence that is not yet known to Plaintiff.

**ANSWER:** **Defendant Officers deny the allegations of 120.**

121. Defendants' misconduct resulted in the unjust and wrongful criminal prosecution and conviction of Plaintiff and the deprivation of Plaintiffs liberty, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not have and would not have been pursued.

**ANSWER:** **Defendant Officers deny the allegations of 121.**

122. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** **Defendant Officers deny the allegations of 122.**

123. As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, forced and involuntary prison labor, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** **Defendant Officers deny the allegations of 123.**

124. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago and the Chicago Police Department, in the manner more fully described below in Count V.

**ANSWER:** **Defendant Officers deny the allegations of 124.**

**COUNT II**
**42 U.S.C. § 1983 — Unlawful Detention**
**(Fourth and Fourteenth Amendments)**

125. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:** **Defendant Officers restate and reallege their answers to the foregoing paragraphs as though fully stated herein.**

126. In the manner described above, the Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

**ANSWER:** **Defendant Officers deny the allegations of 126.**

127.    In so doing, these Defendants caused Plaintiff to be deprived of his liberty without probable cause and to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:    Defendant Officers deny the allegations of 127.**

128.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:    Defendant Officers deny the allegations of 128.**

129.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:    Defendant Officers deny the allegations of 129.**

130.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago and the Chicago Police Department, in the manner more fully described below in Count V.

**ANSWER:    Defendant Officers deny the allegations of 130.**

### COUNT III
### U.S.C. § 1983 — Failure to Intervene

131.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:    Defendant Officers restate and reallege their answers to the foregoing paragraphs as though fully stated herein.**

132.    In the manner described above, during the constitutional violations described herein, one or more of Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

**ANSWER:    Defendant Officers deny the allegations of 132.**

36

133.    These Defendants had ample, reasonable opportunities as well as the duty to prevent this harm but failed to do so.

**ANSWER:    Defendant Officers deny the allegations of 133.**

134.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:    Defendant Officers deny the allegations of 134.**

135.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:    Defendant Officers deny the allegations of 135.**

136.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago and the Chicago Police Department, in the manner more fully described below in Count V.

**ANSWER:    Defendant Officers deny the allegations of 136.**

### COUNT IV
### U.S.C. § 1983 — Conspiracy to Violate Constitutional Rights

137.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:    Defendant Officers restate and reallege their answers to the foregoing paragraphs as though fully stated herein.**

138.    In the manner described more fully above, the Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to fabricate evidence and to detain, prosecute, and convict Plaintiff for Christopher Handford's murder, regardless of Plaintiff's guilt or innocence, and thereby to deprive him of his constitutional rights.

**ANSWER:    Defendant Officers deny the allegations of 138.**

139.     In so doing, these co-conspirators agreed to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:     Defendant Officers deny the allegations of 139.**

140.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:     Defendant Officers deny the allegations of 140.**

141.     The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:     Defendant Officers deny the allegations of 141.**

142.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:     Defendant Officers deny the allegations of 142.**

143.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago and the Chicago Police Department, in the manner more fully described below in Count V.

**ANSWER:     Defendant Officers deny the allegations of 143.**

**COUNT V**
**42  U.S.C. § 1983 — Policy and Practice Claim against the City of Chicago**

**Count V of Plaintiff's Complaint is not directed against Defendant Officers. Therefore, Defendant Officers do not answer or respond to the allegations contained in this Count V.**

## COUNT VI
### State Law Claim — Malicious Prosecution

156.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:    Defendant Officers restate and reallege their answers to the foregoing paragraphs as though fully stated herein.**

157.    In the manner described above, the Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

**ANSWER:    Defendant Officers deny the allegations of Paragraph 157.**

158.    In so doing, the Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:    Defendant Officers deny the allegations of Paragraph 158.**

159.    The judicial proceedings were terminated in Plaintiff's favor and in a manner indicative of his innocence when his conviction was vacated and charges against him were dropped in May 2022.

**ANSWER:    Defendant Officers deny the allegations of Paragraph 159.**

160.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:    Defendant Officers deny the allegations of Paragraph 160.**

161.    As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendant Officers deny the allegations of Paragraph 161.

## COUNT VII
### State Law Claim — Intentional Infliction of Emotional Distress

162.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:** Defendant Officers restate and reallege their answers to the foregoing paragraphs as though fully stated herein.

163.     The actions, omissions, and conduct of the Defendants as set forth above were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:** Defendant Officers deny the allegations of 163.

164.     As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendant Officers deny the allegations of 164.

## COUNT VIII
### State Law Claim — Willful and Wanton Conduct

**Defendant Officers have moved to dismiss this Count and make no answer to this Count VIII.**

## COUNT IX
### State Law Claim — Civil Conspiracy

165.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:** Defendant Officers restate and reallege their answers to the foregoing paragraphs as though fully stated herein.

166.     As described more fully in the preceding paragraphs, the Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among

themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose and/or to achieve a lawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 166.**

171. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 171.**

172. The violations of Illinois law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 172.**

173. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 173.**

174. As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** **Defendant Officers deny the allegations of Paragraph 174.**

## COUNT X
### State Law Claim — *Respondeat Superior*

175. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:** **Defendant Officers restate and reallege their answers to the foregoing paragraphs as though fully stated herein.**

176.     While committing the misconduct alleged in the preceding paragraphs, the Defendants were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

**ANSWER:     Defendant Officers deny committing any misconduct and deny the allegations against them. Defendant Officers admit they were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.**

177.     Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER:     Defendant Officers deny liability to Plaintiff.**

## COUNT XI
## State Law Claim – Indemnification

178.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:     Defendant Officers restate and reallege their answers to the foregoing paragraphs as though fully stated herein.**

179.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:     Defendant Officers deny the allegations contained in this paragraph because those allegations constitute a legal conclusion and contain a vague, incomplete and/or inaccurate statement of the law and deny any allegations of wrongdoing or other misconduct alleged herein.**

180.     The Defendants were employees, members, and agents of Defendant City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

**ANSWER: Defendant Officers deny committing any misconduct and deny the allegations against them. Defendant Officers admit they were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.**

181.    Defendant City of Chicago is responsible to pay any judgment entered against the Defendants.

**ANSWER:    Defendant Officers deny any judgment is owed to Plaintiff.**

WHEREFORE, Defendant Officers pray this Court enter judgment in their favor and against Plaintiff.

## DEFENDANT OFFICERS' AFFIRMATIVE DEFENSES

NOW COME WAYNE FRANO, VINCENT CELIO, CARL BRASIC, TIMOTHY MCDERMOTT, JOHN FOLINO, JR., PATRICK CONROY, DAVID ZELIG, and PETER BABICH (collectively "Defendant Officers"), without prejudice to their denials and all other statements in their Answer and elsewhere, state the following for their Affirmative Defenses to Plaintiff's Complaint:

## QUALIFIED IMMUNITY

At all times during the events alleged in Plaintiff's Complaint, a reasonable police officer, objectively viewing the facts and circumstances then confronting the Defendant Officers at issue during the incident which allegedly provides the basis for the present case, could have reasonably believed that the actions taken by them were objectively reasonable and were within constitutional limits that were clearly established at the time. Defendant Officers are, therefore, entitled to qualified immunity.

## ABSOLUTE IMMUNITY

To the extent any Count in this Complaint purports to attempt to impose liability on any Defendant Officer relating to acts of perjury or false testimony of any kind, or failure to testify or disclose the true nature of the circumstances leading up to Plaintiff's arrest or prosecution, Defendant Officers are absolutely immune from liability pursuant to federal and state law immunities. *Briscoe v. Lahue,* 460 U.S. 325 (1983); *Jurgenson v. Haslinger*, 295 Ill. App. 3d 139 (3d Dist. 1998).

## FAILURE TO MITIGATE

To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff has a duty to mitigate, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

## COMPARATIVE OR CONTRIBUTORY FAULT

To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by the negligent, willful, wanton and/or other wrongful conduct on the part of the Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this cause.

## STATUTE OF LIMITATIONS ON FEDERAL CLAIMS

To the extent any of Plaintiff's claims arising under 42 U.S.C. § 1983 accrued more than two years prior to the institution of this suit, Plaintiff's claims are barred by the applicable statute of limitations.

## 745 ILL. COMP. STAT. 10/2-208

1. At all times relevant to this suit, the Defendant Officers were acting within the scope of their employment as police officers employed by the City of Chicago.

2. Defendant Officers did not act maliciously and/or willfully or wantonly or without probable cause.

3. Accordingly, Defendant Officers are not liable for any injury caused by instituting or prosecuting any judicial proceeding within the scope of their employment pursuant to 745 Ill. Comp. Stat. 10/2-208.

## 745 ILL. COMP. STAT. 10/2-204

1. At all times relevant to this suit, Defendant Officers were acting within the scope of their employment as police officers employed by the City of Chicago.

2. To the extent any Count in this Complaint seeks recovery based on acts or omissions of another person, Defendant Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-204.

## 745 ILL. COMP. STAT. 10/8-101(a)

To the extent any Count in this Complaint seek recovery under state law for any acts or omissions of a local public entity or any of its employees accruing more than one year prior to the filing of this suit, such local public entity or employee thereof is immune from suit pursuant to 745 Ill. Comp. Stat. 10/8-101(a).

## 735 ILL. COMP. STAT. 5/13-202

To the extent any Count in this Complaint seeks recovery under state law for any acts or omissions not within the scope of actions subject to the statute of limitations set forth in 745 Ill. Comp. Stat. 10/8-101(a), any of Plaintiff's claims accruing more than two years previous to the filing of this suit are barred by 735 Ill. Comp. Stat. 5/13-202.

45

### 745 ILL. COMP. STAT. 10/2-201

At certain times relevant to this suit, Defendant Officers were performing discretionary acts within the scope of their employment pursuant to 745 Ill. Comp. Stat. 10/201 and thus are immune from suit.

### 745 ILL. COMP. STAT. 10/2-210

To the extent the acts alleged are held to constitute a negligent misrepresentation or provision of information by Defendant Officers, Defendant Officers are immune from suit as public employees acting in the scope of employment pursuant to 745 Ill. Comp. Stat. 10/2-210.

### 745 ILL. COMP. STAT. 10/2-202

1.      Certain acts or omissions at issue in this case were taken by a public employee and constituted the execution or enforcement of a law.

2.      In so acting, Defendant Officers did not act in a manner constituting willful or wanton conduct or without probable cause.

3.      Accordingly, Defendant Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-202.

### 745 ILL. COMP. STAT. 10/2-205 AND 745 ILL. COMP. STAT. 10/2-103

To the extent any Count in this Complaint seeks recovery based on an injury relating to a failure to enforce the law, Defendant Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-205.

### 745 ILL. COMP. STAT. 10/2-212

To the extent that any Count in this Complaint seeks recovery based on joint action between public employees, Defendants Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-212.

## 745 ILL. COMP. STAT. 10/4-104

To the extent any Count in this Complaint seeks recovery based on an injury relating to any interference with the right of a prisoner to obtain a judicial determination or review of the legality of her confinement, Defendant Officers are not liable for such injuries pursuant to 745 Ill. Comp. Stat. 10/4-104.

## COLLATERAL ESTOPPEL/ISSUE PRECLUSION
## AND/OR RES JUDICATA/CLAIM PRECLUSION

Certain issues and claims in Plaintiff's Complaint were adjudicated during Plaintiff's criminal proceedings, and are therefore barred from re-litigation here under the doctrines of collateral estoppel and *res judicata*.

## UNCONSTITUTIONALITY OF PUNITIVE DAMAGE AWARD, IF ANY

An award of punitive damages would deprive Defendant Officers of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where liability for punitive damages has not been proven beyond a reasonable doubt or at least by clear and convincing evidence, or where the award of punitive damages is disproportionate to actual damages.

WHEREFORE Defendant Officers deny that Plaintiff is entitled to judgment in the sum claimed or in any sum of money whatever and ask that judgment be entered in their favor and against Plaintiff with costs.

## JURY DEMAND

Defendant Officers demand a trial by jury.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:    /s/ Emily E. Schnidt                          
          Emily E. Schnidt

Steven B. Borkan
Timothy P. Scahill
Emily E. Schnidt
Misha Itchhaporia
Kathryn E. Boyle
Special Assistants Corporation Counsel
BORKAN & SCAHILL, LTD.
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030
*Attorneys for Defendant Officers*