IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN ROBINSON, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 23 C 02724 |
| | ) ) | Hon. Judge Martha M. Pacold |
| *v.* | ) ) | District Judge |
| WAYNE FRANO, *et al.,* | ) ) ) | Hon. Judge Heather K. McShain Magistrate Judge |
| *Defendants*. | ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF RECORDED PRISON CALLS AND CROSS-MOTION FOR PROTECTIVE ORDER**

Plaintiff, Allen Robinson, by his attorneys, Loevy & Loevy, respectfully responds in opposition to Defendants' motion to compel the production of 901 recorded prison calls and moves for a protective order over these calls. In support, Plaintiff states as follows:

**INTRODUCTION**

Plaintiff Allen Robinson spent nearly fourteen years wrongfully incarcerated in the Illinois Department of Corrections after Defendants framed him for a murder he did not commit. Dkt. 1. Following a hearing on his post-conviction petition, he was exonerated in May 2022. *Id.* During the post-conviction process, Plaintiff's post-conviction counsel issued a subpoena for years-worth of two individuals' recorded prison phone calls—the subject of this dispute. Plaintiff's counsel has not listened to these calls. And Defendants have failed to show that they have any bearing on the claims and defenses in this case. Given the calls' irrelevance to the claims and defenses at issue, their lack of proportionality, and the fact that the burden of

reviewing these calls outweighs any likely benefit, Plaintiff moves for a protective order to shield their production.

## BACKGROUND

During this litigation, Defendants issued a subpoena for Plaintiff's entire client file from his post-conviction attorneys, Jodi Garvey and Pat Blegen. Ex. A. On October 18, 2024, after conducting a thorough privilege review, Plaintiff produced all non-privileged files to Defendants. Additionally, Plaintiff informed Defendants that there were 901 prison phone call recordings in Plaintiff's post-conviction attorneys' possession and requested a time to confer regarding their production. Ex. B (Email Correspondence).

On November 12, 2024, the parties conferred regarding the recorded prison calls, and Plaintiff's counsel expressed that they had not listened and would not listen to the calls. Defendants requested a further breakdown of the identity of the callers, the categories of calls, and their time frames. Group Ex. C (11.13.2024 Email Correspondence). Based on the subpoenas post-conviction counsel had issued, as located in the file produced to Defendants, Plaintiff informed Defendants that the calls were Quinton Davis's and Oscar Russell's recorded prison phone calls during the time periods of September 2013 – June 2014 and August 2009 – July 2011, respectively. *Id.* Plaintiff's counsel also informed Defendants that they had inquired about the recorded calls to Plaintiff's post-conviction counsel, whom in turn stated that they had only listened to a few of the calls. *Id.* (11.22.2024 Email Correspondence)

Given that Plaintiff's counsel had not listened the calls, counsel maintained the position that Defendants' request for the recordings was equivalent to seeking a subpoena for the calls from the Illinois Department of Corrections. And given the burden of reviewing the calls, their disproportionality, and irrelevance to the case, Plaintiff maintained that they should not be

2

produced and entered into the discovery record. On November 27, 2024, Defendants confirmed that they intended to move to compel the production of all 901 recorded calls. *Id.* (11.27.2024 Email Correspondence). On February 11, 2025, Defendants filed their motion to compel the production of these recorded calls. Dkt. 101.

## LEGAL STANDARD

The Federal Rules of Civil Procedure aim to advance a "just, speedy, and inexpensive determination" in every civil action. Fed. R. Civ. P. 1. The discovery process should aid this goal by enabling parties to share "relevant information" and supplying methods "to expose the facts and illuminate the issues" at stake. Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment. Overly broad, "duplicative, redundant, and excessive discovery" impedes this goal by causing delay and increasing costs. *Id.* The Advisory Committee on Rule 26 has urged litigants to resist "excessive" or "disproportionate" discovery and "avoid abuse" when formulating discovery requests. *Id.* For similar reasons, the Advisory Committee on Rule 45 discourages parties from issuing overbroad subpoenas. *See* Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment.

A party may move for a protective order where the discovery sought would subject an individual to "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Further, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Doe v. United States*, No. 22-cv-50128, 2024 WL 770752, at *1 (N.D. Ill. Feb. 2, 2024) (internal quotation marks and citation omitted). Critically, "the relevance and proportionality limits in Rule 26 . . . apply with equal force to nonparty discovery under Rule 45." *DeLeon-Reyes v. Guevara*, No. 18-cv-1028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020).

3

**ARGUMENT**

I. **Plaintiff's motion for a protective order over these prison call recordings is timely.**

Defendants' argument that Plaintiff's objection is untimely lacks merit. Specifically, Defendants take issue with the fact that Plaintiff did not move to quash the subpoena to post-conviction counsel. However, Plaintiff's counsel was not aware that post-conviction counsel had obtained the prison call recordings before Defendants issued the subpoena for Plaintiff's litigation file. Plaintiff therefore could not have objected to the subpoena or moved to quash it on the basis of contents he did not know it would yield.

Assessing Plaintiff's objections to producing the recorded calls should be a functional inquiry, not a formal one. Plaintiff's counsel has not listened to or reviewed the calls, and therefore the parties are functionally in the same posture as if Defendants had subpoaened the calls from the Illinois Department of Corrections and Plaintiff had moved to quash. This scenario resembles that at issue in *In re Watts Coordinated Pretrial Proceedings*, where plaintiff's counsel did not move to quash a subpoena for recorded prison calls but requested that Defendants refrain from listening to the recordings they received until the parties litigated the issue. No. 19-cv-1717, 2024 WL 3470596, at *3 (N.D. Ill. July 19, 2024). Despite the defendants' objection that the plaintiff's motion to quash the subpoena was untimely, the court found that neither party had provided a sufficient basis for refraining from adjudicating the issue. *Id.* Here as well, Plaintiff has timely lodged his objections to producing the recorded calls and moved for a protective order over them before either party has listened to or reviewed the calls.

4

**II.     The phone calls Defendants seek are irrelevant to the claims and defenses at issue in this case.**

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The phone calls at issue do not meet Rule 26(b)(1)'s relevance or proportionality prongs. Defendants have failed to articulate how these 901 calls are relevant to the claims and defenses in this case. Such an indiscriminate request qualifies as a fishing expedition that this Court should reject.

Defendants have not sufficiently justified the connection between the calls sought and the claims and defenses at issue in this case. Instead, they have described the prison calls as "obviously relevant here" because Plaintiff's post-conviction counsel sought the calls and Plaintiff received affidavits in support of his post-conviction petition from Davis and Russell, the witnesses whose calls are at issue. Dkt. 101 at 10. Defendants speculate that the calls will cast doubt on the witnesses' credibility and Russell's recantation. This explanation misunderstands Rule 26(c)'s metric. The question is not whether the discovery sought will illuminate other discovery—in this case, Russell's and Davis's affidavits—but whether it relates to the case's claims or defenses. *See Motorola Solutions, Inc. v. Hytera Comms. Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter.").

In *McClendon v. City of Chicago*, 345 F.R.D. 322, 327 (N.D. Ill. 2024), the Court held that the paramount consideration in determining whether to quash a subpoena for prison calls is whether the calls are relevant to the claims and defenses in the case. Defendants bear the burden of demonstrating the calls' relevance and it must rise beyond a general level. *Id.* at 327. For example, the court in *McClendon* held that Defendants failed to show that calls the plaintiff made

5

to three individuals the day of his arrest (the subject of the lawsuit) were relevant simply because he *may* have spoken about the underlying circumstances of the arrest on those calls. *Id.* And where there are less intrusive means available for the defendants to access the same information, such as through depositions, they should do so. *Id.* at 328.

So too here, Defendants have failed to show that these calls have any bearing on Plaintiff's claims or their defenses. Defendants have not suggested that these calls are likely to cast doubt on Plaintiff's innocence, mitigate his damages, or adduce any other evidence related to one of their defenses. Instead, Defendants asserts that Russell's calls "will likely have information relevant to [his] recantation." Dkt. 101 at 10. As for Davis, Defendants do not even attempt to connect these calls to their defenses, instead arguing vaguely that they are relevant because Davis did not testify at Plaintiff's trial. Yet, not one of these 901 calls is referenced in either of the affidavits or in Plaintiff's post-conviction petition. *See* Ex. D (Russell Affidavit); Ex. E (Davis Affidavit); Ex. F (Plaintiff's Post-Conviction Petition); Ex. G (Supplement to Plaintiff's Post-Conviction Petition). It is unclear what information Defendants reasonably believe are contained in these calls, beyond mere speculation that they might relate to Russell's recantation and Davis's lack of testimony at Plaintiff's criminal trial.

What's more, Defendants' contention that these recorded calls are relevant to the claims and defenses is belied by the fact that Defendants did not subpoena these calls from IDOC themselves. Defendants have been in possession of Plaintiff's Rule 26(a)(1) disclosures since the start of the litigation, listing both Russell and Davis as witnesses, and have had access to Plaintiff's email logs since May 2024. If Defendants considered these phone calls critical to their defenses in the case, they could have issued a subpoena for them at any point in the past two

6

years since the litigation started. That they did not casts doubt on Defendants' characterization of the calls as "obviously relevant." Dkt. 101 at 10.

To the extent that Defendants seek to challenge Russell's and Davis's credibility and the veracity of their affidavits, they have a much less intrusive and burdensome means of doing so: deposing both witnesses. Should Defendants seek clarification on Plaintiff's post-conviction counsel's discussions with these witnesses, they are free to question her about these conversations at her deposition as well. Indeed, Defendants have already noticed all three depositions and will have the opportunity to put the witnesses' credibility to the test then. Deposing a witness is the preferred method to "test[] a witness' knowledge, recollection and veracity." *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 646 (N.D. Ind. 1991). *See also Huddleston v. Bowling Green Inn*, 333 F.R.D. 581, 586 (N.D. Fla. 2019) (noting that in-person depositions "can be highly relevant to judging a witness's credibility").

**III.     The prison phone call recordings are disproportionate to the needs of the case.**

Defendants' request for these 901 prison call recordings are disproportionate to the needs of this case. One of the key factors in assessing proportionality is "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Doe v. United States*, No. 22-cv-50128, 2024 WL 770752, at *2 (N.D. Ill. Feb. 2, 2024) (internal quotation marks and citation omitted). Even where the calls sought "probably contain relevant information, discovery of them is not automatic," depending on the information's importance to the case and the likely benefit of the calls versus the burden they present. *In re Watts*, 2024 WL 3470596, at *6. Here, Defendants have not issued any time or scope limitation to the calls requested; instead, they are requesting that all 901 phone calls be produced and entered into the discovery record.

7

Defendants' request for these phone calls will impose an enormous and undue burden on both parties in the litigation, namely the time and cost of listening to and cataloguing all 901 calls. Courts in this district have recognized that "a larger volume of calls leads to a greater burden due to the time and expense required to review them." *In re Watts*, 2024 WL 3470596, at *5. Where the number of calls sought is large, as it is here, the relevance of the calls' probable content demands more scrutiny. *Id.* at *7.

If Defendants are granted access to review these calls, it means that Plaintiff must do the same and prepare his case based on the materials that Defendants are reviewing. Doing so will require devoting members of Plaintiff's firm to listening to, transcribing, summarizing each call, and discerning any marginal relevance that the call presents. Estimating that each phone call is roughly 30 minutes long, reviewing all 901 will amount to approximately 450.5 hours. And given that fact discovery is set to close at the end of March, the burden of reviewing these calls will need to be outsourced to contract reviewers, which will demand thousands, if not tens of thousands of dollars, to complete.

That is not warranted here, where these records are too attenuated to any claim or defense to be relevant. This request is borne out of Defendants' speculation that over 450 hours of call recordings will cast doubt on the credibility of two witnesses in this case. Defendants should not have carte blanche to comb through hundreds of hours of prison call recordings in the hopes that they might turn up something unfavorable about one of these two witnesses, particularly without pointing to an affidavit or testimony suggesting that the calls are likely to contain relevant material. *See In re Watts*, 2024 WL 3470596, at *13 (allowing Defendants access to 154 of the 1,161 recorded prison calls subpoaened after assessing relevance and proportionality); *City of South Bend v. Illinois Union Ins. Co.*, No. 17-cv-01344, 2017 WL 9856736, at *2 (S.D. Ind. Dec.

8

8, 2017) ("The 'you never know what you could find' argument . . . is the very definition of an improper discovery fishing expedition, which by definition fails to satisfy the proportionality requirements of Fed. R. Civ. P. 26(b)(1)."). At bottom, Defendants have failed to show that the expense of this process is likely to turn up any admissible evidence. Such a speculative showing cannot justify the exorbitant burden and expense of entering these calls into the discovery record. Accordingly, a protective order over these recordings is justified.

## CONCLUSION

For all of the reasons set forth above, the Court should deny Defendants' motion to compel the production of 901 recorded prison calls and grant Plaintiff's motion for a protective order over these calls.

RESPECTFULLY SUBMITTED,

/s/ Annie Prossnitz
*Counsel for Plaintiff*

Jon Loevy
Scott Rauscher
Annie Prossnitz
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
prossnitz@loevy.com

9

**CERTIFICATE OF SERVICE**

      I, Annie Prossnitz, an attorney, certify that on February 24, 2025, I filed the foregoing using the Court's CM/ECF system, which effected service on all counsel of record.

      /s/ Annie Prossnitz
      *One of Plaintiff's Attorneys*