UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLEN ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE FRANO, ET AL.,<br><br>Defendants. | No. 23 CV 2724<br><br>District Judge Pacold<br><br>Magistrate Judge McShain |

### ORDER

Pending before the Court is the officer defendants' motion for leave to depose more than ten witnesses [97], which plaintiff opposes in part [103].[1] For the following reasons, the motion is granted in part and denied in part.

### Background

This is a civil-rights and wrongful-conviction case under 42 U.S.C. § 1983 in which plaintiff alleges that the officer defendants–all former members of the Chicago Police Department–"built an entirely false case against Plaintiff based on coerced confessions," "suppressed exculpatory evidence which Plaintiff could have used to defend himself," and "coerced individuals into testifying against Plaintiff." [1] at ¶¶ 4, 6-7. Plaintiff alleges that, due to defendants' alleged misconduct, he was wrongfully convicted of the murder of Christopher Hanford and spent nearly 14 years in prison before he was exonerated in 2022. [*Id.*] at ¶¶ 9, 11, 20.

Plaintiff's initial disclosures identified 45 witnesses who may have discoverable information that plaintiff might use to support his case, including eyewitnesses to Hanford's murder, investigators, prosecutors, defense attorneys, and damages witnesses, as well as nine 404(b) witnesses. *See* [97-1] 1-5. Defendants' initial disclosures, in turn, identified 148 witnesses who may have discoverable information that defendants might use to support their case. *See* [103-1] 1-20. Shortly after discovery began, an apparent dispute arose regarding defendants' plan to depose more than the ten witnesses permitted by Federal Rule of Civil Procedure 30(a). *See* [67] (noting defendants' expectation, set forth in January 26, 2024 status report, that at least 25 depositions would be needed). The parties met and conferred

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

on this dispute, and plaintiff proposed a compromise whereby each side would be permitted to take 15 depositions. [97] 2. The officer defendants rejected that proposal and filed the pending motion for leave to depose an additional 26 witnesses beyond the ten depositions that the parties agreed defendants would take.[2]

## Legal Standard

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021).

"Under Rule 30(a), each side of litigation is presumptively limited to 10 depositions, in part to emphasize counsel's professional obligation to develop a mutual cost-effective discovery plan." *PeopleFlo Mfg., Inc. v. Sundyne, LLC*, No. 20 CV 3642, 2022 WL 1062706, at *1 (N.D. Ill. Apr. 8, 2022) (internal quotation marks and brackets omitted). But "a court must grant leave to take more than 10 depositions if doing so would be consistent with Rules 26(b)(1) and (2)." *Id.* Rule 26(b)(1) requires a court to consider the relevance of the proposed deponents' testimony and whether allowing additional depositions would be proportional to the needs of the case[.]" *Id.* (internal quotation marks omitted). Rule 26(b)(2) instructs the court to limit discovery if it determines that the discovery is unreasonably cumulative or duplicative or can be obtained from another source that is more convenient, less burdensome, or less expensive; the party seeking discovery has had ample opportunity to obtain the information by discovery; or the proposed discovery is outside the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(i)-(iii). "To aid the court in balancing these factors, the party seeking to take additional depositions must make a particularized showing for the need for such depositions." *PeopleFlo*, 2022 WL 1062706, at *2 (internal quotation marks and brackets omitted). "The court must then consider the totality of the circumstances in deciding whether to authorize the requested depositions." *Id.* (internal quotation marks omitted).

"[T]he resolution of discovery disputes is committed to the Court's extremely broad discretion." *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018).

---

[2] Defendants advise that this number is not intended to be exhaustive, as they "may require additional depositions based on how the testimony and evidence develops," and does not include *Monell*-related depositions. [97] 6-7 nn. 2 & 3.

**Discussion**

I.   **Proportionality**

Before turning to the specific depositions at issue, the Court considers defendants' arguments that taking more than ten depositions is proportionate to the needs of the case.

First, as defendants note, the case raises serious and important issues: plaintiff alleges that defendants essentially framed him for a murder that he did not commit and caused him to be wrongfully imprisoned for almost 14 years. This factor weighs in favor of allowing additional depositions. *See Simon v. Northwestern Univ.,* No. 15 CV 1433, 2017 WL 467677, at *2 (N.D. Ill. Feb. 3, 2017) ("The loss of liberty alone, as alleged, is extremely significant: plaintiff, who was subsequently convicted of the same double murders, spent 15 years behind bars. But the importance of this case transcends the parties involved: at its core, it questions the legitimacy of the criminal justice system.") (internal brackets and ellipses omitted). Second, the amount in controversy is substantial: when plaintiffs prevail in wrongful-conviction cases in this District, jury verdicts have been in the millions of dollars. *See Prince v. Kato*, No. 18 C 2952, 2020 WL 1874099, at *5 (N.D. Ill. Apr. 15, 2020) ("[P]ast jury verdicts and reported settlements have been in the millions of dollars, and at times, over $10 million for cases of wrongful convictions and incarcerations of over 20 years."). This factor, too, weighs in favor of allowing defendants to exceed the ten-deposition cap.[3] Third, the Court agrees that defendants have limited access to some of the relevant evidence. For example, several witnesses whom defendants seek to depose–including two of plaintiff's family members and one of his former girlfriends who is also the mother of one of his children–are affiliated with plaintiff to the extent that defense counsel has been directed to contact these witnesses only through plaintiff's counsel. *See* [97] 8, 11. Other witnesses with criminal histories and/or past gang affiliations may be unlikely to speak with defense counsel absent a subpoena compelling them to appear for a deposition. The Court therefore finds that defendants' relatively limited access to some of the evidence supports their request to depose more than ten witnesses.

Plaintiff does not contest these points, *see* [103] 4, but he does argue that defendants' insistence on taking nearly three times as many depositions as allowed by Rule 30 threatens to unduly prolong fact discovery. [*Id.*] 1-2. Plaintiff also contends that "discovery is not unlimited," and that defendants should be limited to no more

---

[3] Defendants also support their motion by noting that parties in other wrongful-conviction cases in this District have taken more than 50 depositions. *See* [97] 2 & n.1. The Court recognizes that discovery in these cases is often wide-ranging and expansive, but the Court does not believe that defendants' motion can be granted simply because a similar or greater number of depositions were taken in other cases. Defendants must still show a particularized need for a given deposition.

than 15 depositions. The Court agrees that, although the issues in the case are important and the financial stakes likely to be extremely high, defendants still must establish a particularized need for each deposition at issue. Turning to the depositions at issue, the Court addresses defendants' motion by grouping the prospective deponents into three categories: (1) witnesses whose depositions plaintiff challenges as unnecessary; (2) witnesses whose depositions plaintiff does not specifically challenge in his brief or whose depositions plaintiff concedes are appropriate; and (c) the Rule 404(b) witnesses.

## II. Depositions Challenged by Plaintiff

### A. Third-Party Witnesses

Defendants seek leave to depose four witnesses–Johntay Washington, Ozell Jackson, Aaron Marshall, and James Shannon–who are alleged to have been present during the shooting or had "knowledge of a feud between Plaintiff and the leader of [Hanford's] gang." [97] 9.[4] Plaintiff acknowledges that the first three witnesses provided affidavits during his state postconviction proceedings, but contends that the affidavits stated only that "they were not at the scene of the shooting" and merely "impeach the statements attributed to" them by Oscar Russell, [103] 5, a witness who allegedly "observed Plaintiff grab a gun from Lamarius Robinson and then shoot the victim." [97] 3. As for Shannon, plaintiff contends that he did not submit an affidavit during postconviction review and is "too attenuated to the case to be deposed." [103] 5. Based on the limited information presented in the parties' briefing, the Court concludes that defendants have not made a particularized showing of their need to depose these witnesses. Other than noting that plaintiff disclosed Washington, Jackson, and Marshall in his initial disclosures, defendants' motion simply does not explain why there is a particularized need for these depositions. But "the mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." *PeopleFlo*, 2022 WL 1062706, at *2 (internal quotation marks and brackets omitted). Furthermore, "[t]he 10-deposition limit would risk becoming dead letter if it could be avoided in every case where more than 10 names appear in Rule 26(a)(1) disclosures[.]" *Id.* Defendants' motion is therefore denied to the extent that they seek leave to depose Washington, Jackson, Marshall, and Shannon.

---

[4] Defendants also seek leave to depose Derrick Stidwell, who allegedly told police that he had seen a car belonging to plaintiff's mother near the scene of the shooting and thus "may have information discrediting Plaintiff's alibi." [97] 9-10. Plaintiff "does not dispute that [Stidwell] should be deposed" but notes that Stidwell "is on Plaintiff's deposition list." [103] 7. Given plaintiffs' position as to Stidwell, the Court denies defendants' motion for leave to depose Stidwell as moot.

4

### B. Prosecutors and Defense Counsel

Defendants seek to depose Cook County Assistant State's Attorney (ASA) Linda Walls because "she was involved in Plaintiff's post-conviction proceedings and may have investigated the claims he made in his post-conviction petition." [97] 10. Plaintiff responds that ASA Walls "has no personal knowledge related to the underlying facts of this case," and he speculates that "it is unlikely she even remembers this case[.]" [103] 6. While the Court does not credit the latter portion of plaintiff's argument, the Court finds that defendants have not shown a particularized need for Walls's deposition. As plaintiff observes, there is no indication that defense counsel has attempted to contact Walls about this case, despite her role as a prosecutor who presumably shares the officer defendants' interest in the integrity of plaintiff's conviction. Furthermore, to the extent that Walls may have investigated the claims plaintiff made in his postconviction petition, the Court concludes that the results of that investigation are likely reflected or embodied in the documents generated by the Cook County State's Attorney's Office during the postconviction litigation as well as the record of that litigation itself. Thus, the mere contention that Walls may have investigated the case does not amount to a particularized need to depose her. *See PeopleFlo*, 2022 WL 1062706, at *3 (denying leave to depose additional witnesses where movant failed to demonstrate why deponents' testimony was "critical to resolving the claims and defenses in the case" and did not explain "[w]hat new information" the depositions would provide or how "that information [would] help resolve the issues").

Defendants also seek to depose the attorneys who represented plaintiff during his criminal trial, Charles Piet and Richard Kloak, and the attorney who represented him in appellate proceedings, Tom Brandstrader. Defendants contend that these attorneys "have information that may have a direct bearing on Plaintiff's malicious prosecution claim[.]" [97] 10. Yet the premise of defendants' argument–that plaintiff's former attorneys have relevant testimony to give on this claim–is completely unsupported. Indeed, defendants do not identify the elements of a malicious-prosecution claim or explain how the testimony of plaintiff's former lawyers could prove or rebut one or more of those elements. *See, e.g., Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1168-72 (N.D. Ill. 2022) (discussing five elements of state-law claim for malicious prosecution). The Court is also cognizant of the burden that such depositions would pose on the parties, given the likelihood that plaintiff and/or his former lawyers may raise attorney-client privilege objections during any such depositions. Defendants have not carried their burden to show a particularized need for these depositions.

5

### III. Depositions Plaintiff Concedes Are Appropriate or Does Not Address

#### A. Damages Witnesses

Defendants seek to depose three witnesses whom plaintiff disclosed as having information about his wrongful prosecution, conviction, and imprisonment and the resulting damages he suffered: Alanae Robinson, Allen Robinson III, and Shanice Johnson. [97] 8. Defendants note that plaintiff requested that "these witnesses only be contacted through his attorneys," and thus defendants cannot discover what information the witnesses have about plaintiff's damages unless they depose them. [*Id.*]. Plaintiff concedes that defendants have a particularized need for these depositions. *See* [103] 5. The Court agrees that, given the information these witnesses may have about plaintiff's damages (which could be substantial, if plaintiff prevails) and the fact that plaintiff controls these witnesses, there is a particular need for defendants to depose them. The Court therefore grants defendants' motion for leave to depose Alanae Robinson, Allen Robinson III, and Shanice Johnson.

#### B. Witness Related to Lamarius Robinson's Alleged Involvement in the Shooting

Defendants also seek to depose Jenee Moreland, "who is [plaintiff's] former girlfriend and the mother of his child." [97] 8. During state postconviction proceedings, Moreland stated in an affidavit that, on the night of Hanford's murder, she picked up plaintiff's cousin, Lamarius Robinson, near Cicero and Chicago Avenues, and Lamarius told her that "he had just killed someone." [97-2] at ¶ 3. At a subsequent evidentiary hearing, Moreland testified that she told plaintiff about Lamarius's admission but that she was never contacted by plaintiff's trial attorneys. [97-3] 8-10. Defendants contend they need to depose Moreland "to determine whether she will provide testimony that is consistent with her prior testimony and affidavit" and to explore "why she did not tell anyone, other than Plaintiff, that Lamarius told her he killed someone on the night of the murder." [97] 8-9. Plaintiff does not address this deposition. The Court concludes that defendants have shown a particularized need for this deposition: Moreland's testimony appears quite important to plaintiff's wrongful-conviction theory, and thus defendants reasonably seek to confirm that Moreland will testify consistently with her prior testimony or whether she will recant it. The fact that Moreland and plaintiff share a child and had a romantic relationship that lasted more than six years, *see* [97-3] 6, further suggests that defendants should be permitted to depose Moreland, who may be biased in plaintiff's favor.

#### C. Plaintiff's Alibi

Defendants also wish to depose Ethel Lewis, a former co-worker of plaintiff's mother Lantanya Fleming who defendants believe will offer testimony to corroborate plaintiff's alibi. *See* [97] 9. During postconviction review, Fleming stated in an

6

affidavit that plaintiff arrived at her place of work at 9:00 p.m. to give her a ride home; however, Fleming was asked to work until 10:30 p.m., and Fleming allegedly told plaintiff to wait for her in his car in the parking lot. [97-4] at ¶¶ 3-4. Fleming further stated that, when she got off work, plaintiff "was waiting in his car in the parking lot, and he then drove [her] home." [*Id.*] at ¶ 5. For her part, Lewis submitted an affidavit stating that, "[o]n a winter day in 2008," Lewis was working with Fleming late into the evening, "possibly around 9:00 p.m.," and was "introduced to Fleming's son[,]" *i.e.*, plaintiff. [97-5] at ¶ 3. Fleming did not recall exactly when she met plaintiff, but stated that it was "on a day when [plaintiff] came to pick up Ms. Fleming, but then Ms. Fleming had to stay later at work," which was "unusual." [*Id.*] at ¶ 4. Plaintiff concedes that there is a particularized need for this deposition, *see* [103] 5, and the Court agrees. Lewis has important evidence that could corroborate plaintiff's alibi claim, and defendants are entitled to explore her testimony to assess the strength of that defense and its impact on the case.

### D. Other Prosecutors

Defendants seek leave to depose ASA Tene McCoy-Cummings, who "interviewed witness Deandre Guyton on March 30, 2009" and "examined him before the grand jury," and ASA Suzi Collins, who was one of the prosecutors at plaintiff's criminal trial. *See* [97] 5, 10. Defendants contend that it is common for plaintiffs in wrongful-conviction suits to disclose prosecutors who worked the underlying case and argue that these prosecutors may have information about the malicious-prosecution claim. [*Id.*] 10. Based on the cursory and purely conclusory argument made by defendants, the Court is unable to find–even in the absence of an argument from plaintiff[5]–that a particularized need for either of these depositions exists. While the Court understands from the complaint that Guyton, who is now deceased, *see* [98-2] 4, was an important witness who implicated plaintiff in the shooting, *see* [1] at ¶¶ 37-40, 55-59, the Court has no basis to conclude that either ASA McCoy-Cummings or ASA Collins has relevant testimony about plaintiff's claims. *See PeopleFlo*, 2022 WL 1062706, at *2-3. In so ruling, the Court notes that there is no indication that these prosecutors, even if no longer serving in that role, are unfriendly witnesses who are unwilling to speak with the officer defendants' attorneys. The Court also observes that defendants have already noticed the depositions of two felony review ASAs–one of whom interviewed Guyton and typed Guyton's statement in which he stated he saw plaintiff kill Hanford–and another ASA who was also a prosecutor at plaintiff's trial. *See* [97] 4.

---

[5] While the Court has discretion to construe plaintiff's response as a forfeiture of any arguments in opposition to this portion of the motion, *see Sciarrone v. Amrich*, No. 19 C 4584, 2020 WL 2900938, at *8 n. 8 (N.D. Ill. June 3, 2020), the Court still recognizes that defendants have the burden to establish a particularized need for the depositions at issue.

7

### E. Forensic Scientist

Finally, defendants seek to depose Lisa Fallara, a forensic scientist with the Illinois State Police who conducted DNA testing in 2015 on a letter and envelope that Lamarius Robinson sent plaintiff. [97] 11. Defendants state that they "must depose Fallara so that she may explain the tests she ran and her analysis," from which she determined that "a sample from the envelope was associated with" Lamarius Robinson. [*Id.*]. Because defendants' argument establishes only that Fallara may have relevant information, the Court finds that defendants have not made a particularized showing of the need for this deposition. *See PeopleFlo*, 2022 WL 1062706, at \*3. Indeed, defendants do not contend that Fallara did not prepare a report or submit written test results during state postconviction review, nor do they contend that such materials are insufficient for them to understand the testing that she performed and how that testing relates to plaintiff's claims.

## IV. Rule 404(b) Witnesses

Finally, defendants seek to depose nine witnesses who have been disclosed as Rule 404(b) witnesses: Zae Russell, Tony Fernandez, Anthony Bennett, Jeffrey Brown, James Mustafa, Randell Williams, Melvina Smith, Dante Smith, and Thomas Moorer. [97] 10-11. In his opposition brief, plaintiff represents that he has "reduced his witness list from nine 404(b) witnesses to two." [103] 1 n.1 Thus, the only 404(b) witnesses in dispute are Russell and Fernandez. *See* [*id.*] 6-7. Plaintiff disclosed these witnesses as having knowledge of the officer defendants' alleged misconduct with respect to other criminal investigations. *See* [97-1] 4-5. Because plaintiffs "will likely argue that these witnesses demonstrate a pattern or practice that occurred during the homicide investigation in this case," defendants argue that they "must have the opportunity to examine these witnesses as it relates to any alleged pattern and practice conduct in the context of this particular case." [97] 11-12. Plaintiff contends that both witnesses were deposed and testified in a separate § 1983 lawsuit, and that defendants can rely on that evidence in lieu of deposing those witnesses here. [103] 6-7.

Unfortunately, the parties' cursory briefing on this issue does not permit the Court to make an informed decision whether there is a particularized need to depose either or both of the 404(b) witnesses. Most importantly, the Court is completely in the dark about the nature of the alleged misconduct that these witnesses experienced in other cases and how that misconduct relates to plaintiff's claims here. Furthermore, the parties have not bothered to support their arguments with relevant case law that addresses this very issue. For example, Judge Harjani discussed the proper scope of Rule 404(b) discovery in a wrongful-conviction case at length in *DeLeon-Reyes v. Guevara*, Case Nos. 18 CV 1028 & 18 CV 2312, 2020 WL 1429521 (N.D. Ill. Mar. 18, 2020), but neither party has tried to show how that case supports its position. Nor do the parties address whether or how the tightened standard for

8

admitting Rule 404(b) at trial established in *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014), affects the scope of 404(b) discovery in general or the depositions in particular. *See DeLeon-Reyes*, 2020 WL 1429521, at *3 ("Rule 404(b) and the *Gomez* holding, while not controlling on this discovery decision, certainly signal the need to proceed with caution" when addressing parties' dispute over number of 404(b) witnesses to be deposed); *see also Doe v. United States*, Case No. 22 C 50128, 2024 WL 770752, at *2-3 (N.D. Ill. Feb. 2, 2024) ("the likely inadmissibility" of 404(b) witnesses' testimony "suggests that the proportionality of the depositions at issue should be given a close look").

For these reasons, the Court declines to resolve the parties' dispute over the number of 404(b) witnesses to be deposed. The parties must further meet and confer about the depositions of the 404(b) witnesses in accordance with the Court's standing order on discovery motions, and the Court will not entertain a further motion on this issue unless the motion and the required Local Rule 37.2 certificate demonstrate that the parties have meaningfully attempted to reach an agreement in light of the Court's proportionality findings and the relevant case law discussed above.

## Conclusion

Defendant's motion for leave to depose more than ten witnesses [97] is granted in part and denied in part as provided herein.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 3, 2025**

9