IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLEN ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 23-CV-2724 |
| v. | ) |
| | ) Hon. Judge Martha M. Pacold |
| WAYNE FRANO, et al, | ) Mag. Judge Heather K. McShain |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT OFFICERS' RESPONSE TO PLAINTIFF'S MOTION
FOR PROTECTIVE ORDER OVER THE DEPOSITION OF JODI GARVEY**

NOW COME Defendant Officers, by and through their undersigned counsel, and in response to Plaintiff's Motion for Protective Order Over the Deposition of Jodi Garvey, state as follows:

**INTRODUCTION**

In this case, Plaintiff accuses Defendants of, *inter alia,* fabricating witness statements and false identifications, withholding exculpatory evidence from prosecutors, and destroying evidence as part of several alleged violations of his Constitutional rights related to his arrest, prosecution, and conviction for the murder of Christopher Hanford (Hanford). Dckt. No. 1. Plaintiff's claims here, along with those contained in his successful petition for post-conviction relief filed by his post-conviction attorney, Jodi Garvey (Ms. Garvey), focus on Plaintiff's theory that his innocence is allegedly established by various exculpatory evidence, which Plaintiff's trial attorney was ineffective for not investigating, and much of which also allegedly identifies his cousin, Lamarius Robinson (Lamarius), as Hanford's true killer. *See, e.g.,* Plaintiff Answer to Defendant Brasic's Interrogatory No. 14, attached as Exhibit 1 (referring to Plaintiff's Post-Conviction Petition)*; see also,* Plaintiff's Post-Conviction Petition, attached as Exhibit 2. It is for these reasons that Defendants sought Ms. Garvey's

1

deposition – a witness who has been disclosed by both Plaintiff and Defendants as a trial witness. Notwithstanding Plaintiff lacking standing to bring any motion on Ms. Garvey's behalf, Plaintiff argues that the burden on Ms. Garvey is too great to sit for a deposition because of her current job assisting judges in appointing attorneys to represent criminal defendants. *See* Dckt. No. 117 at pp. 3 (describing Ms. Garvey's role as one that "aids judges in this District with criminal defense appointments."). As established below, not only should Plaintiff's arguments be disregarded because Plaintiff's counsel is not Ms. Garvey's attorney, but the information provided by Plaintiff does not establish how Ms. Garvey's current position should preclude Defendants from deposing Ms. Garvey. Moreover, the information sought is not only highly probative, but it is not protected by attorney-client privilege. For the reasons stated herein, Plaintiff's Motion for Protective Order must be denied.

## BACKGROUND

Plaintiff disclosed Ms. Garvey as a witness who "may have information about the police investigation that caused Plaintiff's wrongful prosecution and conviction, witness interviews, lineups, and false documents implicating Plaintiff in the crimes, Plaintiff's criminal proceedings and the Defendants' misconduct as alleged in the complaint." *See* Plaintiff Allen Robinson's Second Supplemental Rule 26(a)(1) Disclosures, attached as Exhibit 3, No. 5(2nd b)(*sic*). Defendants similarly disclosed Ms. Garvey as a witness who, "May testify about the events as set forth in Plaintiff's Complaint, Plaintiff's arrests and interactions, conversations, and observations relating to this case. May testify regarding Defendants' investigation into the murder of Christopher Hanford. May testify regarding allegations of misconduct as set forth in Plaintiff's Complaint." *See* Defendant Officers' Rule 26(a) Disclosures, attached as Exhibit 4, No. 89.[1] Plaintiff has since stated that he will not withdraw Ms. Garvey as a witness that he may call at trial; similarly, Defendants have not withdrawn Ms. Garvey

---

[1] This document is incorrectly titled "Defendant Officers' Answer to Plaintiff's Complaint" but explicitly states in the introduction paragraph that these are disclosures pursuant to Fed. R. Civ. Pro. 26(a).

2

and require her deposition based on the information she developed and arguments she made on Plaintiff's behalf in his underlying criminal prosecution post-conviction proceedings.

In relevant part, Ms. Garvey premised several of Plaintiff's ineffective assistance of counsel claims in his post-conviction petition on an argument that Plaintiff disclosed the existence of exculpatory evidence to his trial counsel, Charles Piet (Mr. Piet), who failed to investigate the alleged evidence. Ex. 2. at pp. 15-33. Plaintiff also signed two affidavits and attached each to his post-conviction petition which respectively verified the facts and allegations contained therein and, detailed Plaintiff's alleged conversations with Mr. Piet. *Id.* at pp. 45-47. According to Plaintiff's averments in the latter affidavit, Plaintiff allegedly told Mr. Piet to speak with 1) Quinton Davis and Jenee Moreland, who would have testified to Lamarius's guilt for the Hanford murder; 2) Quinton Davis, to authenticate Lamarius's handwriting in a letter Plaintiff allegedly received from Lamarius; 3) witnesses Johntay Washington, Ozell Jackson, February Burage, Jamion Winters, and Aaron Marshall, to impeach the testimony of the State's key witness, Oscar Russell;[2] and 4) Plaintiff's mother, who would provide Plaintiff with an alibi. *Id.* at pp. 46-47. At Plaintiff's trial, however, Mr. Piet presented no evidence in his defense, nor did he call any of these witnesses. *Id.* at p. 47.

Plaintiff also testified to many of these topics and to the content of his conversations with his trial counsel at his third stage evidentiary hearing. *See* 2022-4-28 Third Stage Evidentiary Hearing Report of Proceedings, pp. 36:1-42:13, attached as Exhibit 5. Ms. Garvey also disclosed her efforts in obtaining affidavits from Jackson, Winters, and Burage in Plaintiff's post-conviction petition, and discussed her conversations with them in her supplement thereto. Ex. 2 at pp. 25-26 n. 3, n. 4; Supplement to Plaintiff's Post-Conviction Petition, attached as Exhibit 6, p. 3. In Plaintiff's

---

[2] Oscar Russell implicated Plaintiff as killing Hanford. Since that time, Russell has recanted and Defendants sought leave to depose these witnesses to determine whether they would, in fact, impeach Russell or corroborate his earlier implicating statement. Defendants cannot depose Johntay Washington, Ozell Jackson or Aaron Marshall. Dckt. No. 113.

3

supplement to his petition, Ms. Garvey also added two claims: that DNA analysis of a letter allegedly written by Lamarius, wherein he purportedly confessed to the murder, confirmed the letter's authenticity, and that a *Brady* violation occurred where the Chicago Police officers failed to disclose the contents of interviews of purported witnesses. *Id.* at pp. 1, 3.

Mr. Piet, for his part, never appeared in Plaintiff's post-conviction proceedings to address his prior representation of Plaintiff, a fact which Judge Brosnahan deemed "highly unusual" in that context. Ex. 5 at p. 43:18-24; *see also* 2022-5-2 Granting of Plaintiff's Petition for Post-Conviction Relief Report of Proceedings pp. 4:2-16, attached as Exhibit 7. As it happens, Plaintiff's petition was granted solely based on the ineffective assistance of Mr. Piet. *See,* Ex. 7, p. 9:18-20.[3]

In Plaintiff's present case, Defendants successfully served Ms. Garvey with a deposition subpoena on January 31, 2025, and scheduled her deposition for March 10, 2025. *See* Garvey Subpoena Proof of Service, attached as Exhibit 8. Defendants intended to inquire into the exculpatory evidence Plaintiff and Garvey set forth in Plaintiff's post-conviction proceedings, the evidence related to Plaintiff's alleged alibi, which he has since abandoned, the evidence surrounding the purported "real killer," and evidence Ms. Garvey argued existed of Defendants' witness coercion and evidence fabrication. Plaintiff did not and has no objection to the deposition subpoena. Instead, on March 6, 2025, Plaintiff's counsel advised that it would seek a protective order because Ms. Garvey presently works to pair attorneys with criminal defendants in this District, and later asserted that Plaintiff may claim privilege over certain testimony by Ms. Garvey.[4] However, Plaintiff's counsel also stated that Plaintiff does not intend to withdraw Ms. Garvey as a witness who may testify at trial.

---

[3] Defendants cannot depose Mr. Piet. Dckt. No. 113.
[4] While the issue of privilege is not before the Court, as established herein, Plaintiff waived privilege over his communications with Ms. Garvey, as well as his criminal defense attorneys. Nevertheless, it is premature for this Court to consider whether there is attorney-client privilege with conversations with Ms. Garvey where it was not the subject of a L.R. 37.2 conference relative to this motion, and Defendants have not questioned Plaintiff or Ms. Garvey. Nevertheless, Defendants address the issue of privilege herein, *infra* Section III.

4

# ARGUMENT

## I. Plaintiff's Counsel, Who Does Not Represent Ms. Garvey, Has No Standing to Object to Ms. Garvey's Deposition.

It is well established law that "a party lacks standing to quash a subpoena issued to a nonparty unless the party has a claim of privilege attached to the information sought or unless it implicates a party's privacy interests." *Malibu Media, LLC v. John Does 1-14*, 287 F.R.D. 513, 516 (N.D. Ind. 2012); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill. 2013); *Kessel v. Cook County*, 2002 WL 398506 at *1–2 (N.D. Ill. Mar. 13, 2002). Here, Defendants subpoenaed a third party, Ms. Garvey, for a deposition. Plaintiff's counsel then filed – on Plaintiff's behalf – this motion seeking a protective order over Ms. Garvey's deposition asserting an undue burden argument on behalf of Ms. Garvey. Undue burden, relevance, and scope objections, however, rest with the subpoena's recipient to make not a party to the litigation. *See Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, 2017 WL 5478297, *3 (N.D. Ill. Nov. 15, 2017); *Parker*, 291 F.R.D. at 187; *DeLeon-Reyes v. Guevara*, 2020 WL 3050230, at *2 (N.D. Ill. June 8, 2020*); *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 2020 WL 4676666, at *3 (N.D. Ill. Aug. 12, 2020); *Kessel*, 2002 WL 398506, *1–2. Thus, "[a]s a non-recipient of the subpoena, Plaintiff has no interest in any undue burden that compliance would require, and Plaintiff thus has no standing to object on that basis." *See Allstate Ins. Co.*, 2017 WL 5478297 at *3. To be clear, Plaintiff does not object to the subpoena on the basis of burden to Plaintiff. Fed. R. Civ. Pro. 26(c)(i); 45(d)(3)(A)(iv) (allowing a party to object on the basis of burden). Rather, Plaintiff argues it would subject Ms. Garvey to undue burden because of her position. Neither Plaintiff nor Plaintiff's counsel represents Ms. Garvey and therefore neither have standing to argue whether there is any burden on Ms. Garvey's behalf. At the outset, Plaintiff's motion must be denied.

## II. Plaintiff Fails To Establish the Necessity Of A Protective Order Under Rule 26.

Federal Rule of Civil Procedure 26(c) provides that "court[s] may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, undue burden or

5

expense…" Plaintiff's claim to the necessity of a protective order under this Rule, is firstly, facially insufficient to establish that Ms. Garvey sitting for a deposition presents an undue burden. Secondarily, Plaintiff's proportional necessity argument distorts the discovery standard set forth in Rule 26, which clearly favors Defendants deposing Ms. Garvey in this case.

      a. **Plaintiff's Undue Burden Argument Is Insufficient On Its Face.**

It is Plaintiff's burden to establish good cause exists to support the issuance of a protective order – and Plaintiff has not met his burden here. *Malibu Media, LLC*, 291 F.R.D. 191, 206 (N.D. Ill. 2013)("The moving party bears the burden of showing that good cause exists for a protective order. In deciding whether good cause exists, a "district court must balance the interests of the parties, taking into account the harm to the party seeking the protective order and the importance of the disclosure to the nonmoving party.") "As a crucial part of the good cause basis for a protective order, the moving party must make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 766 (N.D. Ill. 2010). Even where a moving party establishes there is good cause for a protective order, a court must still weigh the burden on the party seeking the information if it were denied the material necessary to its claims or defenses. *Id.* at 766–67.

Plaintiff's entire argument hinges on the fact that Ms. Garvey is a non-party who currently works as a Circuit Criminal Justice Act Attorney, a neutral position outside of client advocacy, who aids appointing criminal counsel for criminal defendants in this District. Ms. Garvey's role, however, does not in and of itself preclude Defendants from deposing her. Public officials, those with high-ranking positions, even United States District Court judges, are not immune from deposition subpoenas. *See Hobley v. Burge,* 2007 WL 551569, at *2 (N.D. Ill. Feb. 22, 2007)(stating that while "[t]he deposition of a high ranking public official creates unique concerns [and] it should not be a routine part of civil litigation, [o]n the other hand, if the official has discoverable information, the parties may

6

not be deprived of that information simply because of the official's status.") *citing Clinton v. Jones,* 520 U.S. 681, 703-05 (citing cases in which the President of the United States was required to provide testimony); *see also Northwestern Univ. v. City of Evanston,* 2001 WL 743756 (N.D. Ill. June 29, 2001)(permitting deposition of mayor and city manager); *Almodovar v. Guevara*, No. 18-CV-2341, (Judge Matthew Kennelly deposed on June 2, 2021).

Ms. Garvey, who has not filed this Motion, has not established how there is any burden on her to testify to information and arguments she developed and made in her capacity as Plaintiff's criminal defense attorney. Plaintiff's sole argument is that it would "force Ms. Garvey to reassume her work as an advocate." Dckt. No. 117 at p. 3. To the contrary, Defendants are not asking Ms. Garvey to resume her representation of Plaintiff. Rather, Defendants simply seek to discover what evidence she developed, confirm certain arguments and evidence she presented in her representation of Plaintiff, ascertain her basis for making certain arguments or presenting certain evidence, and determine what evidence Ms. Garvey possesses relative to the claims Plaintiff now makes. This is all based on evidence in this case and is discovery Defendants are entitled to seek in light of Plaintiff's claims that Defendants fabricated evidence, coerced witnesses, and withheld exculpatory evidence.

To that end, post-conviction counsel are routinely deposed in cases raising similar claims to Plaintiff. *See, e.g., Ott v. City of Milwaukee,* 291 F.R.D. 151, 155 (E.D. Wis. 2013)(referencing the deposition of the plaintiff's post-conviction attorney, John Pray); *Walker v. White*, 2019 WL 1953124, at *3 (N.D. Ill. May 2, 2019)(same); *Andersen v. City of Chicago, et al.,* No. 16-CV-1963 (the plaintiff's post-conviction counsel, Steve Drizin, deposed on May 10, 2018 in a case litigated by the same attorneys as this case); *Taylor v. City of Chicago, et al.,* No. 14-CV-737 (the plaintiff's post-conviction counsel, Kathleen Zellner, deposed on May 6, 2015 in a case litigated by the same attorneys as this case); *Jackson v. Wojcik, et al*, No. 23-CV-2027 (the plaintiff's post-conviction counsel, Jennifer Blagg, deposed on August 5, 2024 in a case litigated by the same attorneys as this case). Plaintiff simply makes

7

no substantive argument for why Ms. Garvey's employment affects her ability to testify as Plaintiff's former post-conviction counsel in his civil lawsuit and thus fails to establish the cause necessary to obtain a protective order. To be clear, Defendants have no intention of deposing Ms. Garvey regarding her position in working to appoint attorneys in this District to criminal court cases.

      b. **Plaintiff's Relevancy and Necessity Arguments Distort the Scope of Rule 26 Discovery Standard.**

Plaintiff's position that the relevance of Ms. Garvey's potential testimony is somehow "unclear," and that there is no "apparent need" for her deposition are simple straw-man arguments which do not apply the Rule 26 standard. Under Rule 26, the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly as applied under Rule 26. *DeLeon-Reyes v. Guevara*, 2020 WL 3050230, at *5 (N.D. Ill. June 8, 2020). Thus, in this context, the relevance of discoverable information is not measured against its admissibility as evidence. Fed. R. Civ. P. 26(b)(1).

The central issues in Plaintiff's lawsuit include 1) Plaintiff's innocence; 2) the existence of probable cause for Plaintiff's arrest and indictment for murder; 3) whether Defendants withheld exculpatory evidence from the prosecutors in Plaintiff's criminal trial; and 4) whether Defendants fabricated witness statements and/or false identifications. Defendants expect Ms. Garvey to testify directly to Plaintiff's alibi and alibi-by-proxy (i.e., that Lamarius killed Hanford) – both of which center on Plaintiff's factual innocence.[5] Moreover, even outside the context of Plaintiff's claimed privileged

---

[5] Testimony of this nature is directly relevant to Plaintiff's malicious prosecution claim because his conviction's vacatur was not predicated upon reasons indicative of his innocence. *Logan*, 246 F.3d at 924–25 (Under Illinois Supreme Court precedent that "a *nolle prosequi* dismissal terminates a proceeding in favor of the accused unless the abandonment is for reasons not indicative of the innocence of the accused."). Therefore, Plaintiff has the burden of proving that his criminal proceedings terminated his favor – of proving his innocence – to satisfy his federal and state malicious prosecution claims in this case. *Id.* at 925; *see also*, *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016)(the termination of termination of the proceeding in favor of plaintiff is an element of a state-law malicious prosecution claim in Illinois); *Chandler Nat. Gas Corp. v. Barr*, 110 F. Supp. 2d 859, 874–75

8

communications (discussed in detail below), Ms. Garvey's potential testimony is relevant to Plaintiff's legal claims. *See Logan v. Caterpillar, Inc.,* 246 F.3d 912, 925 (7th Cir. 2001) ("To determine whether the proceedings against Logan were terminated in his favor, we must look past the form or title of the disposition and examine the circumstances surrounding the entry of the *nolle prosequi*.")

Ms. Garvey's testimony will also shed light on Defendants' probable cause defense, which, in large part, centers on her actions related to Oscar Russell's affidavit and her interactions with him. Russell provided a verbal statement to police implicating Plaintiff as Hanford's murderer in December of 2008, signed a statement implicating Plaintiff in the murder in March of 2009, and then testified before the grand jury to procure Plaintiff's indictment and then at Plaintiff's criminal trial, consistent in his statements and testimony throughout. In an affidavit attached to the post-conviction petition filed by Ms. Garvey, however, Russell recanted and alleged that police coercion caused him to make false statements. Ms. Garvey's interactions with Russell and the circumstances of his recanting are thus critical to several of Plaintiff's claims. *See*, e.g., *Wilson v. O'Brien,* 2009 WL 763785, at *9 (N.D. Ill. Mar. 20, 2009)(finding that information concerning a recanting witness's motivations for changing their tune relevant in § 1983 case alleging Due Process, conspiracy, and failure to intervene claims); *see also, Jump v. Village of Shorewood*, 42 F.4th 782, 788 (7th Cir. 2022)("The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest."); *Haynes v. City of Chicago*, 2022 WL 1016392, *2 (N.D. Ill. Apr. 5, 2022)("The existence of probable cause defeats an unlawful detention claim."); *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 73 (1st Dist. 2003)("[T]he failure to prove a lack of probable cause is fatal to a claim of malicious prosecution."); *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 351 (7th Cir. 2019)(providing that an Illinois grand jury

---

(S.D. Ind. 2000)("The elements of a claim for malicious prosecution under 42 U.S.C. § 1983 are: (1) plaintiff must satisfy the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution must be committed by state actors; and (3) plaintiff must have been deprived of liberty.")

9

indictment is prima facie evidence of probable cause which "may be rebutted by evidence that law enforcement obtained the indictment through improper or fraudulent means.")

The deposition of Ms. Garvey will also illuminate several *Brady* related factual issues concerning what allegedly exculpatory evidence was or was not within Plaintiff and his attorney's knowledge at the time of his trial. Plaintiff's ability to prove these claims requires that he "prove the existence of the facts claimed to be suppressed, that the facts meet the standard of constitutional materiality, and *that he and his attorney lacked knowledge of that evidence.*" *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 717–18 (N.D. Ill. 2015) (emphasis added). Here, Ms. Garvey disclosed in her Plaintiff's post-conviction petition that Plaintiff "informed his trial counsel that [Johntay Washington, Ozell Jackson, Jamion Winters and February Burage] …would be willing to testify at Plaintiff's trial that they were not present for the shooting of Hanford" and could impeach Oscar Russell's testimony otherwise." Ex. 2 at p. 24. Indeed, this was the basis for Plaintiff's *Brady* claim in the supplement to his petition. Ex. 6 p. 4. Plaintiff also alleges here that Defendants "withheld exculpatory evidence," such as "evidence that Defendants had manufactured false identifications of Plaintiff," making Ms. Garvey's interactions with Russell further relevant to Plaintiff's *Brady* and fabrication claims in this case. Dckt. No. 1 at ¶119. Even were Defendants only permitted to inquire into a fraction of these topics, the benefit of Ms. Garvey's testimony outweighs any claimed burden.

Nevertheless, Plaintiff's motion posits that Ms. Garvey's testimony concerning her decision to bring an ineffective assistance of counsel claim constitutes privileged information and/or protected work product. This argument falls short though as Plaintiff, personally and through Ms. Garvey, waived his attorney-client privilege concerning at least several topics which he discussed with his criminal counsel and Ms. Garvey that are central to his claims and Defendants' defenses in this case

(Ms. Garvey, for her part, also waived any work-product protection she could claim over the evidence attached to Plaintiff's petition for post-conviction relief and supplement to his petition as well).[6]

Plaintiff's motion next improperly replaces Rule 26's proportional necessity factorial analysis with one of pure necessity in arguing that there is no apparent need for Ms. Garvey's deposition. *See, e.g.,* Fed. R. Civ. P. 26(b)(1) (establishing proportionality of discovery). Plaintiff's contentions in support of this argument, however, constrain the scope of Ms. Garvey's potential testimony for purely argumentative purposes. For example, Plaintiff points to just two witnesses (Quinton Davis and Oscar Russell) whose testimony he claims will be "duplicative" of Ms. Garvey's testimony.[7] Even if that were true, and there is no basis to conclude it is, this assertion neglects that Defendants cannot depose several individuals involved in Plaintiff's criminal proceedings whose participation is known to Ms. Garvey, and only Ms. Garvey. For example, while Ms. Garvey's testimony may topically overlap with that of Davis and Russell because her interactions with them are relevant to Plaintiff's present lawsuit, Davis and Russell cannot testify about Ms. Garvey's interactions with Jackson, Washington, Burage and Marshall (who are also under oath as affiants in support of Plaintiff's post-conviction petition) whom Defendants cannot depose. Ms. Garvey can also testify to matters concerning other individuals whom Defendants cannot depose, such as Mr. Piet, and the state's attorneys involved in Plaintiff's post-conviction proceedings. At this point, Defendants have no access to information these individuals can testify to absent deposing Ms. Garvey. Plaintiff also seeks to force Defendants to rely on Blegen's subpoena production, which he claims "speaks for itself," as a substitute for Ms. Garvey's deposition testimony. This is not true where Ms. Garvey acted outside of what is contained in the

---

[6] Defendants will address this issue more thoroughly *infra*, in Section III.
[7] Plaintiff claimed in his motion that Defendants postponed Oscar Russell's deposition – this is false. Plaintiff postponed this deposition the night before it was scheduled (See 2025-3-6 Party to Party Correspondence attached Exhibit 9) and, curiously, less than 24 hours after producing two texts between Plaintiff and Russell in which Russell apologized for "snitching" on Plaintiff (as opposed to lying about what actually happened) See 2025-3-5 Party to Party Correspondence with attachments, attached Exhibit 10; 2025-3-6 Additional Party to Party Correspondence attached as Exhibit 11).

11

record, only disclosing, or chose not to disclose, the results or conclusions of any conversations or discovery she conducted. It also bears noting that for any summary judgment motion, Defendants cannot rely on hearsay records, nor can Defendants present records in lieu of presenting a live witness at trial. That Plaintiff does not intend to withdraw Ms. Garvey as a disclosed trial witness cuts against the credibility of this argument and Plaintiff's broader "necessity" argument too.

Plaintiff's final assertion that Defendants request to depose Ms. Garvey is too broad due to the seven-hour length and "unconstrained scope of questioning" is not relevant under Rule 26's proportionality analysis. See, e.g., Rule Fed. R. Civ. P. 26(b)(1)-(2). Defendants are neither asking for more time than they are permitted under Rule 30, nor seeking testimony from Ms. Garvey which departs from Rule 26(b)(1)'s discoverability standard. Indeed, everything argued in this Response establishes that the testimony Defendants seek arise entirely from the claims Plaintiff makes in this case, to wit, fabrication of evidence, coercion of witnesses, withholding of exculpatory evidence, and claims of innocence. Plaintiff cannot escape that based on the centrality of Ms. Garvey's testimony to the essential issues at stake here, the parties disparate access to Ms. Garvey's knowledge to these issues, the surefire fact that Plaintiff seeks millions of dollars per year for his incarceration in this lawsuit (in addition to punitive damages), and that benefit of Ms. Garvey's testimony outweighs any claimed burden of her sitting for a deposition, Plaintiff's motion should be denied. Rule 26 and its proportionately considerations clearly favor Defendants.

### III. Plaintiff Waived Attorney-Client Privilege and Attorney Work Product Protections Related to Ms. Garvey's Testimony.

The attorney-client privilege "extends to confidential communications between client and attorney, made 'in order to obtain legal assistance.'" *U.S. v. Leonard-Allen*, 739 F.3d 948, 952 (7th Cir. 2013). "Any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989). The purpose of the attorney-client privilege is "to encourage

clients to make full disclosure to their attorneys, and its scope is informed by this purpose [but,] [b]ecause the privilege may operate 'in derogation of the search for truth,' we 'construe the privilege to apply only where necessary to achieve its purpose." *Leonard-Allen*, 739 F.3d at 952–53.

Plaintiff's general argument here that the attorney-client privilege and attorney work-product protections make it "difficult to imagine what questions Defendants will pose that do not fall into these protected categories" lacks any support in established law, let alone the facts of this case, Plaintiff's criminal case, and Ms. Garvey's previous representation of him. In fact, Plaintiff has thrice over voluntarily disclosed the contents of several communications between him and his criminal trial counsel: first, to the public as disclosed by Ms. Garvey's arguments in Plaintiff's signed post-conviction petition; second, in his affidavit attached to the same; and third, via direct testimony at his evidentiary hearing. As a result, Plaintiff's pondering over what topics Defendants may inquire into when deposing Ms. Garvey neglects the obvious, non-privileged evidence Plaintiff cited in his own post-conviction petition and supporting material and testimony. *See Patrick*, 154 F. Supp. 3d at 719 (holding that conversations between a plaintiff and his criminal trial attorney were no longer privileged after they were disclosed in his post-conviction petition and affidavits which concerned the plaintiff's claimed alibi witnesses, the discussion of alibi defenses, and whether police misconduct procured evidence against the plaintiff resulting in his conviction).

In addition, in this District, "an implied waiver [of attorney-client privilege and attorney work-product] may be found where the privilege holder relies on a 'legal claim or defense, the truthful resolution of which will require examining confidential communications.'" *Id.* at 718 (quoting *Lorenz v. Valley Forge Insurance Co.,* 815 F.2d 1095, 1098 (7th Cir.1987)). For this reason, Plaintiff's *Brady* claim in this case impliedly waived any privilege and work product protections over Plaintiff's conversations with Mr. Piet and Ms. Garvey (plus any attorney work-product related thereto) which concern the evidence on which Plaintiff bases his *Brady* claims. *Id.* (opining that "[i]n light of these fundamental

principles [which determine whether the attorney-client privilege has been impliedly waived], it is not surprising that the court in *Taylor* concluded that by virtue of his *Brady* claims, the plaintiff impliedly waived the attorney-client privilege and work product protection as to those communications the subject matter of which involved the allegedly withheld information.") This would include, but is not limited to, the subject matter contained within Plaintiff's post-conviction petition, affidavit, and testimony at his evidentiary hearing, such as evidence of Plaintiff's alleged innocence, evidence purportedly against Lamarius, evidence related to Plaintiff's purported alibi, information related to Oscar Russell and the witnesses purportedly against him, and alleged exculpatory evidence relating to the Defendant Officers. Ex. 2 at pp. 13-38, 41-43, 46-47; Ex. 3 at pp. 35-43.

Under *Patrick,* Plaintiff's arguments on these matters is meritless – he cannot waive his attorney-client privilege and attorney work-product protections as a sword and subsequently claim them as a shield:

> A defendant in a criminal [sic] who had filed a postconviction claim for ineffective assistance of counsel case ha[s] to choose between protecting the confidentiality of communications with his criminal defense lawyer or pursuing his claim. If he chose to abandon his claim, the confidentiality of his communications would be preserved. If he chose to pursue his claim, the confidentiality of those communications would vanish. But choose he must…[H]e cannot have both objects of his desire. That the choice between pursuing a claim or preserving the confidentiality of communications with one's lawyer presents difficult and incompatible alternatives does not, as *Bittaker* recognized, make it impermissible to require that the choice be made. The legal system is replete with situations requiring the making of difficult judgments as to which course to follow. The fact that Mr. Patrick had to make such an election does not entitle him to judicial shelter from the consequences of his choice.

*Patrick*, 154 F. Supp. 3d at 718–19. In sum, based on the representations made by Plaintiff and Ms. Garvey in Plaintiff's post-conviction petition and supplement thereto, Ms. Garvey should sit for her deposition and testify as to her knowledge of these conversations along with any other non-privileged topics inquired into by Defendants.

So too, Plaintiff cannot claim Ms. Garvey holds privilege over her work product that has been disclosed in public filings. Plaintiff, through his post-conviction petition and supplement, explicitly

14

disclosed Ms. Garvey's work-product related to her conversations with third party witnesses such as Jackson, Winters, and Burage. *See* Ex. 2 at pp. 25-26 n. 3, n. 4 (stating that Ms. Garvey spoke to Jackson, Winters, and Burage about signing affidavits in support of Plaintiff's post-conviction petition); *see also* Ex. 3 p. 3 (disclosing the contents of Ms. Garvey's conversations with these same individuals). As such, the work product doctrine no longer extends to the evidence related to the information Ms. Garvey developed with these witnesses.

## CONCLUSION

For the reasons stated above, Defendant Officers respectfully request that this deny Plaintiff's Motion for Protective Order Over the Deposition of Jodi Garvey, and for any other relief that this Court deems just and reasonable.

          Respectfully submitted,
          BORKAN & SCAHILL, LTD.

By:    /s/ Drew E. Wycoff
        Drew E. Wycoff

Steven B. Borkan
Timothy P. Scahill
Emily E. Schnidt
Misha Itchhaporia
Drew E. Wycoff
Andrea F. Checkai
Special Assistants Corporation Counsel
BORKAN & SCAHILL, LTD.
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030
*Attorneys for Defendant Officers*