# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALLEN ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-cv-2724 |
| | ) |
| WAYNE FRANO, VINCENT CELIO, CARL | ) Judge Martha M. Pacold |
| BRASIC, TIMOTHY MCDERMOTT, JOHN | ) |
| FOLINO, JR., PATRICK CONROY, DAVID | ) Magistrate Judge Heather K. McShain |
| ZELIG, PETER BABICH, and the CITY OF | ) |
| CHICAGO, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' JOINT MOTION TO BIFURCATE §1983 CLAIMS AND TO STAY DISCOVERY AND TRIAL ON THOSE CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42(b) (*OPPOSED*)**

Steven B. Borkan
Timothy P Scahill
Misha Itchhaporia
Emily E. Schnidt
Drew E. Wycoff
Andrea F. Checkai
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
*Attorney for Defendant Officers*

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Katherine C. Morrison
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
*Attorneys for Defendant City of Chicago*

Plaintiff Allen Robinson filed a Complaint (Dkt. 1) asserting, *inter alia*, claims that invoke 42 U.S.C. §1983 against the City and eight former police officers from the Chicago Police Department ("Defendant Officers"). Plaintiff's lawsuit arises from his arrest, prosecution, and conviction for the December 2008 murder of Christopher Handford. As against the City, plaintiff asserts a claim pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging the City maintained policies and practices that caused the alleged constitutional violations.

On September 29, 2023, Magistrate Judge McShain entered an order setting forth a schedule for issuing discovery. Dkt. 60. Later, in ordering fact discovery to close on December 31, 2024, Judge McShain stated, "In setting this deadline, the Court expresses no views on the parties' apparent dispute over the scope of Monell discovery or whether such discovery should be bifurcated from discovery pertaining to the underlying section 1983 claims." Dkt. 67. Plaintiff did not issue any *Monell*-related discovery requests to the City, and did not otherwise identify any *Monell*-related evidence. On November 4, 2024, plaintiff raised for the first time his intention to pursue *Monell* discovery, in the form of 1265 complaint register ("CR") files that were produced by the City in a separate proceeding, the *In re Watts* litigation, which has nothing to do with this litigation. On Friday, May 9, 2025, less than three months before a twice-extended fact-discovery cutoff (which plaintiff partially opposed), plaintiff filed in this case a motion to modify the protective order entered in the *Watts* litigation in order to produce those 1,265 CR files produced in *Watts*. Dkt. 129. Given the substantial burden and prejudice undertaking *Monell* discovery will entail, this Court should bifurcate plaintiff's *Monell* claim and stay discovery on that claim.[1]

**RELEVANT BACKGROUND**

Following plaintiff's intention to pursue *Monell* discovery in the form of the CRs from the *Watts* litigation, counsel for the City objected to the use of those CRs in this case. See Correspondence,

---

[1] The City of Chicago's Rule 37.2 Certification is contained at the end of this motion.

attached as Exhibit 1, at 1-2. Specifically, counsel for the City pointed out that plaintiff had not pursued his *Monell* claim at all for the 18 months the case had been pending and recognized that the allegations in the *Watts* litigation involved former Sgt. Ronald Watts and members of his Second District tactical team collecting a street tax from drug dealers and allegedly planting evidence when those drug dealers would not pay. *Id.* at 2. Those allegations and the CRs at issue in the *Watts* cases bear no relation to the homicide investigation by Area 5 detectives here and plaintiff's corresponding *Monell* claim. *Id.*

Counsel for plaintiff and the City continued to discuss the matter, and plaintiff indicated he was interested in a limited consent from the City to obviate the *Monell* claim. *Id.* Counsel for the City provided plaintiff with a proposed limited consent (styled as a stipulation), which the City had used in numerous reversed conviction cases. *Id.* Plaintiff's counsel provided a revised version of the stipulation, containing the following paragraph:

> 4. Without admitting plaintiff's Monell allegations in his Complaint or any amended complaint incorporated into the Final Pretrial Order or filed at any time prior to the submission of the case to the jury (hereinafter the "Operative Complaint"), the City will consent to entry of judgment against the City for compensatory damages and, to the extent allowed by the Court, reasonable attorney's fees pursuant to 42 U.S.C. §1988, if and only if the Court or the finder of fact in this case finds that any of the Defendant Police Officers violated Plaintiff's constitutional rights as alleged in the Operative Complaint, and that finding is either not appealed or that finding is appealed and affirmed in a final, non-appealable ruling of the highest appellate court to hear the matter. This paragraph applies regardless of whether the finding is by summary judgment or after a trial on the merits. The parties agree that for purposes of this agreement, Defendant Police Officers include all individuals who are or have been Defendants in the case, including any who Plaintiff dismisses voluntarily.

*Id.* at 2-3. The parties again conferred, and plaintiff's counsel confirmed the reason for the language in this paragraph was to give plaintiff the option of voluntary dismissing a named defendant prior to trial, but then seek to hold the City liable at trial for that dismissed defendant's conduct even though he would not be a party at that point. *Id.* The City could not agree to such a proposal, yet remained hopeful plaintiff would agree to the stipulation offered by the City and welcomed further revisions from plaintiff. *Id.* The City further informed plaintiff's counsel that should plaintiff attempt to initiate

*Monell* discovery at this late date, it would move to bifurcate the *Monell* claim in order to save the time and resources litigating *Monell* discovery that plaintiff's counsel acknowledged is unnecessary. *Id.* at 3-4. In response to plaintiff's May 9, 2025 motion to modify the protective order entered in the *Watts* litigation, this motion to bifurcate *Monell* now follows.

## STANDARD OF REVIEW

The standards applicable to requests for bifurcation were recently summarized as follows:

> Under Federal Rule of Civil Procedure 42(b), the Court has considerable discretion to separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (citing *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999)); Fed. R. Civ. P. 42(b). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment," which guarantees a jury trial for civil cases in federal court. *Id.* at 700 (citing *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000)). Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); *see also, e.g., Horton v. City of Chi.*, 2016 WL 316878, at *2 (N.D. Ill. Jan. 26, 2016); *Saunders v. City of Chi.*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015).

*Blackmon v. City of Chicago*, 2020 WL 1888913, at *3 (N.D. Ill. Apr. 16, 2020). Deciding whether to grant bifurcation of a *Monell* claim rests within a court's sound discretion and should be decided on a case-by-case basis, considering the specific facts and claims presented in that particular action. *Id.*

## DISCUSSION

Motions to bifurcate *Monell* claims from the actions against individual defendants are "now commonplace and [c]ourts in [this] district have both granted and denied [such] motions…." *Andersen v. City of Chicago*, 2016 WL 7240765, at *3 (N.D. Ill. Dec. 14, 2016); *accord* Order, *Bishop v. White*, 16 CV 6040 (N.D. Ill. Nov. 2, 2020) (Alonso, J.), Dkt. 282 at 2-3 (collecting cases) (attached as Exhibit 2). The number of bifurcation motions, and the inclination of many judges to grant such requests, "stems in large part from the recognition that, often, 'claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.'" *Ezell v. City of Chicago*, 2019 WL 3776616, at *3 (N.D. Ill. Aug. 12, 2019), quoting *Horton*, 2016 WL 316878, at *2; *Saunders*, 146 F. Supp. 3d at 968; *Moore v.*

3

*City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007).

Here, bifurcation of the *Monell* claims and a stay of discovery related to those claims best serve the interests identified in Rule 42(b) of avoidance of prejudice, convenience, expedience, and economy. *Lindsey v. Orlando*, 232 F. Supp. 3d 1027, 1038 (N.D. Ill. 2017). Focusing on the underlying constitutional violations claimed by plaintiff against the individual defendants will result in a more efficient, streamlined litigation and will further judicial economy. *See Bavaro v. City of Chicago*, No. 20 C 1824 (N.D. Ill. Apr. 29, 2021) (Alonso, J.), Dkt. 65 at 3. It also will prevent undue prejudice against both groups of defendants (individual and municipal) and allow for more focused discovery, thereby benefiting all parties. And if bifurcation is granted, the City would agree to an entry of judgment against it for any compensatory damages awarded to plaintiff should he prevail on an underlying constitutional claim against any named Defendant Officer who was acting within the scope of his City employment during the relevant time. Bifurcation and a stay of the *Monell* claim thus represent a pragmatic decision favorable to all parties. *See Bishop v. White*, Exhibit 2, at 2-5.

**Bifurcation serves the interests of litigation and judicial economy.**

A.  <u>The City's liability is entirely dependent on the liability of Defendant Officers.</u>

Bifurcation will allow the parties to avoid burdensome, time-consuming, and likely unnecessary discovery while substantially reducing litigation costs. As a general rule, a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018) ("*Swanigan II*"); *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). Although a municipality could be liable under *Monell* even when its agents are not, this can only occur if such a finding would not create an inconsistent verdict. *Thomas v. Cook County Sheriff's Department*, 604 F.3d 292, 305 (7th Cir. 2010). To make that determination, the Court "must look to the nature of the constitutional violations, the theory of municipal liability and the defenses set forth." *Id.*

4

Analysis of the constitutional violations alleged in the Complaint demonstrates the City's *Monell* liability is entirely dependent on the underlying liability of its officers, such that bifurcation is an appropriate mechanism to streamline this case. Plaintiff claims only intentional misconduct by the individual Defendant Officers – he alleges they "fabricated witness statements falsely implicating Plaintiff in the crime," "deliberately" withheld exculpatory evidence from him, and "intentionally" fabricated evidence that was used at trial to convict him. (*See*, *e.g.*, dkt. 1, ¶¶ 116; 118; 119; 120). Based on the nature of these alleged constitutional violations, it is clear the City's potential *Monell* liability is contingent on the officers' liability for the underlying misconduct. For example, "fabricated witness statements falsely implicating Plaintiff in the crime," "deliberately" withheld exculpatory evidence from him, pursuant to the City's policies, practices, and customs. (*Id.*, ¶¶124, 130, 136, 143, 155). But if Defendant Officers did not "fabricate[] witness statements falsely implicating Plaintiff in the crime," "deliberately" [withhold] exculpatory evidence from him, or "intentionally" fabricate[] evidence that was used at trial to convict him (*i.e.*, violate his constitutional rights), any City "policy" that authorized or encouraged such misconduct is, to quote *Heller*, "quite beside the point." 475 U.S. at 799.

Analysis of plaintiff's other theories (suppression of exculpatory evidence; fabrication of evidence) yields the same conclusion. The City's potential *Monell* liability is wholly dependent on the officers' allegedly purposeful conduct, *i.e.*, whether they "deliberately" withheld exculpatory evidence or "intentionally" fabricated evidence. These allegations do not involve, as did *Thomas*, the possibility that a government agent unintentionally violated plaintiff's rights because of an impermissible policy.

Plaintiff's claims that his constitutional rights were violated are premised on the actions of the individual defendants, such that even if the City had the practice alleged, "the harm caused by the practice could only manifest itself through the officers' action." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1081 (N.D. Ill. 2018). For the City to be liable under a *Monell* theory here, a Defendant Officer must first be found to fabricated witness statements falsely implicating Plaintiff in the crime, fabricated

5

other evidence, or withheld exculpatory information in violation of *Brady*; if not, a finding against the City on a *Monell* claim would be inconsistent. Where, as here, the *Monell* claim "is wholly dependent on the outcome of the cases against the individual defendants," bifurcation "makes particular sense." *Lindsey*, 232 F. Supp. 3d at 1035.

Bifurcation has been granted in cases with similar *Monell* allegations to those presented here. In *Wrice v. Burge*, Case No. 14 C 5934 (N.D. Ill.), the court granted the City's motion to bifurcate the plaintiff's *Monell* claims. Pertinent to the issue here, the court explained:

> Here, Wrice's §1983 claims allege that the individual defendants violated his constitutional rights by coercing his and others' confessions and suppressing evidence of their use of such tactics. In several recent cases involving similar allegations, courts in this district have rejected the contention that *Monell* liability can be established without a finding that individual defendants violated the plaintiff's constitutional rights. *See, e.g., Andersen v. City of Chicago*, No. 16 C 1963, 2016 WL 7240765, at *1 (N.D. Ill. Dec. 14, 2016) ("Even if the City had a policy or practice of permitting its officers [] to coerce false confessions through force, the harm caused by the policy could only manifest itself through the officers' actions.").

*Wrice*, No. 14 C 5934, Dkt. #148, at 3 (Exhibit 3). Other courts have reached the same conclusion:

> [T]he policy of filing false reports and actively covering up illegal interrogations and confessions depends on the actions of individual police officers. The alleged harm to Plaintiff was not caused by any *de facto* policies independent of any officer's actions; thus, a constitutional violation by an individual officer must be found before the City may be held liable under the *Monell* claims. *See Claxton v. City of Chicago,* 2015 WL 5304630, at *1 (N.D. Ill. 2015) ("The alleged harm to Plaintiffs was not caused independently by these alleged City policies but rather through the Officer Defendants' actions, and thus the Officer Defendants must first be found liable before the City may be held liable on Plaintiffs' *Monell* claims.").

*Harris v. City of Chicago*, 2016 WL 3261522, at *3 (N.D. Ill. July 14, 2016).

Some plaintiffs, in opposition to this type of motion, have argued that granting the relief sought by the City potentially could deprive them of a remedy they could not obtain against the Defendant Officers. Specifically, these plaintiffs argue that they might prove a constitutional violation at trial but lose their claim against the City because of a successful qualified immunity defense by the individual defendants. (*See, e.g., Elrod v. City of Chicago*, 2007 WL 3241352, *4-5 (N.D. Ill. 2007)). But as recognized in *Elrod*, the likelihood of a successful qualified immunity defense in the context of the intentional misconduct alleged against the Defendant Officers is remote at best. *Id.* Moreover, as the

6

district court observed in *Ezell*, the relevant question is whether the Defendant Officers committed a constitutional violation, not whether they could be held civilly liable. 2019 WL 3776616, at *4.

But putting aside whether qualified immunity would apply given plaintiff's allegations, and to address this specific concern, the City will agree to entry of judgment against it for compensatory damages and, to the extent allowed by the Court, reasonable attorneys' fees, if the finder of fact determines a named Defendant Officer violated plaintiff's constitutional rights in one of the ways alleged in the complaint, even if the finder of fact further determines that officer is not liable because he is entitled to qualified immunity. *See* proposed Limited Consent to Entry of Judgment Against Defendant City of Chicago ("Limited Consent") (Exhibit 4).

Disposition of the claims against the Defendant Officers, in light of the City's proposed Limited Consent, would "practically end the litigation" such that bifurcation promotes judicial economy. *Harris*, 2016 WL 3261522, at *3; *see also Wrice*, Exhibit 3, at 5 ("In short, given that litigation of the *Monell* claim may ultimately prove unnecessary, bifurcation supports economy and convenience"); *Ezell*, 2019 WL 3776616, at *4 ("[T]he question of whether any Defendant Officer committed a constitutional violation is dispositive; Plaintiffs' claims for compensatory damages can be resolved without ever delving into any *Monell* claim").

B.     Bifurcation minimizes the complexity and burdens of litigation.

"Bifurcation can, especially in instances where municipal liability is dependent on individual liability as here, present a number of benefits including the bypassing of significant discovery (and associated discovery complications) related to the municipality's policies and practices and a shorter trial." *Andersen*, 2016 WL 7240765, at *4. Indeed, *Monell* discovery "can add significant time, effort, and complications to the discovery process." *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000); *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *2 (N.D. Ill. 2008) (Aspen, J.) (*Monell* discovery more burdensome and time-consuming than claims against individuals); *Moore*, 2007 WL 3037121, at

7

\*9 (*Monell* discovery requires "an extensive amount of work on the part of the plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove" the claim). Bifurcation would be an act of judicial oversight that would help prevent discovery in a case like this "from spiraling out of control." *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014); *see also Swanigan v. City of Chicago*, 775 F.3d 953, 957 (7th Cir. 2015) ("*Swanigan I*") (staying *Monell* discovery is sound given the volume of civil rights litigation courts must manage). As explained in *Swanigan I*:

> If a §1983 plaintiff seeks only monetary relief, and if a municipal defendant is willing (or required) to indemnify individual defendants for compensatory damages as well as an award of attorney's fees and costs, a *Monell* claim against the municipality will offer a prevailing plaintiff no additional remedy (aside, perhaps, from nominal damages). *In such cases there is no need for the parties to spend time and money litigating a Monell claim*.

775 F.3d at 962 (emphasis added); *see also Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000) ("[B]ifurcation avoided the needless costs and burdens of a second trial \* \* \* especially in light of the fact that the City agreed to entry of judgment against itself should the jury enter a finding of liability against [the individual defendant].")

Under the circumstances, there is no reason to burden the parties with litigating *Monell* discovery on top of completing the substantial discovery that remains related to the underlying claims. And, as plaintiff readily admits, litigating the *Monell* claim is unnecessary. Ex. 1, at 3-4. Plaintiff has filed an eleven-count, 181-paragaph complaint alleging various federal and state law claims against eight separate individual defendants. As set forth in detail in Defendants' Joint Motion to Extend Fact Discovery, discovery just on these underlying allegations from over 17 years ago is substantial and time-consuming. For example, the following depositions remain: Plaintiff Allen Robinson, Defendant Folino, Defendant Celio, Defendant McDermott, Defendant Babich, Defendant Zelig, Defendant Brasic, Defendant Conroy, Derrick Stidwell, Oscar Russell, Quinton Davis, Jodi Garvey, Jenee Moreland, Melissa Meana, Andrew Dalkin, Timothy Carter, Alanae Robinson, Shanice Johnson, and Allen Robinson, Jr. See dkt. 116, at 3-5. In fact, Judge McShain recognized this "volume of outstanding

8

discovery" in extending fact discovery to August 1, 2025. Bifurcation will allow the parties to avoid potentially unnecessary discovery and litigation costs should plaintiff fail to establish a constitutional violation and thus, as a matter of law, be unable to sustain a *Monell* claim. *See Bishop v. White*, Exhibit 2, at 4 ("The Court makes no assessment of the strength or weight of the evidence at this stage, but the evidence at least suggests that it would promote fairness and efficiency to resolve these potentially serious factual issues first, and move on to the *Monell* claim only after determining what the individual defendants actually did in plaintiff's case.").

Motions to bifurcate offer important efficiencies in even the most routine §1983 actions. Any question as to whether bifurcation would streamline discovery in this particular case is conclusively answered in the affirmative by consideration of plaintiff's intention to inject over 1,200 CR files from a separate case as evidence purportedly supporting his *Monell* claim here. But *Monell* claims are not fungible. The allegations underpinning the *Watts* litigation differ substantially from the allegations in this case. In *Watts*, the plaintiffs generally allege a criminal enterprise whereby former police officer Ronald Watts would shake down drug dealers at the Ida B. Wells homes for bribes. See, *e.g.*, *White v. City of Chicago*, 17-CV-2877, dkt. 1 ¶¶ 42–74. The *Monell* claims allege the City failed to move administratively against Watts despite a pending joint CPD-federal investigation into Watts and the obvious sabotage of that investigation if the City administratively disciplined Watts before the investigation's conclusion. Here, plaintiff's wide-ranging *Monell* claim stems from Defendants' alleged coercion of eyewitnesses into identifying Plaintiff as the murderer of Christopher Handford and suppression of exculpatory evidence. *See generally* dkt. 1. The CRs at issue in *Watts* thus provide no guidance to the allegations *in this case*. Again, *Monell* claims are not fungible.

Above and beyond the extensive discovery that will be necessary on the underlying claims against the individual defendants that remains, the introduction of the over 1,200 CRs from the *Watts* matter would substantially expand discovery in this case. By way of background, those 1,265 CRs at

9

issue in the *Watts* litigation were chosen by plaintiffs' retained expert, Dr. Jon Shane, and involve CR investigations from the years 1999 through 2011. Shane invented a "codebook" for purposes of the *Watts* litigation to create a misleading spreadsheet identifying whether certain tasks were or were not done in a particular CR investigation. In addition to the fact the "codebook" has never been used or tested on any other police department, Shane failed to actually evaluate the merits of the CR investigations themselves by looking at their substance. By way of example, in Case Log No. 1022370, the complainant alleged that the police had "implanted a device inside [the complainant's] body and are stalking [him]," yet Shane's spreadsheet created by the facile codebook suggests the CPD should have investigated and conducted certain tasks in response to this complaint despite the absurd and impossible nature of the allegation. Ex. 5, Case Log No. 1022370; Ex. 6, Excerpt of Shane Spreadsheet. Because of these egregious deficiencies, the City has moved to bar Dr. Shane in total in the *Watts* cases. See, *e.g.*, *White v. City of Chicago*, 17-CV-2877, dkt. 255, (reply to be filed May 22, 2025).

In order to adequately investigate and defend against the allegations represented by these 1,265 CR files considering the *Monell* claim as alleged in this case, the City will need to engage in an extensive undertaking. The City and its expert must read and analyze the CRs to determine whether plaintiff's expert fairly and properly analyzed each CR as applied to the facts of this case. This alone will incur tens of thousands of dollars in attorneys' and expert's fees and costs. And such review is necessary because plaintiff's attorneys have criticized the City's expert in the *Watts* litigation for not reviewing each and every CR before issuing his opinions.[2] See *White*, 17-CV-2877, dkt. 227, at 16 (plaintiff's counsel, in motion to bar the City's expert, argued that the expert "did not check each fact or review each line of the summaries against the CRs… [and] has not articulated any methodology for validating the summaries he relied on beyond an unreliable ad hoc spot check."). The City and its expert will

---

[2] The City's expert and its attorneys in *Watts* studied the substance of about 145 of the CRs which Shane claimed to "audit," but not the remaining 1100 plus CRs.

10

then need to evaluate these CRs with respect to the specific allegations raised by plaintiff here, not the allegations raised by the plaintiffs in the *Watts* litigation. The City will also need to issue contention interrogatories to plaintiff regarding his *Monell* claim in general and these CRs in particular.

On this issue alone, bifurcation is warranted. The discovery related to plaintiff's incredibly broad *Monell* claim will be burdensome, expensive, and time-consuming. *See, e.g., Ojeda-Beltran*, 2008 WL 2782815, at *2 (granting bifurcation of *Monell* where "Plaintiff's contention that the *Monell* litigation will not require substantial additional resources on the part of the parties is difficult to reconcile with the colossal scope of their *Monell* discovery requests"); *Horton*, 2016 WL 316878, at *2. Considering that such costly and time-consuming *Monell* discovery may ultimately be unnecessary to resolve plaintiff's claims in this case, there is no reason to burden the parties with litigating *Monell* discovery on top of the discovery on the underlying claims that still remains.

Discovery costs are not the only potential savings to be achieved. Granting the City's motion also would promote judicial economy and protect this Court's interests in several additional ways. Bifurcation of the *Monell* claims would eliminate the need for judicial intervention in discovery disputes arising from these claims, which can be frequent and contentious. S*ee Claxton*, 2015 WL 5304630, at *2. This would include the motion to modify the protective order plaintiff filed recently. Dkt. 129. Bifurcation also would eliminate the need for: costly expert discovery on the various *Monell* claims as described above; briefing and ruling on any *Daubert* motions the parties may bring and any summary judgment motion the City may bring; and if the City's motion for summary judgment is denied, presiding over a trial that undoubtedly will be lengthier, and legally and factually more complex, not to mention prejudicial to defendants. *See Medina*, 100 F. Supp. 2d at 895 (the "trial of the claims against the individual officers is . . . likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims"); *Almaraz v. Haleas*, 602 F. Supp. 2d 920, 926 (N.D. Ill. 2008) ("Bifurcating the *Monell* issue is likely to save substantial litigation time and expenses both initially and, in the long

run, because it is also likely to result in there ultimately being no need to conduct discovery or resolve further issues regarding *Monell*"); *Bishop*, Exhibit 2, at 4-5 ("Additionally, the potential savings of judicial time and resources that could accrue from initially focusing narrowly on the individual claims are vast: if plaintiff fails to prove the individual claims, the case is over, and even if he succeeds, plaintiff's recovery of damages on the individual claims may make him whole by affording him all the concrete judicial relief he has sought, without the Court having to conduct the lengthy, wide-ranging inquiry into other incidents and issues that the *Monell* claim will entail").

The Seventh Circuit has explicitly endorsed bifurcation to avoid "the waste of the valuable time and resources of the court," as well as of serving the interests furthered by Rule 42(b). *See Treece*, 213 F.3d at 365. More recently, the Seventh Circuit recognized that bifurcation of *Monell* claims in cases like this furthers judicial economy and prevents unnecessary efforts by the parties. *Swanigan I*, 775 F.3d at 962. Indeed, the Seventh Circuit concluded the district court's decision to stay *Monell* in that case while the claims against the individual officers were litigated to judgment "was sensible, especially in light of the volume of civil-rights litigation that district courts must manage." *Id.* And in situations where, as here, the plaintiff seeks only monetary damages, and "a municipal defendant is willing (or required) to indemnify individual defendants for compensatory damages as well as an award of attorney's fees and costs," there "is no need for the parties to spend time and money litigating a *Monell* claim." *Id.* Given the burden here, bifurcation should be granted.

**Bifurcation can help prevent undue prejudice.**

Allowing the claims against the Defendant Officers and the City to go to trial at the same time raises the potential of unfair prejudice to the individual defendants. Rule 42(b) specifically identifies avoidance of prejudice as grounds for bifurcation. *Sopron v. Cassidy*, 2023 WL 6213713, at *5 (N.D. Ill. Sept. 23, 2023) (granting bifurcation of *Monell* claim because "the avoidance of prejudice justifies bifurcation" "even if judicial economy and efficiency entirely favored Plaintiffs"). Bifurcation of *Monell*

12

claims from those asserted against an individual defendant protects him or her from possible prejudice caused by the introduction at trial of extensive and extraneous evidence regarding alleged misconduct in which he or she was not involved. Indeed, prejudice may arise if the trial of the alleged misconduct of the named defendants is obscured and overwhelmed by evidence of complaints of other misconduct made by other people, concerning other officers, at other places and times. As Judge Kness recently held:

> First, the risk of unfair prejudice to Defendants justifies bifurcation. Plaintiffs seek to admit decades of evidence concerning a number of issues unrelated to the Section 1983 claims. It is possible, perhaps probable, that a jury would, by association, impermissibly tag the Individual City Defendants and the City with unjustified accountability after having been presented with evidence to that effect. *See Dollard v. Whisenand*, 946 F.3d 342, 359 (7th Cir. 2019) ("[T]he concept of guilt by association is repugnant to our notion of elemental justice and fair play.").

*Sopron*, 2023 WL 6213713, at *4. In the same vein, Judge Aspen noted in granting a similar motion:

> We believe that there is a real "danger that evidence admissible on the issues relating to conduct by the City . . . will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s]." As demonstrated by Plaintiffs' complaint and discovery requests, Plaintiffs intend to prove their *Monell* claim, at least in part, through the introduction of evidence regarding alleged acts of police misconduct committed by non-party officers. We think a substantial risk exists that such evidence would be prejudicial to Defendant officers in their attempts to defend themselves against Plaintiffs' claims and conclude that bifurcation of the *Monell* claim is a proper means to combat this potential prejudice.

*Ojeda-Beltran*, 2008 WL 2782815, at *3; *see also Bishop*, Exhibit 2, at 4 (finding a trial with both *Monell* and individual claims "risks muddying the waters and causing undue prejudice to the individual defendants by leading jurors to infer from evidence of other non-party officers' acts that the individual defendants 'committed similar acts'" (internal quotation marks omitted)).

Creation of unfair prejudice to the Defendant Officers would be an inevitable result of plaintiff's *Monell* claim, particularly given the wide-ranging nature of the allegations. The focus of plaintiff's *Monell* claim on the City's alleged "failure" to prevent misconduct by other Chicago police officers against other citizens creates a real danger of contaminating the jury's consideration of the liability of the Defendant Officers in *this* case. The hallmark of a §1983 claim is that defendants are

13

liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). So, the propensity of individuals other than defendants to commit misconduct is entirely irrelevant to the claims against the defendants. Arguing non-defendant officer misconduct in front of the jury would invite the jury to find the Defendant Officers guilty by association, rather than deciding their liability based on their own actions. The risk of unfair prejudice to an individual defendant by permitting evidence of other non-defendant officers' conduct to prove alleged municipal policies is substantial and would significantly undermine the ability of the Defendant Officers to receive fair trials. *Sopron*, *supra*. Bifurcation of the *Monell* claims is a proper means to focus plaintiff's claims against each defendant individually and combat this potential prejudice.

There is also the risk of prejudice to the City if the claims are tried in a single trial. *Monell* and its progeny provide plaintiffs with a vehicle to hold a municipality liable for its own conduct; it is not a means by which to hold a municipality liable based on some form of *respondeat superior* or vicarious liability. *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). A jury asked to weigh evidence of Defendant Officers' alleged misconduct at the same time as policy evidence may confuse that evidence and the law surrounding *Monell* liability. The serious allegations against the Defendant Officers, if proven at trial, may cause the jury to hold the City liable on the *Monell* claims for that misconduct without giving the *Monell* claims their due consideration. *Monell* thus would devolve into a *respondeat superior* claim, contrary to the applicable law. *Milestone*, 665 F.3d at 780. Bifurcating the *Monell* claims from those against the Defendant Officers would avoid the risks of unfair prejudice, the misapplication of evidence, or the misinterpretation of law. *See, e.g., Bradford v. City of Chicago*, 2019 WL 5208852, at *4 (N.D. Ill. 2019) (Durkin, J.) (Risk that "*Monell* would devolve into a *respondeat superior* claim" if tried with claims against the individual officers was "compelling" and one that "counsels in favor of bifurcation.").

On the other hand, bifurcation and a stay of discovery and trial as to the *Monell* claims will not

14

prejudice plaintiff's recovery of any compensatory damages that a jury may award. Plaintiff argues (dkt. 129, at 6) that "the City offered language that was far too limiting about the circumstances in which judgment against the City was appropriate, and thus provided Plaintiff less than he would obtain by litigating." Not so. If the Defendant Officers were acting within the scope of their employment as plaintiff alleges, the City would have both a statutory and a contractual obligation to indemnify them for any judgment for compensatory damages (*see, e.g.*, 745 ILCS 10/9-102), while as a matter of law, plaintiff is not entitled to recover any additional compensatory damages if he prevails against the City on his *Monell* claim after a finding of liability against the Defendant Officers. *Almaraz*, 602 F.Supp.2d at 926; *see also Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985). The City's proposed limited consent will allow for a judgment against the City if plaintiff is able to establish a constitutional violation was committed by a Defendant Officer in one of the ways enumerated in the Complaint. This is so even without plaintiff establishing the policy or practice requirements under *Monell*. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (in order to hold a municipality liable under *Monell*, a plaintiff "must prove that the constitutional violation was caused by a governmental 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"). Moreover, the City's proposed limited consent would protect plaintiff's compensatory damages if the Defendant Officers were found to have qualified immunity. In short, the City's proposed limited consent offers plaintiff everything he could obtain by litigating the *Monell* claim, while obviating the need to establish a policy or practice, provided that he is able to establish a constitutional violation was committed by a Defendant Officer in one of the ways enumerated in the Complaint. Accordingly, for the reasons set forth above, the City asks this Court to grant the motion and (1) bifurcate plaintiff's §1983 *Monell* claims against the City pursuant to Rule 42(b); and (2) stay both discovery and trial on those claims.

                                                                                                                                    Respectfully submitted,

                                                                         MARY B. RICHARDSON-LOWRY

                                                                         Corporation Counsel of the City of Chicago

| /s/ Misha Itchhaporia | By: */s/ Daniel M. Noland* |
|---|---|
| Special Assistant Corporation Counsel | Special Assistant Corporation Counsel |
| | |
| Steven B. Borkan | Terrence M. Burns |
| Timothy P Scahill | Paul A. Michalik |
| Misha Itchhaporia | Daniel M. Noland |
| Emily E. Schnidt | Katherine C. Morrison |
| Drew E. Wycoff | Daniel J. Burns |
| Andrea F. Checkai | Dhaviella N. Harris |
| Borkan & Scahill, Ltd. | Burns Noland LLP |
| 20 South Clark Street | 311 S. Wacker Dr., Suite 5200 |
| Suite 1700 | Chicago, IL 60606 |
| Chicago, IL 60603 | *Attorneys for Defendant City of Chicago* |
| *Attorney for Defendant Officers* | |

**Defendant City of Chicago's Local Rule 37.2 Certification**

I, Daniel Noland, one of the attorneys for Defendant City of Chicago, attest that I complied with Local Rule 37.2 and Judge McShain's standing order prior to filing Defendants' Motion to Bifurcate Plaintiff's *Monell* claim. Specifically, I participated in a meet and confer via videoconference on March 14, 2025 and March 18, 2025 with Scott Rauscher, one of Plaintiff's attorneys, to discuss Plaintiff's intention to pursue the *Monell* discovery requested in Plaintiff's motion to modify the protective order entered in the *Watts* litigation (dkt. 129) and the City's intention to move to bifurcate Plaintiff's *Monell* claim should Plaintiff seek to pursue such *Monell* Discovery. Once Plaintiff filed, over the City's objection, his motion to modify the protective order entered in the *Watts* litigation in order to produce 1,265 CR files produced in *Watts* (dkt. 129), the issue became ripe for Defendants' motion to bifurcate, which the City advised it would be filing during the meet and confer. In addition to the two March 2025 videoconferences, we discussed the issues by telephone and through written correspondence in the form of several emails beginning in November 2024, two letters exchanged in January 2025, and the exchange of proposed *Monell* stipulations. Despite a good faith effort to resolve the issues, the parties were unable to come to an agreement through the meet-and-confer process, thereby necessitating this motion.

Respectfully submitted,

MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: /s/ *Daniel M. Noland*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Katherine C. Morrison
Daniel J. Burns

17

Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
*Attorneys for Defendant City of Chicago*

**CERTIFICATE OF SERVICE**

I hereby certify that on **May 22, 2025**, I electronically filed the foregoing **Defendants' Joint Motion to Bifurcate §1983 Claims and to Stay Discovery and Trial on Those Claims Pursuant to Federal Rule of Civil Procedure 42(b) (*Opposed*)** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record via the Court's CM/ECF system.

*/s/ Daniel M. Noland*