# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS BISHOP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 6040 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| JOSEPH WHITE, PEDRO ORTIZ, | ) | |
| CARLOS DELATORRE, JAMES | ) | |
| GOCHEE, MARK MENDEZ, NEIL | ) | |
| EVANS, PHILLIP RIDER, WADE | ) | |
| GOLAB, HENRY MORRISON, RYAN | ) | |
| MILLER, STACY HEUBAUM, as | ) | |
| Special Representative of deceased | ) | |
| JAMES HEUBAUM, BRIDGET | ) | |
| BRUBAKER, and the CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendant City of Chicago's motion to bifurcate this case and stay plaintiff's *Monell* claim [227] is granted. Plaintiff's motion to consolidate cases [211] is denied.

## STATEMENT

In this civil rights case brought pursuant to 42 U.S.C. § 1983, plaintiff alleges that certain individual defendants, all Chicago police officers, violated his constitutional rights when they shot him without justification, failed to provide adequate medical care, and attempted to cover up their wrongdoing by fabricating evidence that he had shot two people during an armed robbery. Additionally, plaintiff alleges that the City of Chicago caused these violations of his constitutional rights pursuant to a policy or widespread practice, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Regarding the *Monell* claim, two interrelated case management motions are before the Court. First, plaintiff moves to consolidate this case for purposes of *Monell* discovery with *Young v. City of Chicago*, No. 13 C 5651, arguing that the cases are similar and consolidation would save time and effort. The City of Chicago opposes the motion and moves instead to bifurcate this case and stay proceedings on the *Monell* claim until after the claims against the individual defendants have been resolved.

These motions are governed by Federal Rule of Civil Procedure 42, which gives this Court discretion to consolidate or bifurcate cases in order to promote judicial economy. *See Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018) (addressing consolidation under Rule 42(a)); *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) (addressing bifurcation under Rule 42(b)). In full, the rule provides as follows:

> **(a) Consolidation.** If actions before the court involve a common question of law or fact, the court may:
> **(1)** join for hearing or trial any or all matters at issue in the actions;
> **(2)** consolidate the actions; or
> **(3)** issue any other orders to avoid unnecessary cost or delay.
> **(b) Separate Trials.** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42.

The City argues that plaintiff has not established a proper basis in law or fact for consolidating this case with *Young* for purposes of *Monell* discovery or otherwise, given that the cases are pending before different judges. Further, the City argues that bifurcating this case and staying proceedings on the *Monell* claim would promote judicial economy because plaintiff cannot prevail on the *Monell* claim unless he establishes that the individual defendants violated his constitutional rights, so it would be logical to resolve the individual claims before embarking on the lengthy and costly process of *Monell* discovery and further proceedings on that claim. Additionally, the City argues, bifurcation would avoid potential prejudice to the individual defendants that might arise from trying the individual claims alongside the *Monell* claim, the danger being that, if the jurors receive evidence that the individual defendants violated plaintiff's constitutional rights alongside evidence that the City had a pattern or practice of committing similar violations through other officers, they might improperly infer from the past violations by other officers that plaintiff's allegations against the individual defendants are true. And even if all of plaintiff's claims prove to be meritorious, the City contends, plaintiff has not sought any relief other than damages, which he can obtain on his claims against either the individual defendants or the City, but not both, so he may be able to obtain complete relief on the individual claims alone.

Plaintiff suggests that bifurcation is "disfavored" in this context, *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1151500, at *10 n. 2 (N.D. Ill. Apr. 9, 2012), but in fact it is evident that "[m]otions for bifurcation are now commonplace," and "there is a growing body of precedent . . . for both granting and denying bifurcation in § 1983 cases." *Blackmon v. City of Chi.*, No. 19 C 767, 2020 WL 1888913, at *3 (N.D. Ill. Apr. 16, 2020) (internal quotation marks omitted); *compare, e.g., id.*; *Bradford v. City of Chi.*, No. 16 CV 1663, 2019 WL 5208852, at *5 (N.D. Ill. Oct. 16, 2019); *Ezell v. City of Chi.*, No. 18 C 1049, 2019 WL 3776616, at *6 (N.D. Ill. Aug. 12, 2019); *Williams v. City of Chi.*, 315 F. Supp. 3d 1060, 1084 (N.D. Ill. 2018); *and Ackerman v. Allen*, No. 16 C 6199, 2017 WL 1536447, at *8 (N.D. Ill. Apr. 27, 2017) (all granting bifurcation of *Monell* claim) *with Maysonet v. Guevara*, No. 18-CV-2342, 2020 WL 3100840, at *5 (N.D. Ill. June 11, 2020) (denying bifurcation) *and Rodriguez v. City of Chi.*, 429 F. Supp. 3d 537, 545 (N.D.

2

Ill. 2019) (overruling Rule 72 objections to magistrate judge's denial of motion for bifurcation). As one court has recently explained, and just as the City argues, "[m]otions to bifurcate *Monell* claims are frequently granted in this District because such claims typically require a significant amount of work—including expert discovery—that may ultimately be for naught because in 'many if not most cases, disposition of the individual claims will either legally or practically end the litigation.'" *Bradford*, 2019 WL 5208852, at *2 (quoting *Medina v. City of Chi.*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000)). If the plaintiff fails to prove the individual claims, his failure "typically is fatal to his *Monell* claim against the municipality" because the plaintiff can hardly prove that the municipality caused a constitutional injury if the municipal employees through whom it acted inflicted no such injury.[1] *Bradford*, 2019 WL 5208852, at *2. If the plaintiff instead prevails on the individual claims, "he is 'likely not to want or need to proceed any further,'" to the extent that the judgment on the individual claims suffices to make him whole. *Bradford*, 2019 WL 5208852, at *2 (quoting *Medina*, 100 F. Supp. 2d at 895).

Plaintiff does not dispute that this is one of those "typical" cases in which he cannot prevail on the *Monell* claim if he cannot first establish that the individual defendants violated his constitutional rights. Instead, he points out that he could possibly prevail on the *Monell* claim without prevailing on the individual claims because the Court could determine that the individual defendants violated plaintiff's constitutional rights but are entitled to qualified immunity. But the City's point remains: in order to prevail on the *Monell* claim, plaintiff must first establish that the individual defendants violated his constitutional rights. *See Ezell*, 2019 WL 3776616, at *4 ("The question is whether the Officers committed the constitutional violation(s) underlying Plaintiffs' *Monell* claims, not whether they can be held liable for them."). Not only is establishing that the individual defendants violated plaintiff's constitutional rights a prerequisite to prevailing on the *Monell* claim, it would probably suffice to demonstrate that plaintiff is entitled to compensatory damages from the City *regardless* of whether he prevails on the *Monell* claim. This is because (a) Illinois law requires municipal employers to indemnify employees for judgments arising out of civil rights violations committed within the scope of their employment, *see* 745 ILCS 10/9-102, and (b) the City has consented in writing, as it customarily does in cases such as this one, to judgment against it for compensatory damages if any of its officers is found to have violated plaintiff's constitutional rights, even if they are not liable because they are entitled to qualified immunity. (*See* City's Mot. to Bifurcate, Ex. I, Limited Consent to Entry of Judgment Against City of Chicago, ECF No. 227-1 (hereafter, "Limited Consent").) *See Jakes v. Boudreau*, Case No. 19 C 2204 (N.D. Ill.), Tr. of Nov. 26, 2019 Hr'g at 5:3-6, ECF No. 66 ("Qualified immunity poses a possibility of *Monell* liability without individual liability, but we could fashion a jury verdict [form] that ensures that the City's limited consent gets triggered.") (Shah, J.).)

---

[1] In some cases, the municipality may be liable even if the individual officers are not, particularly where the individual officers acted without the mental state required by § 1983, but "'the institutional policies themselves are deliberately indifferent'" to a risk of harm to the plaintiff. *Bradford*, 2019 WL 5208852, at *4 (quoting *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 378 (7th Cir. 2017)). This kind of *Monell* liability typically arises, in the Court's experience, in prison or jail conditions cases such as *Glisson*, in which the plaintiff falls through cracks in the system, not cases involving the sort of intentional law enforcement activity alleged in this case. *See Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 930 (N.D. Ill. 2012) (contrasting *Monell* claims involving jail conditions and those involving excessive force based on the required mental state).

The City has pointed to potentially significant hurdles plaintiff must overcome in order to succeed in demonstrating that the individual defendants violated his constitutional rights, including evidence that plaintiff attempted either to pay or intimidate the surviving victim of the shooting he was accused of committing to recant statements against him, as well as evidence that the same surviving victim told friends and acquaintances that plaintiff was indeed the shooter. (*See* Defs.' Resp. to Pl.'s Mot. to Quash, ECF No. 254.) The Court makes no assessment of the strength or weight of the evidence at this stage, but the evidence at least suggests that it would promote fairness and efficiency to resolve these potentially serious factual issues first, and move on to the *Monell* claim only after determining what the individual defendants actually did in plaintiff's case. The alternative—introducing *Monell* evidence of other officers' wrongdoing alongside the evidence of the individual defendants' own alleged wrongdoing—risks muddying the waters and causing undue prejudice to the individual defendants by leading jurors to infer from "evidence of other non-party officers[']" acts that the individual defendants "committed similar acts." *Ackerman*, 2017 WL 1536447, at *5; *see Bradford*, 2019 WL 5208852, at *3 ("[T]here is a real danger that such evidence would contaminate the mind of the finder of fact, and result in liability by association alone.") (internal quotation marks omitted). Plaintiff essentially admits that the potential for this sort of prejudice is inherent in his "theory of the case." (Pl.'s Resp. in Opp'n to Mot. to Bifurcate at 10, ECF No. 230.) He argues that the risk of such prejudice can be mitigated with appropriate instructions, but, while that may be true, the risk would remain, whereas "bifurcation avoids it entirely." *Ackerman*, 2017 WL 1536447, at *5.

Plaintiff argues that, if he is not allowed to litigate his *Monell* claim alongside his individual claims, he may not have any chance to litigate it at all, even if he prevails on his individual claims. As the Court has already explained, the City has filed its customary Limited Consent in this case. Given the City's practice of filing these Limited Consents, some courts in this district have called bifurcation of the sort the City seeks here a "*de facto* dismissal of the *Monell* claim." *Maysonet*, 2020 WL 3100840, at *5 (internal quotation marks omitted); *see Ezell*, 2019 WL 3776616, at *6 ("Plaintiffs are correct that granting the City's Motion would effectively eliminate any opportunity for Plaintiffs to litigate the merits of their *Monell* claims. This result is not lost on the Court."); *see also Kuri v. Folino*, 409 F. Supp. 3d 626, 653 (N.D. Ill. 2019) ("[T]he Court has already entered judgment on the compensatory damages award [and] [s]ince Kuri is not able to collect anything in addition to that, regardless of any *Monell* claims, and since he has not brought claims for injunctive relief, there is no live case or controversy against the City on which Kuri can move forward."). Plaintiff asserts certain "non-economic" reasons for wanting his day in court on his *Monell* claim, including "effecting change in municipal policy or practice through deterrence and reform." (Pl.'s Resp. in Opp'n to Mot. to Bifurcate at 13.)

While the Court recognizes the importance of these non-economic interests, it is not convinced that they would not be served almost as well by a large judgment against the individual officers. *See Blackmon*, 2020 WL 1888913, at *6; *Ezell*, 2019 WL 3776616, at *6. Further, the Court must balance plaintiff's non-economic interests against other important interests, including the potential for prejudice and the need for judicial economy. As the Court has explained, the potential for prejudice to the individual defendants is high if the Court does not bifurcate the *Monell* claim, and this factor alone goes some way toward tipping the balance toward bifurcation. *See Bradford*, 2019 WL 5208852, at *4 ("[P]rejudice alone can justify bifurcation."). Additionally, the potential savings of judicial time and resources that could accrue from initially focusing

narrowly on the individual claims are vast: if plaintiff fails to prove the individual claims, the case is over, and even if he succeeds, plaintiff's recovery of damages on the individual claims may make him whole by affording him all the concrete judicial relief he has sought, without the Court having to conduct the lengthy, wide-ranging inquiry into other incidents and issues that the *Monell* claim will entail. (*See* City's Reply in Supp. of Mot. to Bifurcate at 6-7, 10, ECF No. 241 (discussing potential scope of *Monell* discovery in this case).) *See Jakes*, Case No. 19 C 2204 (N.D. Ill.), Tr. of Nov. 26, 2019 Hr'g at 6:13-18 ("[I]n any event, there is still a bucket of information and data and expertise that would solely be to establish municipal liability that we just don't need to get into in light of the other claims in the case."); *Ackerman*, 2017 WL 1536447, at *7 ("Bifurcation, with the limited consent in place, allows Plaintiff to recover more quickly, not less."). This factor, too, can be enough to tip the balance toward bifurcation by itself. *See Jakes*, No. 19 C 2204 (N.D. Ill.), Tr. of Nov. 26, 2019 Hr'g at 5:19-23 ("As I have said earlier in other cases, I don't agree that a joint trial is unduly prejudicial to the city or to the individual defendants, but I do conclude that we could get to trial faster and get compensation faster, if appropriate, without spending time and resources on *Monell*.").

When the Court views all of these interests holistically and with a "'pragmatic mindset,'" it concludes that, on balance, they weigh in favor of bifurcation. *Ezell*, 2019 WL 3776616, at *6 (quoting *Allison v. Gallagher*, No. 10 C 6887, 2012 WL 4760863, at *1 (N.D. Ill. Oct. 5, 2012)); *see Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000), *Blackmon*, 2020 WL 1888913, at *4, *Williams*, 315 F. Supp. 3d at 1084, *Ackerman*, 2017 WL 1536447, at *6; *see also Psarologos v. City of Chi.*, No. 19 C 7400, 2020 WL 919215, at *2 (N.D. Ill. Feb. 25, 2020) ("[T]he discovery process will be more efficient and manageable if the first round [of discovery and dispositive motions] focuses on the use of force and probable cause and the second round focuses on the *Monell* claims. Moreover, structuring discovery in this way will not hinder any party's ability to gather evidence in support of their claims or defenses."); *Bradford*, 2019 WL 5208852, at *4-5. Plaintiff's arguments to the contrary are not persuasive; the Court is instead persuaded by the thoughtful discussion of similar issues in *Ackerman* and *Williams*, as well as *Blackmon* and *Ezell* and like cases, in which the courts rejected similar arguments, and this Court rejects plaintiff's arguments for the same reasons.

The Court does not definitively decide today whether or under what circumstances plaintiff can actually litigate the *Monell* claim following trial on the individual claims. *See Ackerman*, 2017 WL 1536447, at *8 ("The Court need not at this early stage address the question of whether Plaintiff is required to accept the City's Limited Consent, in which the City expressly disclaims *Monell* liability.")[2]; *see Swanigan v. City of Chi.*, 775 F.3d 953, 963 (7th Cir. 2015) ("We do not doubt that Swanigan's *Monell* claim faces jurisdictional and substantive legal barriers. Principles of double recovery may prevent him from recovering damages to the extent

---

[2] Plaintiff argues briefly that the subsequent trial on the *Monell* claim would violate the Seventh Amendment, but the argument is perfunctory, plaintiff does not describe any decision that so held in a similar context, and at least one court appears to have considered and rejected a similar argument. *See Bradford*, 2019 WL 5208852, at *5. Plaintiff states that one jury would have to assess whether the individual defendants violated plaintiff's constitutional rights and a second would have to assess whether the City's policies were the moving force behind the violation, but he does not explain—and the Court fails to see—why he believes the second assessment is a reexamination of the first under the Seventh Amendment. These are distinct issues that should be treated separately.

that his injuries are already covered by his successful claim [against the individual officers]. . . . But the time to evaluate any jurisdictional or legal impediments to the *Monell* suit is *after* Swanigan has [had the opportunity to] amend[] his complaint [following resolution of the individual claims]."); *but see Ezell*, 2019 WL 3776616, at *4, 6 (citing *Swanigan v. City of Chi.*, 881 F.3d 577, 582 (7th Cir. 2018)). The Court will take up such issues when and if it becomes necessary, following the disposition of plaintiff's claims against the individual officers. The City's motion to bifurcate the *Monell* claim and stay proceedings on that claim is granted. Because *Monell* discovery will not proceed at this time, plaintiff's motion to consolidate *Monell* discovery with *Young v. City of Chicago* is denied.

**SO ORDERED.**                                              ENTERED: November 2, 2020

_____
**HON. JORGE ALONSO**
**United States District Judge**