**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALLEN ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-2724 |
| | ) | |
| WAYNE FRANO, VINCENT CELIO, CARL | ) | Judge Martha M. Pacold |
| BRASIC, TIMOTHY MCDERMOTT, JOHN | ) | |
| FOLINO, JR., PATRICK CONROY, DAVID | ) | Magistrate Judge Heather K. McShain |
| ZELIG, PETER BABICH, and the CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO MODIFY A CONFIDENTIALITY ORDER TO ALLOW HIS COUNSEL TO
PRODUCE DEFENDANT CITY OF CHICAGO'S COMPLAINT REGISTER FILES**

Defendant, City of Chicago (the "City"), by its attorneys, for its response in opposition to

Plaintiff's Motion to Modify a Confidentiality Order to Allow His Counsel to Produce Defendant

City of Chicago's Complaint Register Files ("Motion"), states:

## INTRODUCTION

Two years after he filed his lawsuit and less than three months before a twice-extended

close of fact discovery partially opposed by plaintiff, plaintiff now moves to modify a protective

order in a separate case in order to now pursue *Monell* discovery in this case. Dkt. 129. Although

plaintiff characterizes (at 2) his Motion as "an opportunity to capture a massive efficiency," his

proposal is anything but. Specifically, plaintiff seeks to inject 1,265 complaint register ("CR")

files from the *In re Watts* litigation as the *Monell* discovery in this litigation. But *Monell* claims are not

fungible. Contrary to plaintiff's assertion that "there can be no real dispute that the work relating

to the 1,265 CRs is done," the City must undertake discovery into these CRs in light of plaintiff's

Monell claim *in this case*, especially where plaintiff's counsel has criticized the City's expert in Watts for not analyzing each of the 1,265 CRs.

In light of the burden in litigating plaintiff's *Monell* claim, the City has moved to bifurcate the *Monell* claim. Dkt. 133. The City respectfully submits that consideration of plaintiff's Motion should await this Court's decision on the motion to bifurcate as that ruling may obviate the relief plaintiff requests in his Motion. Separately, for the reasons set forth below, plaintiff's Motion should be denied.

## RELEVANT BACKGROUND

On September 29, 2023, Magistrate Judge McShain entered an order setting forth a schedule for issuing discovery. Dkt. 60. Later, in ordering fact discovery to close on December 31, 2024, Judge McShain stated, "In setting this deadline, the Court expresses no views on the parties' apparent dispute over the scope of Monell discovery or whether such discovery should be bifurcated from discovery pertaining to the underlying section 1983 claims." Dkt. 67. Plaintiff did not issue any *Monell*-related discovery requests to the City and did not otherwise identify any *Monell*-related evidence. On November 4, 2024, plaintiff raised for the first time his intention to pursue *Monell* discovery in the form of 1265 complaint register ("CR") files that were produced by the City in a separate proceeding, the *In re Watts* litigation, which has nothing to do with this litigation.

Following plaintiff's intention to pursue *Monell* discovery in the form of the CRs from the *Watts* litigation, counsel for the City objected to the use of those CRs in this case. See Correspondence, attached as Exhibit 1, at 1-2. Specifically, counsel for the City pointed out that plaintiff had not pursued his *Monell* claim at all for the 18 months the case had been pending and explained that the allegations in the *Watts* litigation involved former Sgt. Ronald Watts and

members of his Second District tactical team allegedly collecting a street tax from drug dealers and planting evidence when those drug dealers would not pay. *Id.* at 2. Accordingly, those allegations and the CRs at issue in the *Watts* cases bear no relation to the homicide investigation by Area 5 detectives here or to plaintiff's corresponding *Monell* claim. *Id.*

Counsel for plaintiff and the City continued to discuss the matter, and plaintiff indicated he was interested in a limited consent from the City to obviate the *Monell* claim. *Id.* Counsel for the City provided plaintiff with a proposed limited consent (styled as a stipulation), which the City had used in numerous reversed conviction cases.[1] *Id.* Plaintiff's counsel provided a revised version of the stipulation, containing the following paragraph:

> 4. Without admitting plaintiff's Monell allegations in his Complaint or any amended complaint incorporated into the Final Pretrial Order or filed at any time prior to the submission of the case to the jury (hereinafter the "Operative Complaint"), the City will consent to entry of judgment against the City for compensatory damages and, to the extent allowed by the Court, reasonable attorney's fees pursuant to 42 U.S.C. §1988, if and only if the Court or the finder of fact in this case finds that any of the Defendant Police Officers violated Plaintiff's constitutional rights as alleged in the Operative Complaint, and that finding is either not appealed or that finding is appealed and affirmed in a final, non-appealable ruling of the highest appellate court to hear the matter. ***This paragraph applies regardless of whether the finding is by summary judgment or after a trial on the merits. The parties agree that for purposes of this agreement, Defendant Police Officers include all individuals who are or have been Defendants in the case, including any who Plaintiff dismisses voluntarily***.

*Id.* at 2-3 (emphasis added). The parties again conferred, and plaintiff's counsel confirmed the reason for the language in this paragraph was to give plaintiff the option of voluntary dismissing a named defendant prior to trial, but then seek to hold the City liable at trial for that dismissed defendant's conduct even though he would not be a party at that point. *Id.* The City could not agree to such a proposal, yet remained hopeful plaintiff would agree to the stipulation offered by the City and welcomed further revisions from plaintiff. *Id.* The City further informed plaintiff's counsel

---

[1] As an example, the proposed limited consent offered by the City here is the same limited consent offered by the City in *Jackson v. City of Chicago*, Case No. 23-CV-2027, dkt. 100-3.

that should plaintiff attempt to initiate *Monell* discovery at this late date, it would move to bifurcate the *Monell* claim in order to save the time and resources litigating *Monell* discovery that plaintiff's counsel acknowledged is unnecessary. *Id.* at 3-4. On May 9, 2025, less than three months before a twice-extended fact-discovery cutoff (which plaintiff partially opposed), plaintiff filed a motion to modify the protective order entered in the *Watts* litigation in order to produce those 1,265 CR files produced in *Watts.* Dkt. 129. Consistent with the City's clearly-stated position and as a result of plaintiff's May 9, 2025 motion to modify the protective order entered in the *Watts* litigation in order to produce those 1,265 CR files produced in *Watts*, Defendants have moved to bifurcate plaintiff's *Monell* claim. Dkt. 133.

## ARGUMENT

### I.      The Burden In Undertaking Discovery into the 1,265 CRs at Issue in *Watts* Would Be Enormous

As plaintiff readily admits, litigating the *Monell* claim is unnecessary. Ex. 1, at 3-4. Plaintiff has filed an eleven-count, 181-paragraph complaint alleging various federal and state law claims against eight separate individual defendants. As set forth in detail in Defendants' Joint Motion to Extend Fact Discovery, discovery just on these underlying allegations from over 17 years ago is substantial and time-consuming. For example, the following depositions remain: Plaintiff Allen Robinson, Defendant Folino, Defendant Celio, Defendant McDermott, Defendant Babich, Defendant Zelig, Defendant Brasic, Defendant Conroy, Derrick Stidwell, Oscar Russell, Quinton Davis, Jodi Garvey, Jenee Moreland, Melissa Meana, Andrew Dalkin, Timothy Carter, Alanae Robinson, Shanice Johnson, and Allen Robinson, Jr. See dkt. 116, at 3-5. In fact, Judge McShain recognized this "volume of outstanding discovery" in extending fact discovery to August 1, 2025.

Plaintiff now intends to inject over 1,200 CR files from a separate case as evidence purportedly supporting his *Monell* claim here. But *Monell* claims are not fungible. The allegations

underpinning the *Watts* litigation differ substantially from the allegations in this case. In *Watts*, the plaintiffs generally allege a criminal enterprise whereby former police officer Ronald Watts would shake down drug dealers at the Ida B. Wells homes for bribes. See, *e.g.*, *White v. City of Chicago*, 17-CV-2877, dkt. 1 ¶¶ 42–74. The *Monell* claims allege the City failed to move administratively against Watts despite a pending joint CPD-federal investigation into Watts and the obvious sabotage of that investigation if the City administratively disciplined Watts before the investigation's conclusion. Here, plaintiff's wide-ranging *Monell* claim stems from Defendants' alleged coercion of eyewitnesses into identifying Plaintiff as the murderer of Christopher Handford and suppression of exculpatory evidence. *See generally* dkt. 1. The CRs at issue in *Watts* thus provide no guidance to the allegations of misconduct *in this case*. Again, *Monell* claims are not fungible.

Above and beyond the extensive discovery that will be necessary on the underlying claims against the individual defendants that remains, the introduction of the over 1,200 CRs from the *Watts* matter would substantially expand discovery in this case. By way of background, those 1,265 CRs at issue in the *Watts* litigation were chosen by plaintiffs' retained expert, Dr. Jon Shane, and involve CR investigations from the years 1999 through 2011. Shane invented a "codebook" for purposes of the *Watts* litigation to create a misleading spreadsheet identifying whether certain tasks were or were not done in a particular CR investigation. In addition to the fact the "codebook" has never been used or tested on any other police department, Shane failed to actually evaluate the merits of the individual CR investigations themselves by looking at their substance. By way of example, in Case Log No. 1022370, the complainant alleged that the police had "implanted a device inside [the complainant's] body and are stalking [him]," yet Shane's spreadsheet created by the facile codebook suggests the CPD should have investigated and conducted certain tasks in

response to this complaint despite the absurd and impossible nature of the allegation. Ex. 2, Case Log No. 1022370; Ex. 3, Excerpt of Shane Spreadsheet. Because of these egregious deficiencies, the City has moved to bar Dr. Shane in total in the *Watts* cases. See, *e.g.*, *White v. City of Chicago*, 17-CV-2877, dkt. 255, (reply to be filed May 22, 2025).

Plaintiff's assertion (at 3) that "both sides have already analyzed the CRs and produced expert reports and rebuttal reports relating to the CRs," is highly misleading. In order to adequately investigate and defend against the allegations represented by these 1,265 CR files in light of the specific *Monell* claim alleged *in this case*, the City will need to engage in an extensive undertaking. The City and its expert must read and analyze the CRs to determine whether plaintiff's expert fairly and properly analyzed each CR as applied to the facts of this case. This alone will incur tens of thousands of dollars in attorneys' and expert's fees and costs. And such review is necessary because plaintiff's attorneys have criticized the City's expert in the *Watts* litigation for not reviewing each and every CR before issuing his opinions.[2] See *White*, 17-CV-2877, dkt. 227, at 16 (plaintiff's counsel, in motion to bar the City's expert, argued that the expert "did not check each fact or review each line of the summaries against the CRs… [and] has not articulated any methodology for validating the summaries he relied on beyond an unreliable ad hoc spot check."). The City and its expert will then need to evaluate these CRs with respect to the specific allegations raised by plaintiff here, not the allegations raised by the plaintiffs in the *Watts* litigation. The City will also need to issue contention interrogatories to plaintiff regarding his *Monell* claim in general and these CRs in particular. Simply put, the City would not be "duplicating work that has already been done" as plaintiff suggests (at 4), but instead would be defending against the *Monell* claim alleged in this case.

---

[2] The City's expert and its attorneys in *Watts* studied the substance of about 145 of the CRs which Shane claimed to "audit," but not the remaining 1100 plus CRs.

**II.    The City's Proposed Limited Consent Provides Plaintiff With Everything He Could Obtain by Litigating the *Monell* Claim.**

As set forth above, the City negotiated in good faith to reach an agreement with its proposed limited consent. Plaintiff argues (at 6) that "the City offered language that was far too limiting about the circumstances in which judgment against the City was appropriate, and thus provided Plaintiff less than he would obtain by litigating." Plaintiff fails to explain *why* the City's proposed limited consent would provide him with "less" than he could obtain by litigating the *Monell* claim, and he has therefore waived this argument. *Shipley v. Chi. Bd. Election Comm'rs*, 947 F.3d 1056, 1062-63 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived").

Waiver aside, plaintiff's assertion that the City's limited consent would provide him less than what he could obtain by litigating his claim is incorrect. If the Defendant Officers were acting within the scope of their employment as plaintiff alleges, the City would have both a statutory and a contractual obligation to indemnify them for any judgment for compensatory damages (*see, e.g.*, 745 ILCS 10/9-102), while as a matter of law, plaintiff is not entitled to recover any additional compensatory damages if he prevails against the City on his *Monell* claim after a finding of liability against the Defendant Officers. *Almaraz v. Haleas*, 602 F.Supp.2d 920, 926 (N.D. Ill. 2008); *see also Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985). The City's proposed limited consent will allow for a judgment against the City if plaintiff is able to establish a constitutional violation was committed by a Defendant Officer in one of the ways enumerated in the Complaint. This is so even without plaintiff establishing the policy or practice requirements under *Monell*. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (in order to hold a municipality liable under *Monell*, a plaintiff "must prove that the

constitutional violation was caused by a governmental 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'").

Moreover, the City's proposed limited consent would protect plaintiff's compensatory damages if the Defendant Officers were found to have qualified immunity. In short, the City's proposed limited consent offers plaintiff everything he could obtain by litigating the *Monell* claim, while obviating the need to establish a policy or practice, provided that he is able to establish a constitutional violation was committed by a Defendant Officer in one of the ways enumerated in the Complaint.

Plaintiff further contends (at 6) that the City's "hardline" on the *Monell* stipulation made a compromise "impossible" but of course the opposite is true. Although plaintiff (at 3) seeks to avoid "going too deeply into the details" regarding the parties' discussions, plaintiff wants the ability to voluntarily dismiss named Defendant Officers before trial, but then seek to hold the City liable at trial for that dismissed officer's conduct even though he would not be a defendant at that point. Plaintiff's proposal would require the court to potentially consider Defendant Officers' motions for summary judgment, *Daubert* motions, and pretrial submissions, only for plaintiff to dismiss those Defendant Officers at the eve of trial. In addition, the City would, in essence, then be required to defend the dismissed officers' conduct while not being able to raise defenses as to the remaining *Monell* elements of policy or custom, municipal fault, and "moving force" causation (because of the language in plaintiff's proposed limited consent), even though these elements "must be scrupulously applied in every case alleging municipal liability." <u>First Midwest Bank</u>, 988 F.3d at 987. The fundamental unfairness stemming from plaintiff's proposed limited consent is precisely why the City could not agree to such a one-sided approach.

Again, plaintiff's proposal to create an "absent" or "phantom" defendant at trial must be rejected by the City as the jury would be asked to evaluate the liability of an unrepresented individual at trial, and then impose liability on the City based on that person's alleged conduct. Far from taking a "hardline," the City proposed a reasonable limited consent whereby the City would consent to judgment provided that plaintiff is able to establish a constitutional violation was committed by a Defendant Officer in one of the ways enumerated in the Complaint, a limited consent that has been accepted by scores of other courts in this building. This proposal is eminently reasonable and would obviate the need for plaintiff to establish the policy, municipal fault, and moving-force causation requirements of *Monell* to hold the City liable. And most importantly, it would allow plaintiff to recover all the compensatory damages he is entitled from the *Monell* claim.

### III. Any Proposed Modifications to the *In re Watts* Confidentiality Order Should be Heard By the Magistrate Judge Designated by the Executive Committee

Finally, plaintiff argues (at 6-7) this court has the power to modify confidentiality orders entered in other cases and should exercise that authority here. The City respectfully submits that any motion to modify a confidentiality order should be heard by the judge in the matter that the confidentiality order was entered. Here, the confidentiality order at issue was entered by Magistrate Judge Finnegan in *Watts* on October 8, 2019. *In re Watts*, 19-CV-1717, Dkt. 57. In light of Magistrate Judge Finnegan's retirement, the City believes plaintiff's Motion should be directed to Magistrate Judge Valdez as the designated magistrate judge, per the Executive Committee's order. *In re Watts*, 19-CV-1717, dkt. 839 ("MINUTE entry before the Executive Committee: Magistrate Judge Finnegan was designated as the magistrate judge in the In Re: Watts Coordinated Pretrial Proceedings (19cv1717). Magistrate Judge Finnegan retired on January 2, 2025. Therefore, the Executive Committee has designated Magistrate Judge Maria Valdez should a magistrate judge be need in the future for the coordinated proceedings"). The City is mindful of both this Court's and

Judge Valdez's time. However, both procedurally and in deference to the order previously entered, the City respectfully believes that should the *Watts* confidentiality order be modified, it should be done by the magistrate judge assigned by the Executive Committee in *Watts*, *i.e.*, Judge Valdez.

Respectfully submitted,

MARY B. RICHARDSON-LOWRY

Corporation Counsel of the City of Chicago

By: /s/ *Daniel M. Noland*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Katherine C. Morrison
Daniel J. Burns
Dhaviella N. Harris
Burns Noland LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
*Attorneys for Defendant City of Chicago*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **May 22, 2025**, I electronically filed the foregoing **Defendant City of Chicago's Response in Opposition to Plaintiff's Motion to Modify a Confidentiality Order to Allow His Counsel to Produce Defendant City of Chicago's Complaint Register Files** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record via the Court's CM/ECF system.

*/s/ Daniel M. Noland*