UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLEN ROBINSON,<br><br>      Plaintiff,<br><br>      v.<br><br>WAYNE FRANO, ET AL.,<br><br>      Defendants. | No. 23 CV 2724<br><br>District Judge Pacold<br><br>Magistrate Judge McShain |

**ORDER**

Pending before the Court is defendants' joint motion to bifurcate § 1983 claims and to stay discovery and trial on those claims pursuant to Federal Rule of Civil Procedure 42(b). [133].[1] Plaintiff opposes the motion. [140]. For the following reasons, the motion is denied without prejudice to the extent it requests that plaintiff's *Monell* claim be bifurcated for purposes of trial and denied to the extent it requests a stay of *Monell* discovery. Plaintiff's motion to modify a confidentiality order to allow his counsel to produce defendant City of Chicago's Complaint Register files [129] is denied without prejudice

**Background**

This is a civil-rights and wrongful-conviction case under 42 U.S.C. § 1983 in which plaintiff alleges that the officer defendants, former members of the Chicago Police Department, "built an entirely false case against Plaintiff based on coerced confessions," "suppressed exculpatory evidence which Plaintiff could have used to defend himself," and "coerced individuals into testifying against plaintiff." [1] at ¶¶ 4, 6-7. Plaintiff also brings a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City of Chicago. *See* [*id.*] at ¶¶ 145-55. Among other things, plaintiff alleges that the City "had notice of widespread practices by officers and agents of the Chicago Police Department and the City of Chicago, which included one or more of the following: (1) officers did not record investigative information in police reports, did not maintain proper investigative files, or did not disclose investigative materials to prosecutors and criminal defendants; (2) officers falsified statements and testimony of witnesses; (3) officers fabricated false evidence implicating criminal defendants in criminal conduct; (4) officers failed to maintain or

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

preserve evidence or destroyed evidence; and (5) officers pursued wrongful convictions through profoundly flawed investigations." [*Id.*] at ¶ 150. Plaintiff alleges that, due to defendants' alleged misconduct, he was wrongfully convicted of the murder of Christopher Hanford and spent nearly 14 years in prison before he was exonerated in 2022. [*Id.*] at ¶¶ 9, 11, 20.

In advance of the August 1, 2025, deadline to complete fact discovery, *see* [126], the defendants have jointly moved to bifurcate and stay plaintiff's *Monell* claim. "This type of motion seeks to put completely on hold the discovery and adjudication of the *Monell* claim until resolution of the Section 1983 claims against the individual officers and to prevent any merits adjudication of the *Monell* claim whether or not [p]laintiff succeeds on the claims against the individuals." *Cruz v. Guevara*, Case No. 23 C 4268, 2023 WL 8934940, at *2 (N.D. Ill. Dec. 27, 2023) (internal quotation marks omitted).

## Legal Standard

Civil Rule 42(b) authorizes the Court to order a separate trial of one or more separate claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "Because bifurcation risks additional delay by litigating a case in a piecemeal fashion, bifurcation is the exception and not the rule." *Munoz v. Guevara*, Case No. 23-cv-3210, 2024 WL 4882036, at *1 (N.D. Ill. Nov. 25, 2024). "This is particularly so in the Seventh Circuit, where the weight of authority holds that bifurcation is now heavily disfavored." *Id.* Nevertheless, whether bifurcation is warranted must be decided on a case-by-case basis. *Cruz*, 2023 WL 8934940, at *3. "Pertinent to this case, a district court also has wide discretion with respect to discovery matters, and Federal Rule of Civil Procedure 26(d) allows a court to stay discovery on *Monell* claims." *Munoz*, 2024 WL 4882036, at *1; *see also Huang v. GeLab Cosmetics LLC*, Case No. 22 C 2928, 2023 WL 3226198, at *2 (N.D. Ill. May 3, 2023) (district court may stay discovery based on a showing of good cause).

## I. Bifurcation of Claim for Trial

Defendants' motion to bifurcate the *Monell* claim for purposes of trial raises a question that is reserved to the District Judge. This case has been referred to the undersigned only for purposes of discovery supervision and settlement, *see* [60], but "the bifurcation of the claims for trial is a more far-reaching remedy that goes beyond the mere management of discovery." *Cruz*, 2023 WL 8934940, at *3. In addition, fact discovery is still underway, and the parties have yet to begin expert discovery or engage in summary-judgment practice. With so much discovery and motion practice outstanding, the request to bifurcate the trial now also strikes the undersigned as premature. *See id.* Thus, the undersigned denies the motion to bifurcate as beyond the scope of the referral to the undersigned and without prejudice to renewal before the District Judge at a later date. *Id.*

2

## II. Stay of *Monell* Discovery

### A. Interests of Litigation and Judicial Economy

Defendants argue that staying *Monell* discovery serves the interests of litigation and judicial economy because the City's liability depends on whether one of the defendant police officers violated plaintiff's constitutional rights. *See* [133] 5-8. According to defendants, plaintiff cannot prevail on his *Monell* claim unless he first proves that one of the officers committed a constitutional violation. For that reason, defendants suggest that judicial economy is best served by staying discovery until after the trial on plaintiffs' claims against the individual defendants concludes, as such discovery would be unnecessary if the defendants prevail at that trial. [*Id.*] 5-7. Defendants also argue that there is no need to conduct *Monell* discovery because the City is willing to consent to entry of judgment against it if the jury determines that one of the individual defendants violated his constitutional rights as alleged in the complaint. *See* [*id.*] 8.

#### 1. The City's Liability Is Not Contingent on the Officers' Liability.

Defendants' first argument invokes the general rule that "a municipality's liability for a constitutional injury requires a finding that the individual officers are liable on the underlying substantive claim." *Bradford v. City of Chicago*, No. 16 CV 1663, 2019 WL 5208852, at *4 (N.D. Ill. Oct. 16, 2019) (internal quotation marks omitted). As both sides recognize, however, an exception to that rule provides that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (emphasis in original). To determine whether "the [municipality's] liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*

Here, plaintiff's *Monell* claim is distinct from his claims against the individual officers. Plaintiff alleges that the defendant officers fabricated witness statements implicating him in the murder, suppressed exculpatory evidence, knowingly introduced false evidence at trial, and concealed and destroyed additional evidence. *See* [1] at ¶¶ 116-121. As to the City, however, plaintiff claims that it failed to promulgate adequate rules and policies for "the writing of police reports and taking of investigative notes, obtaining statements and testimony from witnesses, and maintenance of investigative files and disclosure of those files in criminal proceedings." [*Id.*] at ¶ 146. Plaintiff also contends that there was a widespread practice by officers and agents of the City and the Chicago Police Department whereby "officers did not record investigative information in police reports, did not maintain proper investigative files, or did not disclose investigative materials to

3

prosecutors and criminal defendants[.]" [*Id.*] at ¶ 150. The Court agrees with other decisions from this District holding that these allegations support a distinct theory of liability where the City could be liable for the suppression of evidence and the creation of false reports even if the jury determined that none of the individual officers committed a constitutional violation. *See, e.g.*, *Johnson v. Guevara*, No. 20 C 4156, 2021 WL 12298820, at *2 (N.D. Ill. May 26, 2021) ("Here, the Court finds that Johnson has sufficiently pleaded a factually distinct *Monell* claim against the City. Regardless of whether Johnson alleges that the Defendant Officers intentionally suppressed evidence in his case, he also sufficiently alleges that the City's policies were constitutionally deficient irrespective of an individual officer's suppression of evidence."); *Maysonet v. Guevara*, Case No. 18-cv-2342, 2020 WL 3100840, at *2 (N.D. Ill. June 11, 2020) (Rowland, J.) (crediting plaintiff's argument that "a jury might find that the individual defendants put investigative materials where they were supposed to in police department files, but that the City has no mechanism for ensuring those files were turned over to Plaintiff or the attorneys involved in his criminal prosecution"); *Cruz*, 2023 WL 8934940, at *11 (denying motion to stay *Monell* discovery and refusing to "speculate whether Plaintiff indeed will fail in his claims against the Individual Defendants" or whether "Plaintiff, under [*Thomas*], would or would not have a factually distinct *Monell* claim if his compensatory damage claims against the Individual Defendants fail").[2]

Because the City's *Monell* liability is distinct from that of the individual officers, this component of the City's appeal to judicial economy does not support staying *Monell* discovery. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962-63 (7th Cir. 2015) ("District courts cannot prevent plaintiffs from pursuing potentially viable *Monell* claims that seek additional equitable relief or are distinct from the claims against the individual defendants.").

### 2. Consent to Entry of Judgment

Defendants also argue that staying *Monell* discovery is warranted because the City will "agree to entry of judgment against it for compensatory damages [and

---

[2] The Court is aware of other cases from this District where courts have concluded, in cases with individual and *Monell* claims similar to those at issue here, that the City's liability was contingent on its officers' liability. *See, e.g.*, *Williams v. City of Chicago*, 315 F. Supp. 3d 1069, 1081 (N.D. Ill. 2018); *Ezell v. City of Chicago*, Nos. 18 C 1049, 18 C 1053, 18 C 1062, & 18 C 1068, 2019 WL 3776616, at *4 (N.D. Ill. Aug. 12, 2019). In these cases, the court concluded that, even if the City had an unconstitutional policy, custom, or practice, "the harm caused by these policies and/or failure to train could only manifest itself through the Defendant Officers' actions." *Ezell*, 2019 WL 3776616, at *4. The Court respectfully disagrees with that conclusion, which does not account for the possibility that a jury could find that a defendant officer had not intentionally suppressed evidence but that "the City has no mechanism for ensuring those files were turned over to Plaintiff or the attorneys involved in his criminal prosecution." *Maysonet*, 2020 WL 3100840, at *2.

4

attorney's fees] if the finder of fact determines a named Defendant Officer violated plaintiff's constitutional rights in of the ways alleged in the complaint, even if the finder of fact further determines that officer is not liable because of qualified immunity." [133] 8. The City has tendered a "Limited Consent to Judgment" that provides that:

> Without admitting plaintiff's *Monell* allegations in his Complaint or any amended complaint incorporated into the Final Pretrial Order or filed at any time prior to the submission of the case to the jury (hereinafter the "Operative Complaint"), the City will consent to entry of judgment against the City for compensatory damages and, to the extent allowed by the Court, reasonable attorney's fees pursuant to 42 U.S.C. §1988, if and only if the finder of fact in this case finds that any of the Defendant Police Officers who remain as defendants through the conclusion of trial is liable to Plaintiff for a violation of Plaintiff's constitutional rights as alleged in the Operative Complaint, and that finding is either not appealed or that finding is appealed and affirmed in a final, non-appealable ruling of the highest appellate court to hear the matter.

[133-1] 6 at ¶ 4.

The City emphasizes that this limited consent eliminates the need for plaintiff to prove a *Monell* violation against the City because the City is committing to pay any damages resulting from a constitutional violation committed by one of its officers. Plaintiff objects to entry of the limited consent on two grounds. He contends that defendants' proposal is deficient because it "ignores that a named Defendant Officer might win summary judgment on qualified immunity grounds." [140] 6. In that scenario, plaintiff states, he "would be out of luck" because "the limited consent requires the City to indemnify 'if and only if the finder of fact . . . finds that any of the Defendant Police Officers *who remain as defendants through the conclusion of trial*" violated plaintiff's rights. [*Id.*] (emphasis added). During the parties' meet-and-confer sessions, plaintiff also objected that the City's proposal would not require the City to indemnify any defendant officers whom plaintiff voluntarily dismissed before trial. *See* [133-1] 4.

The Court concludes that the City's willingness to consent to entry of judgment does not serve the interests of judicial economy such that a stay of discovery is warranted. To begin with, "[t]he City's limited consent to liability for the individual Defendants is not a consent to *Monell* liability." *Cruz*, 2023 WL 8934940, at *7. It is merely a recognition that, under Illinois law, the City is obligated to identify any of its officers acting in the scope of their employment against whom plaintiff obtains a tort judgment. *See Peterson v. City of Chicago*, Case No. 14 CV 9881, 2015 WL 13882813, at *3 (N.D. Ill. Oct. 19, 2015) (describing Illinois law requiring local governments to indemnify employees who commit torts in scope of their employment

5

and permitting payment of associated attorney's fees). But plaintiffs who pursue *Monell* claims against the City and other municipalities often do so "because of the possible non-monetary incentives including deterrence, reform, and accountability." *Johnson*, 2021 WL 12298820, at *3. As another court in this District has recognized, "'[a] judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality.'" *Cruz*, 2023 WL 8934940, at *7 (quoting *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 317-18 (2d Cir. 1999)). Although plaintiff does not emphasize these goals in his opposition brief, the undersigned has already found that this case "raises serious and important issues" given plaintiff's allegations that "defendants essentially framed him for a murder that he did not commit and caused him to be wrongfully imprisoned for almost 14 years." [113] 3. Finally, given that plaintiff has alleged a distinct *Monell* claim against the City that does not depend on the officers' liability, the Court does not believe that the City's willingness to consent to entry of judgment against it warrants a stay of *Monell* discovery. *See Swanigan*, 775 F.3d at 962-63; *see also Johnson*, 2021 WL 12298820, at *3 ("Here, given that Johnson is entitled to be the master of his own complaint and pursue claims even if they have a minimal pecuniary reward, the Court will not force him to accept the Limited Consent and forgo a merits determination on his *Monell* claim.") (internal quotation marks and brackets omitted); *Cruz*, 2023 WL 8934940, at *8-9 (refusing to stay *Monell* discovery where plaintiff sought judgment against City and nominal damages associated with *Monell* claim).

As another court has recognized, "*Monell* claims are difficult to prove and consent to judgment agreements like that proposed here may pose a benefit to someone in [plaintiff's] position. But the Court will not *force* [plaintiff] to accept such an agreement and forfeit a merits determination on his *Monell* claim" by staying *Monell* discovery. *Maysonet*, 2020 WL 3100840, at *5. For all these reasons, the Court does not find that the interests of the litigation and judicial economy favor a stay of discovery.

### B. Complexities and Burdens of Litigation

Defendants also argue that the burdens of *Monell* discovery weigh in favor of a stay. [133] 8-13. Defendants note that plaintiff's proposed *Monell* discovery centers around more than 1,200 complaint register files (CRs) that have been produced in other § 1983 cases against the City–*In re: Watts Coordinated Pretrial Proceedings*, Case No. 19 CV 1717, and *White v. City of Chicago*, 17 CV 2877–and that plaintiff seeks to disclose here. *See* [133] 10-11; *see also* [129] (plaintiff's motion to modify confidentiality order in *Watts* case to permit disclosure of CRs in this case). Defendants contend that responding to this discovery will be costly and time-

6

intensive, not least because the CRs supposedly have nothing to do with the allegations in this case, and will additionally require the City to review the CRs, respond to probable expert reports from plaintiff, and issue written discovery related to the CRs. *See* [*id.*] 11. Finally, defendants argue that staying *Monell* discovery will avert the need for judicial intervention into any *Monell*-related discovery disputes.

The Court is not persuaded by defendants' burden argument, which is not supported by an affidavit or other declaration that might substantiate the undue-burden claim. *Cf. Sage Prods., LLC v. Chemrite Copac, Inc.*, No. 19 CV 5308, 2021 WL 5299789, at *5 (N.D. Ill. Nov. 12, 2021) (undue-burden objections must be supported by evidence, not "stereotyped and conclusory statements"). In any event, this is a complex, high-stakes case, and the Court has previously found–at the defense's urging–that the proportionality factors in Rule 26(b)(1) weighed in favor of allowing the parties to exceed one of the caps that the Federal Rules of Civil Procedure place on discovery. *See* [113] 3-4 (granting defense motion for leave to depose more than 10 witnesses). Other courts in this District have denied motions to bifurcate and stay *Monell* discovery in these circumstances, notwithstanding estimates from the defense that the cost of *Monell* discovery was likely to exceed $1 million. *See Myles v. Wojcik*, Case No. 1:23-cv-14280, 2024 WL 4802552, at *4 (N.D. Ill. Nov. 15, 2024).

Furthermore, as plaintiff observes, the CRs at issue have been the subject of significant discovery between the parties in the *White* litigation, who are represented by the same attorneys involved in this case. Thus, while additional work is likely to be necessary to link the CRs to the allegations in this case (or to prove that no such link exists), the parties and their counsel are already familiar with the dataset on which plaintiff intends to base his *Monell* claim. That consideration undermines defendant's undue-burden claim. *Accord Blassingame v. City of Chicago,* No. 19-CV-7287, 2023 WL 2390363, at *4 (N.D. Ill. Mar. 7, 2023) (granting motion to bifurcate *Monell* discovery because of risk of prejudice to defense, but observing that "burden of discovery" was "significantly reduced" where City "already has engaged in *Monell* discovery in other similarly situated cases"); *Cruz*, 2023 WL 8934940, at *14 ("the City's having to undertake *Monell* discovery in other Guevara wrongful conviction matters undercuts the City's argument that such discovery is so burdensome that a stay of *Monell* discovery is necessary); *Johnson*, 2021 WL 12298820, at *2 ("Given the possibility that Johnson's *Monell* claims are not dependent on the claims against the Defendant Officers, *as well as the fact that the City has already produced some of the requested information in other cases*, the Court does not find that judicial economy favors bifurcation.") (emphasis added).

The Court also rejects defendants' argument that a stay would avert the possibility of *Monell*-related discovery disputes and *Monell*-related expert discovery. A stay would simply defer those issues until the claims against the individual officers were resolved–and possibly force the Court to resolve discovery disputes it has

7

already addressed, or could have addressed, during the current discovery period. *See Green on behalf of McCrory v. City of Chicago*, No. 22-cv-2918, 2024 WL 1363543, at *10 (N.D. Ill. Mar. 30, 2024) ("Formal bifurcation between individual claims and *Monell* claims complicates discovery, which would lead to excess litigation and undue delays. In other words, bifurcation of discovery would likely reduce the prospects of streamlined discovery.").

For these reasons, the Court finds that the burdens and complexities of the litigation do not favor a stay of *Monell* discovery.

### C. Prejudice

Finally, defendants argue that they will be prejudiced if they are forced to go to trial on plaintiff's individual claims and his *Monell* claim at the same time. *See* [133] 13-15. The officer defendants contend that, given the "wide-ranging nature of the allegations" against the City, there is a risk that the jury will use evidence of "the City's alleged 'failure' to prevent misconduct by other Chicago police officers" to find the officer defendants liable. [*Id.*] 14. Likewise, the City contends that there is a risk that the jury "may confuse the evidence" against the separate defendants and misapply the law to hold the City liable on a respondeat superior theory. [*Id.*] 15.

The Court declines to address these arguments, which relate only to the issue of whether plaintiff's claims should be bifurcated for purposes of trial. *See Cruz*, 2023 WL 8934940, at *4 ("the Court sees the prejudice risk as more attendant to the jury trial than to discovery, and with trial bifurcation not before us, we bypass the City's unfair prejudice argument for now"). To the extent that plaintiff's specific *Monell* discovery requests raise a risk of unfair prejudice, those concerns "may be managed through enforcement of Rule 26(b)(1) proportionality." *Id.* Lastly, the Court concludes that the prejudice factor weighs against a stay, which is likely to "depriv[e] the Plaintiff of a speedy resolution of his *Monell* claim." *Rodriguez v. City of Chicago*, Case No. 18-cv-7951, 2019 WL 4278501, at *2 (N.D. Ill. Sept. 10, 2019).

\* \* \*

In the exercises of its "extremely broad discretion" to resolve discovery disputes, *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018), the Court concludes that neither the interests of the litigation and judicial economy, the complexities and burdens of the litigation, nor concerns of unfair prejudice warrant a stay of *Monell* discovery.

### Conclusion

Defendants' motion to bifurcate and stay [133] is denied without prejudice to the extent it seeks an order bifurcating the *Monell* claim for purposes of trial and

8

denied to the extent it seeks a stay of *Monell* discovery. Plaintiff's motion to modify a confidentiality order to allow his counsel to produce defendant City of Chicago's Complaint Register files [129] is denied without prejudice to renewal after the parties meet and confer on this issue in light of the Court's disposition of the motion to stay and bifurcate. The parties should also consider whether the motion to modify should be filed in Case No. 19 CV 1717, given that the confidentiality order that plaintiff seeks to modify was entered by the magistrate judge presiding in that case.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: June 25, 2025**