**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALLEN ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-CV-2724 |
| v. | ) | |
| | ) | Hon. Judge Martha M. Pacold |
| WAYNE FRANO, et al, | ) | Mag. Judge Heather K. McShain |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANT OFFICERS' MOTION FOR LEAVE TO DEPOSE PLAINTIFF'S CRIMINAL DEFENSE ATTORNEY BASED ON PLAINTIFF'S WAIVER OF HIS ATTORNEY CLIENT PRIVILEGE AT HIS DEPOSITION

NOW COME Defendant Officers, by and through their undersigned counsel, and move this Court for leave to depose Plaintiff's former criminal defense attorney, Charles Piet, and in support thereof, state as follows:

### INTRODUCTION

Plaintiff brings a *Brady* claim asserting the Defendant Officers withheld exculpatory and impeachment evidence from him and his criminal defense attorney which, he claims, deprived him of his Due Process Rights to a fair criminal trial. In doing so, he has directly placed his criminal defense's attorney's knowledge regarding the allegedly withheld evidence at issue. Indeed, it is well established, evidence is not suppressed under *Brady* if the Plaintiff's attorney knew of it or it was otherwise available to him through the exercise of reasonable diligence. Plaintiff recently and explicitly waived any attorney-client privilege he held with his criminal defense attorney, Charles Piet, by voluntarily disclosing once-privileged communications in his deposition. As a result, Mr. Piet's knowledge is highly relevant to Plaintiff's instant malicious prosecution and *Brady* claims, and his deposition is proportional to the needs of the case considering that Plaintiff has placed his knowledge and Mr. Piet's knowledge at issue regarding the allegedly suppressed material at issue in this case and because of the

exceedingly high stakes involved in this reversed-conviction case seeking compensation for 13 years in prison. Pursuant to this Court's March 3, 2025 ruling on Defendants' motion for leave to depose more than ten witnesses in this case, which was adjudicated prior to Plaintiff's waiver of attorney-client privilege, Defendants cannot presently depose Mr. Piet. Dckt. No. 113. For the reasons that follow, Defendant Officers' respectfully request that this Court now grant them leave to depose Mr. Piet in light of this newly discovered evidence and change of position by Plaintiff.

**BACKGROUND**

### I.     Plaintiff's Claims In This Lawsuit.

Plaintiff in this case accuses Defendant Officers of, *inter alia,* withholding exculpatory evidence, fabricating evidence, and maliciously prosecuting him for the murder of Christopher Hanford (Hanford). Dckt. No. 1. Specifically, Plaintiff claims Defendant Officers suppressed 1) the alleged true circumstances of their identification procedures where witnesses Deandre Gutyon, Oscar Russell, Defendant Officers Frano and Celio each positively identified Plaintiff either as the shooter or being at the scene of the murder; 2) the alleged coercion of Guyton, Russell and Lamarius Robinson (Plaintiff's cousin) leading them to provide statements implicating Plaintiff in the murder and causing Guyton and Russell to falsely testify before the grand jury and at Plaintiff's criminal trial; 3) their own history of prior misconduct, 4) witness statements pointing to other suspects, and 5) the results of the interviews of Jamion Winters, February Burrage, Johntay Washington and James Shannon, which would have impeached the statement of Russell. *Id.* He further asserts Defendant Officers were responsible for his alleged malicious prosecution and conviction for the murder of Hanford. *Id.*

### II.     The Hanford Homicide Investigation.

During the Chicago Police Department's investigation into the December 3, 2008 Hanford murder, the detectives twice interviewed both DeAndre Guyton (on December 4, 2008 and March 2, 2009) and Oscar Russell (on December 4, 2008 and March 3, 2009), both of whom separately told

2

police that Plaintiff grabbed a gun from Lamarius's hands and shot Hanford, and both of whom ultimately identified Plaintiff as the shooter and his cousin as the person from whom Plaintiff took the gun from a photo spread. *See* Cleared Closed Arrest and Prosecution Report, attached as Exhibit 1 at pp. 4-5. Russell, in particular, provided the police with the names of several people, (including Winters, Burrage, Washington, Shannon, Ozell Jackson and Antonio White) who he claimed were also present for the shooting of Hanford. Some of these individuals (Winters, Burrage, Washington and Shannon) were interviewed on December 5, 2008.. (*See* 2008-12-4 Supplementary Report, attached as Exhibit 2 at pp. 3-4; 2008-12-5 General Progress Report, attached as Exhibit 3). Guyton and Russell subsequently gave statements to felony-review assistant state's attorneys identifying Plaintiff as Hanford's shooter (both on March 3, 2009). Ex. 1, at p. 7. On March 4, 2009, Officers Frano and Celio separately viewed a lineup and both positively identified Plaintiff (and tentatively identified Lamarius) as the individuals whom they saw running in the opposite direction where Hanford was shot shortly thereafter. *Id.* at p. 8. Shortly after this lineup, the detectives also interviewed Lamarius, who also stated that Plaintiff shot Hanford after grabbing a gun from his hands. *Id.* at pp. 8-9. Later that day, assistant state's attorney's Jim Byrne approved a first-degree murder charge against Plaintiff. *Id.* at p. 10.

### III.    The State's Criminal Prosecution of Plaintiff

Prior to Plaintiff's June 2011 criminal trial, the State disclosed several witnesses, including Burrage, Washington, Shannon and Winters, that it intended to call at Plaintiff's trial. *See* 2010-8-4 State's Answer to Discovery, attached as Exhibit 4.  Mr. Piet represented in court filings that Plaintiff intended to rely on the defense that he is not guilty of Hanford's murder, and that the prosecution cannot prove his guilt beyond a reasonable doubt. *See* 2010-10-15 Answer to State's Motion for Pre-Trial Discovery, attached as Exhibit 5. In February of 2011, Mr. Piet stated on the record to the Court that Plaintiff would be presenting no affirmative defenses (i.e., no alibi defense, no alternative shooter

defense, etc…). *See* 2011-2-15 Report of Proceedings, attached as Exhibit 6 at p. 2:12-21. At Plaintiff's criminal trial in 2011, Mr. Piet presented no evidence in his defense, nor did he call any witnesses. *See* Plaintiff's Post-Conviction Petition, attached as Exhibit 7 at p. 47.

### IV.     Plaintiff's Post-Conviction Proceedings.

In 2014, Plaintiff contested his conviction through his Petition for Post-Conviction Relief (PC Petition), to which he attached an affidavit disclosing several of Plaintiff's alleged conversations with Mr. Piet. *Id.* at pp. 46-47. According to Plaintiff's averments therein, Plaintiff allegedly told Mr. Piet 1) to speak with Quinton Davis and Jenee Moreland  because Lamarius admitted to them on the night of the murder, at separate times, that he shot and killed someone; 2) that Quinton Davis could authenticate Lamarius's handwriting on a letter Plaintiff claims he received from Lamarius in which Lamarius confessed to killing Hanford; 3) that witnesses Johntay Washington, Ozell Jackson, February Burage, Jamion Winters, and Aaron Marshall could impeach the testimony of the State's key witness, Oscar Russell by either stating that they were not present at the time of the shooting or refuting Russell's claim that Plaintiff had an altercation with Hanford prior to the shooting; and 4) that Plaintiff's mother, could testify to Plaintiff's innocence by providing Plaintiff with an alibi. *Id.* at pp. 46-47. Based upon Plaintiff's affidavit disclosing these conversations, Plaintiff's post-conviction attorney premised several arguments on Plaintiff's averments that he communicated the existence of exculpatory evidence to Mr. Piet, who failed to investigate the alleged evidence, rendering his counsel ineffective. *Id.* 2 at pp. 15-33. In Plaintiff's supplement to his PC Petition, he asserted two additional claims in support of vacating Plaintiff's conviction: 1) that a DNA analysis of a letter allegedly written by Lamarius (and which Plaintiff gave to Mr. Piet before his criminal trial) wherein Lamarius purportedly confessed to the murder, confirmed the letter's authenticity; and 2) that a *Brady* violation occurred where Chicago Police officers failed to disclose the contents of police interviews with

witnesses Johntay Washington, February Burrage, and Jamion Winters (among others). *See* Supplement to Plaintiff's Post-Conviction Petition, attached as Exhibit 8 at pp. 3-6.

On April 28, 2022, Plaintiff testified under oath at his third-stage evidentiary hearing to the content of several conversations he had with Mr. Piet, many of which he first disclosed in his affidavit attached to his PC Petition. *See* 2022-4-28 Report of Proceedings, attached as Exhibit 9 at pp. 36:1-42:13. In the same hearing, Assistant State's Attorney Linda Walls indicated the CCSAO would not oppose Plaintiff's petition on his ineffective assistance of counsel claims. *Id.* at p. 42:12-14. Mr. Piet did not testify at this evidentiary hearing in defense of his representation of Plaintiff during his criminal case, nor did he in any other manner contest Plaintiff's ineffective assistance of counsel claims during the post-conviction proceedings. *Id.* at pp. 42:12-43:13. Ultimately, Judge Brosnahan granted Plaintiff a new trial solely on the alleged ineffective assistance of Mr. Piet. *See* 2022-5-2 Report of Proceedings, attached as Exhibit 10 at pp. 9:18-20. Crucially, however, Judge Brosnahan explained in a lengthy colloquy the peculiarity – and effect – of Mr. Piet's absence from Plaintiff's post-conviction proceedings:

> [R]egarding the ineffective assistance of counsel claims, generally the defense attorney is a witness for the State or at least is part of the process where the State then evaluates what's told of them and decides how they are going to proceed with respect to a post conviction where ineffective assistance of counsel is alleged.
>
> Generally that defense attorney in many cases acts as a witness for the State explaining the reason for the trial decisions with the Court of the third stage hearing. The Court is then free to accept any explanations or arguments or reject them outright and find ineffective assistance of counsel, what's a trial strategy, and what's ineffective assistance of counsel.
>
> It's always a case-by-case decision. Here based on the uncontested nature of this third stage proceeding, the State's represented that the defense attorney refused to return calls or participate; so therefore, there is absolutely no credibility determination -- or factual determination to be made other than what's in the cold record along with the testimony and the stipulations that have been entered into evidence at the third stage hearing.

*Id.* at p. 4:2-24. One week later, on May 9, 2022, rather than re-try Plaintiff for the Hanford murder, the State, via its motion *nolle prosequi*, declined to continue prosecuting him and he was ordered to be released. *See*, 2022-5-9 Report of Proceedings, attached as Exhibit 11 at p. 2:15-24. On April 23, 2023, Plaintiff's Petition for a Certificate of Innocence was granted. *See* 2023-4-23 Order granting certificate of innocence, attached as Exhibit 12.

### V.   Defendants' January 27, 2025 Motion For Leave.

In the earlier stages of this case, Plaintiff disclosed Mr. Piet as a witness who "may have information about the Plaintiff's criminal proceedings and evidence disclosed during those proceedings, Plaintiff's criminal defense, investigation of the crimes at issue, the reversal of Plaintiff's conviction, Plaintiff's consistent declarations of innocence, as well as Plaintiff's wrongful prosecution and conviction and the resulting damages." *See* Plaintiff Allen Robinson's Second Supplemental Rule 26(a)(1) Disclosures, attached as Exhibit 13, No. 5, c-d. Defendant Officers subsequently subpoenaed Mr. Piet for his file regarding his representation of Plaintiff to which he responded that he had no responsive records. *See* Defendant Officers' Subpoena to the Law Offices of Charles Piet, attached as Exhibit 14. Plaintiff has not withdrawn Mr. Piet as a witness that he may call at trial.

Accordingly, on January 27, 2025, Defendant Officers filed a motion for leave to take more than ten depositions in this case, which, in relevant part, included Mr. Piet as one witness Defendant Officers' sought to depose. Dckt. at 97. Plaintiff's response in opposition to Defendants' motion, argued with specific respect to Mr. Piet (as well as Plaintiff's other former attorneys) that "it would be hard to imagine what 'testimony Mr. Piet … could provide in [his] deposition[] that would not be privileged, duplicative, or irrelevant of the depositions already taken.'" Dckt. No. 103 at p. 6. With respect to Mr. Piet, this Court denied Defendant Officers' leave to depose Mr. Piet in its March 3, 2025 ruling. Dkt. No. 113 at p. 5. Therein, this Court stated both that Defendant Officers failed to support their argument that Plaintiff's former attorneys "have information that may have a direct

bearing on Plaintiff's malicious prosecution claim" and that depositions such as Mr. Piet's "would pose [a burden] on the parties, given the likelihood that plaintiff and/or his former lawyers may raise attorney-client privilege objections during any such depositions" and therefore Defendant Officers had not met "carried not carried their burden to show a particularized need for these depositions." *Id.*

**VI.      Plaintiff's August 21, 2025 Deposition.**

On August 21, 2025, Plaintiff was deposed in this case. At his deposition, Plaintiff testified to the contents of the conversations he had disclosed in his post-conviction proceedings between himself and Mr. Piet; he answered each of them without his attorneys raising any attorney-client privilege or attorney work-product objections. *See*, Deposition of Allen Robinson, attached as Exhibit 15 at pp. 267:21-268:7 (testifying about disclosing his alibi to Mr. Piet), pp. 277:18-278:23 (testifying about his conversations with Mr. Piet concerning Lamarius's alleged confession letter), pp. 279:12-280:5 (testifying about his conversations with Mr. Piet about witnesses at his trial, including Oscar Russell, DeAndre Guyton, and Lamarius Robinson), pp. 281:13-284:7 (testifying about his conversations with Mr. Piet disclosing witnesses who could impeach Oscar Russell's testimony against him), pp. 284:22-285:14 (testifying about speaking with Mr. Piet about his criminal trial strategy), pp. 285:13-285:3, 289:1-3 (testifying about his conversations with Mr. Piet concerning Jenee Moreland, an alibi witness); pp. 295:7-17 (testifying about his conversations with Mr. Piet concerning Shanice Johnson, an alibi witness); pp. 295:23-297:10 (testifying about speaking with Mr. Piet about the decision not to testify in his defense at his criminal trial), pp. 333:9-12 (testifying again about what he told Mr. Piet about Jenee Moreland, as well as Quinton Davis), pp. 333:23-334:2 (testifying about telling Mr. Piet that Quinton Davis can authenticate Lamarius's handwriting in the alleged confession letter), pp. 340:14-19 (testifying to telling Mr. Piet about another witness, Aaron Marshall, who could impeach Oscar Russell), pp. 343:8-21 (testifying about telling Mr. Piet to speak with his mother about his alibi), pp. 345:11-346:7 (testifying that Mr. Piet told Plaintiff that he never spoke to any witnesses Plaintiff

7

disclosed to him). Given Plaintiff's waiver of attorney client privilege, Defendants seek to depose Mr. Piet as he has information directly relevant to Plaintiff's *Brady* and malicious prosecutions claims as explained in detail below.

## ARGUMENT

I. **Plaintiff Waived The Attorney-Client Privilege With His Attorney, Mr. Piet, After Voluntarily Disclosing The Contents of Privileged Communications.**

The attorney-client privilege "extends to confidential communications between client and attorney, made 'in order to obtain legal assistance.'" *U.S. v. Leonard-Allen*, 739 F.3d 948, 952 (7th Cir. 2013). The purpose of the attorney-client privilege is "to encourage clients to make full disclosure to their attorneys, and its scope is informed by this purpose [but,] [b]ecause the privilege may operate 'in derogation of the search for truth,' we 'construe the privilege to apply only where necessary to achieve its purpose." *Leonard-Allen*, 739 F.3d at 952–53. Waiver of the attorney-client privilege can occur either explicitly or by implication. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir.1987). An explicit waiver occurs "primarily when information that would otherwise be privileged is not kept confidential." *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 710 (N.D. Ill. 2015) (Citing *U.S v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987)). Any disclosure of such confidential communications "almost invariably waives the privilege 'with respect to the world at large; selective disclosure is not an option.'" *Id.* (Citing *Burden–Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003)). In terms of scope, "[b]y offering …testimony to a specific communication, a client waives the attorney-client privilege only as to disclosure of other communications on [that] specific matter." *Lorenz*, 815 F.2d at 1099; *In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wisconsin Steel*, 666 F. Supp. 1148, 1153 (N.D. Ill. 1987) ("The general rule is that voluntary disclosure of privileged attorney-client communication constitutes waiver of the privilege as to all other such communications on the same subject."). "Any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Powers v. Chicago Transit Auth.*, 890 F.2d 1355,

1359 (7th Cir. 1989). So too, "information once disclosed to a party opponent waives the attorney-client privilege as to future proceedings." *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 711 (N.D. Ill. 2015) (Collecting cases).

Here, Plaintiff voluntarily disclosed the contents of several conversations with Mr. Piet at his deposition concerning, but not limited to, his purported innocence, his alibi, the true murderer, impeachment witnesses (who were the subject of Plaintiff's *Brady* argument in his post-conviction proceedings), and his trial strategy. Exhibit 15, at pp. 267:21-268:7, 277:18-278:23, 279:12-280:5, 281:13-284:7, 284:22-285:14, 285:13-285:3, 289:1-3, 295:7-17, 295:23-297:10, 333:9-12, 333:23-334:2, 340:14-19, 343:8-21, 345:11-346:7. Based on the foregoing, Plaintiff waived his attorney-client privilege over the contents of these communications and Defendants should be permitted to inquire into Mr. Piet's knowledge of the topics discussed therein. *See Patrick*, 154 F. Supp. 3d at 719 (holding that conversations between a plaintiff and his criminal trial attorney were no longer privileged after they were disclosed in his post-conviction petition and affidavits which concerned the plaintiff's claimed alibi witnesses, the discussion of alibi defenses, and whether police misconduct procured evidence against the plaintiff resulting in his conviction).

More specifically, this means that Defendant Officers should be permitted to inquire about Mr. Piet's knowledge concerning:

- Alibi witnesses Quinton Davis and Jenee Moreland
- Lamarius' alleged admission to having committed the shooting;
- The authorship of the confession letter to the Hanford murder allegedly written by Lamarius;
- Impeachment witnesses Johntay Washington, Ozell Jackson, February Burrage;
- Any investigation into or evidence that Oscar Russell did not see these impeachment witnesses at the scene of Hanford's murder;
- Impeachment witness Aaron Marshall, Plaintiff's relationship with Aaron Marshall, and any evidence concerning Plaintiff's interactions with Marshall and Hanford in the weeks leading up to Hanford's murder;
- Alibi witness Latanya Fleming;
- Any investigation into or evidence that Plaintiff allegedly was not at the scene of Hanford's murder;

9

- Mr. Piet's decision not to present any evidence at Plaintiff's trial for the Hanford murder; and
- Mr. Piet's decision not to call any alibi witnesses at Plaintiff's trial.

### A.. Mr. Piet's Knowledge Of These Communications is Relevant

The scope of discovery "extends to any nonprivileged matter that is relevant to any party's claim or defense …." Fed. R. Civ. P. 26 (b)(1). Relevance is defined broadly under Rule 26. *DeLeon-Reyes v. Guevara*, 2020 WL 3050230, at *5 (N.D. Ill. June 8, 2020). Therefore, information that may be discoverable need not be admissible as evidence. Fed. R. Civ. P. 26(b)(1).

Here, Mr. Piet's knowledge of the information and witnesses Plaintiff supposedly disclosed to him in the conversations Plaintiff has now voluntarily testified to in this litigation as having occurred is indisputably relevant to Plaintiff's present claims. Plaintiff's testimony concerning witnesses Winters, Burrage, Washington and Shannon, whose statements were allegedly withheld, is first relevant to Plaintiff's *Brady* claim.[1] Plaintiff and Mr. Piet's communications demonstrating their knowledge of allegedly withheld evidence goes directly to the second element of a *Brady* violation claim (i.e., that evidence was suppressed by the government). *See*, *Carvajal v. Dominguez*, 542 F.3d 561, 566–67 (7th Cir.2008) (reciting the three elements of a *Brady* claim: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence [was] suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words, 'materiality.'"); *see also*, *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir.2005) (stating that evidence is "suppressed" if "(1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through

---

[1] Indeed, raising his *Brady* claim, by itself, made Mr. Piet's knowledge of evidence that may have been withheld during his criminal proceedings relevant. *See, Patrick*, 154 F. Supp. 3d at 718 (opining that "[i]n light of these fundamental principles [which determine whether the attorney-client privilege has been impliedly waived], it is not surprising that the court in *Taylor* concluded that by virtue of his *Brady* claims, the plaintiff impliedly waived the attorney-client privilege and work-product protection as to those communications the subject matter of which involved the allegedly withheld information.") (referencing *Taylor v. City of Chicago*, 2015 WL 5611192, at *4-6 (N.D. Ill. Sept. 22, 2015).

the exercise of reasonable diligence."). Therefore, in the Seventh Circuit "[T]here is no *Brady* violation if the defendant 'knew or should have known about the essential facts contained in the allegedly exculpatory evidence.'" *Taylor*, 2015 WL 5611192, at *2 (quoting *U.S. v. Muoghalu,* 2010 WL 3184178, at *7 (N.D.Ill. Aug. 9, 2010), aff'd, 662 F.3d 908 (7th Cir.2011)). Accordingly, whether Mr. Piet was aware of these witnesses supposedly exculpatory statements is of central importance to Plaintiff's *Brady* claim.

Similarly, Plaintiff's contention that Defendants suppressed any witness statements or information pointing to other suspects, such as Lamarius, is significantly undercut if he told Mr. Piet that Moreland and Davis had information that Lamarius was the shooter based on their conversations with him the night of the murder. Again, if Mr. Piet had this information pointing to Lamarius as an alternate suspect, then Plaintiff cannot claim he and his attorney lacked knowledge of this evidence or that it was suppressed.

Mr. Piet's knowledge is also relevant to the third element of Plaintiff's *Brady* claim. Evidence is material in the *Brady* context if there is a "reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 470 (2009). "The question is not whether the defendant would have more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Thus, if confidence in the outcome of the trial is undermined by the reasonable probability of a different outcome, the evidence is material and the defendant suffered prejudice. *Id.* at 434-35. If Plaintiff made Mr. Piet aware of information some witnesses may have had and Mr. Piet chose not to present such evidence at Plaintiff's criminal trial, then this may help to bolster Defendants' argument that such evidence was not material as it would not have affected the outcome of the trial. As a result, the

11

information Mr. Piet had, and his strategic decisions not to present such evidence at Plaintiff's criminal trial is also relevant to Plaintiff's *Brady* claim.

Mr. Piet's testimony is also relevant to Plaintiff's malicious prosecution claim under Illinois law. In this case, the resolution of this claim requires examining Plaintiff's alleged factual innocence. *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 924-25 (7th Cir. 2001 (Under Illinois Supreme Court precedent "a *nolle prosequi* dismissal terminates a proceeding in favor of the accused unless the abandonment is for reasons not indicative of the innocence of the accused.") Therefore, Plaintiff has the burden of proving that his criminal proceedings terminated in his favor – of proving his innocence – to satisfy his state malicious prosecution claim in this case. *Id.* at 925; *see also*, *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016)(the termination of the proceeding in favor of plaintiff is an element of a state-law malicious prosecution claim in Illinois); *Holt v. City of Chicago*, 2022 IL App (1st) 220400 (The elements of a claim for malicious prosecution under Illinois law are: (1) the commencement or continuation of an original or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) malice and (5) damages.

Defendants anticipate Plaintiff will contend that his certificate of innocence ("COI") satisfies the favorable termination element of a malicious prosecution claim. Despite Plaintiff's COI, evidence indicative (or not) of Plaintiff's claimed innocence is plainly relevant to Plaintiff's malicious prosecution claim. Plaintiff has now testified in his deposition to his having discussions with Mr. Piet about several witnesses and/or pieces of evidence establishing Plaintiff's factual innocence which Mr. Piet could have (but did not) use in defending Plaintiff for the Hanford murder. For example, before Plaintiff's criminal trial, Mr. Piet informed the court that he would not be presenting any affirmative defenses on Plaintiff's behalf at Plaintiff's criminal trial. Ex. 6 at p. 2:12-21. Therefore, Mr. Piet's knowledge of these conversations during which Plaintiff supposedly supplied him with this information is now central to Plaintiff's malicious prosecution claim too. *See Logan,* 246 F.3d at 925

("To determine whether the proceedings against Logan were terminated in his favor, we must look past the form or title of the disposition and examine the circumstances surrounding the entry of the *nolle prosequi*.").

## II.    Deposing Mr. Piet Is Proportional to the Needs of This Case.

Under Rule 26, any discovery's proportional necessity to the needs of the case is considered against "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed R. Civ. P. 26(b)(1).

The central issues in Plaintiff's lawsuit include 1) Plaintiff's innocence; 2) the existence of probable cause for Plaintiff's arrest and indictment for murder; 3) whether Defendant Officers withheld exculpatory evidence from the prosecutors in Plaintiff's criminal trial; and 4) whether Defendants fabricated witness statements and/or false identifications. According to Plaintiff's testimony, at minimum, Mr. Piet has *discoverable* knowledge concerning several key issues in this case including Plaintiff's alibi and alibi-by-proxy (i.e., that Lamarius killed Hanford) – both of which center on Plaintiff's factual innocence as well as the evidence available and/or unavailable during Plaintiff's criminal proceedings. Ex. 15 at pp. 267:21-268:7, 277:18-278:23, 279:12-280:5, 281:13-284:7, 284:22-285:14, 285:13-285:3, 289:1-3, 295:7-17, 295:23-297:10, 333:9-12, 333:23-334:2, 340:14-19, 343:8-21, 345:11-346:7. Moreover, Plaintiff disclosed Mr. Piet as a witness with relevant information in support of his claims and his potential knowledge may further weigh on Plaintiff's credibility should he deny having communications on the subject matters Plaintiff claims they discussed. At this point only Plaintiff has access to the information in the communications at issue because Mr. Piet did not appear in any manner to contest Plaintiff's allegations in his post-conviction proceedings that his prior counsel was ineffective, and because Mr. Piet no longer has any records of his representation of

13

Plaintiff. Ex. 14 at pp. 42:12-43:13; Ex. 11. So too, despite Plaintiff having attacked the credibility of Mr. Piet's use of these conversations during his criminal proceedings to his benefit, he has now disclosed him as a witness who, *inter alia*, "may have information about …, Plaintiff's consistent declarations of innocence, as well as Plaintiff's wrongful prosecution…." *See* Exhibit 13, No. 5, c-d.

Furthermore, given Plaintiff's waiver of the attorney-client privilege with respect to his conversations with Mr. Piet, the burden of this discovery is *de minimis*. Dckt. No. 113 at p. 5. Finally, and to the extent Plaintiff objects due to privacy concerns emanating from his waivers of attorney client privilege, Plaintiff himself testified under oath to the contents of these communications in the first place. Therefore, based on the testimony given by Plaintiff in his deposition, and the seriousness of the claims he raises in this case, Mr. Piet's knowledge of the topics covered in these communications and of any evidence that existed concerning Plaintiff's innocence during his time as Plaintiff's criminal defense attorney is no longer protected by attorney-client privilege, and Defendants should be able to depose him.

### III. Plaintiff's Express Waiver Of Attorney-Client Privilege Constitutes New Evidence Warranting This Court's Limited Reconsideration Of Its March 3, 2025 Order

A motion for reconsideration "must be based on a manifest error of law or fact or on newly discovered evidence." *Terese F. v. Saul*, 396 F. Supp. 3d 793, 794 (N.D. Ill. 2019) (citing *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir.2012)); Fed. R. Civ. P. 60(b)(2). Defendants here seek only to proffer newly discovered evidence – Plaintiff's explicit waiver of his attorney-client privilege with his criminal attorney, Mr. Piet – in support of the instant motion. At the time Defendants filed their motion to depose witnesses in excess of 10 in January of 2025, Defendants could not have represented to the Court that Plaintiff had explicitly waived his attorney-privilege with Mr. Piet, let alone in the manner he did in his August 21, 2025 deposition. Indeed, Plaintiff opposed Defendants' motion, arguing in response that "it would be hard to imagine

what "testimony Mr. Piet … could provide in [his] deposition[] that would not be privileged, duplicative, or irrelevant of the depositions already taken." Dckt. No. 103 at p. 6. Accordingly, this motion is not advancing "arguments [n]or theories that could have and should have been made" at that time. *Terese F.*, 396 F. Supp. 3d at 794 (N.D. Ill. 2019). Instead, Defendants bring to this Court's attention that, despite Plaintiff opposing their motion for leave to depose Mr. Piet (among other witnesses) on grounds of privilege, Plaintiff has apparently abandoned that position. In light of this new evidence, and for the reasons above, this Court should grant Defendant Officers' motion to depose Mr. Piet.

## CONCLUSION

For the reasons stated above, Defendant Officers' respectfully request that this Court grant Defendant's motion and give leave to depose Mr. Piet and for any other relief that this Court deems just and reasonable.

Respectfully submitted,
BORKAN & SCAHILL, LTD.

By:     /s/ Drew E. Wycoff
             Drew E. Wycoff

Steven B. Borkan
Timothy P. Scahill
Emily E. Schnidt
Misha Itchhaporia
Drew E. Wycoff
Andrea F. Checkai
Special Assistants Corporation Counsel
**BORKAN & SCAHILL, LTD.**
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030
*Attorneys for Defendant Officers*