# EXHIBIT 9

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CRIMINAL DIVISION**

FILED
10/14/2022 1:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
09CR0642201

ALLEN ROBINSON,                                )
                                               )
        *Petitioner*,                          )        No. 09 CR 06422
                                               )
        v.                                     )
                                               )
STATE OF ILLINOIS,                             )
                                               )
        *Respondent*.                          )
                                               )

Brosnahan, Mary Margaret
19899100

# EXHIBIT M

**Robinson 001229**

FILED DATE: 10/14/2022 1:16 PM 09CR0642201

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
1   STATE OF ILLINOIS  )
                       ) SS:
2   COUNTY OF C O O K  )

3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            COUNTY DEPARTMENT - CRIMINAL DIVISION
4

5   THE PEOPLE OF THE STATE    )
    OF ILLINOIS,               )
6                              )
                Plaintiff,     )
7                              )
        v.                     ) No. 09 CR 06422-01
8                              )
    ALLEN ROBINSON,            )
9                              )
                Defendant.     )
10

11          REPORT OF PROCEEDINGS had at the hearing

12  in the above-entitled cause, before the HONORABLE

13  MARY M. BROSNAHAN, one of the Judges of said

14  Division, on the April 28, 2022.

15

16  PRESENT:

17

18      HONORABLE KIMBERLY M. FOXX,
        State's Attorney of Cook County, by:
        MS. LINDA WALLS,
19      Assistant State's Attorney,
            appeared for the People;
20

21      MS. JODI GARVEY and MR. PATRICK BLEGEN,
        PRIVATE ATTORNEYS,
22          appeared on behalf of Defendant.

23
    CATRICE M. PRINCE, CSR No. 084-003765
24  Official Court Reporter
```

—1—

Robinson 001230

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1                              I N D E X

2

3

    People v. Allen Robinson
4
    Case No:  09 CR 06422-01
5
    Date of Hearing:  April 28, 2022
6
    Pages:  1-53
7
    Court Reporter:    Catrice Prince, CSR
8

9

                        E X A M I N A T I O N
10
    WITNESSES                                   PAGE
    JENEE MORELAND
11       Direct by Mr. Blegen                      7
         Examination by The Court                 14
12
    LATONYA FLEMING
13       Direct by Mr. Blegen                     21

14  ALLEN ROBINSON
         Direct by Mr. Blegen                     35
15

16

17

18

19

20

21

22

23

24

—2—

**Robinson 001231**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1    THE COURT:  All right.  We are on the record with

2 People versus Allen Robinson.  Good afternoon to you,

3 sir.

4    THE DEFENDANT:  Good afternoon.

5    THE COURT:  We've got Mr. Allen Robinson in

6 custody in the open courtroom, and he's here from the

7 Illinois Department of Corrections.

8         On behalf of the defendant, can I get your

9 names, plural, for the record, Counsels?

10    MR. GARVEY:  Jodi Garvey and Patrick Blegen.

11    THE COURT:  All right.  Thank you.  And I know

12 with respect to COVID, I'll tell you what the rules are

13 and then you can do whatever you're comfortable with.

14 If you are speaking in court and you want to remove

15 your mask, you can absolutely do that.  It's up to you.

16 All right.

17         Counsel for the State.

18    MS. WALLS:  Linda Walls, W-A-L-L-S.

19    THE COURT:  We are here today to proceed on the

20 counsels' petition for post-conviction relief and an

21 evidentiary hearing.  Both sides are answering ready,

22 is that correct?

23    MR. BLEGEN:  Yes.

24    MS. WALLS:  Yes.

**Robinson 001232**

FILED DATE: 10/14/2022 1:16 PM  09CR0642201

```
 1      THE COURT:  Are there any opening remarks that
 2  either side wishes to make?
 3      MR. BLEGEN:  Just briefly, I won't repeat
 4  everything that's in the petition.  I know you are
 5  familiar with the petition.  I think the primary focus
 6  of what you are going to hear about today is the
 7  third-party confession letter that did not get admitted
 8  into court into evidence at the trial -- excuse me --
 9  as well as you are going to hear evidence of the
10  Lamarius Robinson, another individual having confessed,
11  two other individuals and then alibi presented by
12  Mr. Allen Robinson's mother, none of which was
13  presented at the original trial, all of which you will
14  hear that which information was given to the lawyer.
15          None of it came out except for the fact of
16  the confession letter by Lamarius Robinson was
17  discussed in court but was not presented to the jury,
18  all of which represents ineffective assistance of
19  counsel that likely would have resulted in a different
20  verdict.
21      THE COURT:  All right.  Counsel for the State.
22      MS. WALLS:  Judge, I will waive.
23      THE COURT:  You may proceed with your evidence.
24      MR. BLEGEN:  And, Judge, I am going to show
```

**4**

**Robinson 001233**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1  various witnesses some documents along the way that are

2  part of the petition and two supplements to the

3  petition.  The State has agreed that all of the

4  exhibits to the petition are admissible and should be

5  admitted for purposes of this hearing just so the

6  record can be cleaner that way we won't have multiple

7  documents floating around essentially.

8       THE COURT:  Just when you say "supplements," are

9  those exhibits that I have?

10      MR. BLEGEN:  So you have filed a supplement, it's

11 called Exhibits L and M to the petition.  It was filed

12 February 26th of 2015, and then there's a supplement

13 petition for post-conviction relief filed

14 January 11, 2018.  The main purpose of the second page

15 is that just references, it does have the DNA results

16 of the third-party confession.

17      THE COURT:  Before you grab your witness, let me

18 get the full file.  I do have, of course, your original

19 post-conviction.  I want to make certain that I've got

20 the 2/26/15 and 1/11/18 18 filing.

21      MR. BLEGEN:  Thank you.

22      THE COURT:  All right.  Counsel, I do have the

23 supplement from 2018 that was filed.  I would ask, do

24 you happen to have a copy of the 2/26/15 filing?

Robinson 001234

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
 1       MR. BLEGEN:  I do, Judge.  Frankly, that's not
 2   going to get referenced today, but I am happy to give
 3   you a copy.
 4       THE COURT:  Let me just have it for my court file.
 5   Can you pass it through the clerk.  Ms. Clerk, can I
 6   ask you to make a copy for us?  Do you need a copy,
 7   State, or you've got everything you need?
 8       MS. WALLS:  No, I have everything digitally,
 9   Judge.
10       THE COURT:  Whenever you are ready, you can
11   proceed.
12       MR. BLEGEN:  Sure.  Judge, Petitioner will call
13   Jenee Moreland.
14       THE COURT:  Good afternoon to you, ma'am.  Can you
15   please raise your right hand for me.
16                  (WHEREUPON, the witness was duly
17                   sworn.)
18       THE COURT:  Thank you, ma'am.  You can take a
19   seat.  If you are more comfortable, you are behind
20   Plexiglass.  If you want to pull your mask down or take
21   it off while you're testifying, you may do that, and
22   I'll turn the microphones on.
23                  All right.  Go ahead, sir.
24       MR. BLEGEN:  Thank you.
```

**—6—**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
 1                    JENEE MORELAND,

 2  called as a witness herein, having been first duly

 3  sworn, was examined and testified as follows:

 4                  DIRECT EXAMINATION

 5  BY MR. BLEGEN:

 6       Q.    Ma'am, could you please tell us your name and

 7  spell first and last name for the court reporter?

 8       A.    Jenee Moreland, J-E-N-E-E, M-O-R-E-L-A-N-D.

 9       Q.    And how old are you, ma'am?

10       A.    33.

11       Q.    Where do you live generally?

12       A.    Say it again.

13       Q.    Where do you live generally speaking?  We

14  don't need your exact address.

15       A.    Chicago, Illinois.

16       Q.    You have any children?

17       A.    Yes, one.

18       Q.    How many?

19       A.    One.

20       Q.    What do you do for a living?

21       A.    I'm a special ed. assistant.

22       Q.    And where do you work?

23       A.    Oak Park River Forest High School.

24       THE COURT:  Hold on one second.  You work in Oak
```

—7—

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
 1   Park, and I couldn't hear you.

 2        THE WITNESS:  Oak Park River Forest High School.

 3   BY MR. BLEGEN:

 4        Q.    Try to slow down a little bit while you are

 5   speaking.

 6              How long have you been a special education

 7   assistant?

 8        A.    For about 11 years.

 9        Q.    What is your educational background?

10        A.    Associates degree.

11        Q.    Do you know the petitioner in this matter,

12   Allen Robinson?

13        A.    Yes.

14        Q.    Do you see him here in court today?

15        A.    Yes.

16        Q.    Can you point to him or tell us something he

17   is wearing?

18        A.    He has a blue shirt on.

19        THE COURT:  All right.  The record will show an

20   in-court identification of Mr. Robinson.

21   BY MR. BLEGEN:

22        Q.    How do you know Mr. Robinson?

23        A.    He is the father of my daughter.

24        Q.    Was there a point in time that you and
```

Robinson 001237

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
 1   Mr. Robinson were in a romantic relationship?

 2        A.    Yes.

 3        Q.    Can you tell us generally what time period

 4   that encompassed?

 5        A.    On and off from December 15th of '02 to March

 6   of '09.

 7        Q.    And you told us you have a child together?

 8        A.    Yes.

 9        Q.    When did your romantic relationship with

10   Mr. Robinson end?

11        A.    March of '09.

12        Q.    And why did it end?

13        A.    Because I found out he had another child on

14   the way.

15        Q.    And so since that time have you been in a

16   romantic relationship with Mr. Robinson?

17        A.    No.

18        Q.    Do you know a person by the name of Lamarius

19   Robinson?

20        A.    Yes.

21        Q.    Who is Lamarius?

22        A.    He is Allen's cousin.

23        Q.    How do you know Lamarius?

24        A.    Through Allen.
```

**Robinson 001238**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1    Q.    You say through Allen?

2    A.    Yes.

3    Q.    How long of a period of time did you know

4  Lamarius?

5    A.    I met Lamarius about '05.

6    Q.    And when was the last time -- when did you

7  stop associating with him?

8    A.    '08.

9    Q.    So approximately three years you knew him?

10   A.    Yes.

11   Q.    Let me direct your attention to December 3rd

12 of 2008, sometime after 9:15 p.m., did you receive a

13 telephone call from Lamarius Robinson?

14   A.    Yes.

15   Q.    What did Mr. Robinson say to you or you say

16 to him during that call?

17   A.    He asked me to pick him up off of Chicago

18 Avenue.

19   THE COURT:   I am sorry, he asked you to pick him

20 up from where?

21   THE WITNESS:   Chicago Avenue and Cicero.

22 BY MR. BLEGEN:

23   Q.    Ma'am, I think if you speak a little more

24 slowly, everybody will have an easier time to

— 10 —

**Robinson 001239**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1   understand what you're saying, okay.

2          Did you go and pick Lamarius up?

3   A.    I did.

4   Q.    And where did you pick him up approximately?

5   A.    About Chicago Avenue and Cicero.

6   Q.    And did you say anything to him or did he say

7   anything to you during that car ride?

8   A.    Yes.

9   Q.    What?

10   A.    He was nervous.  I asked him what was wrong

11   with him.

12   Q.    Did he respond?

13   A.    Yeah, he was talking in circles, then he told

14   me he had just killed someone.

15   Q.    What was your response to him saying that?

16   A.    I told him he had to get the F out of my car.

17   Q.    Did you stop the car?

18   A.    Yes, I pulled over.

19   Q.    Where?

20   A.    On Madison and Cicero.

21   Q.    And then any specific location?

22   A.    It was a gas station.

23   Q.    And did Lamarius get out of the car?

24   A.    He did.

— **11** —

**Robinson 001240**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1    THE COURT:  Did you say what was the address of

2  the gas station or the cross streets?

3    THE WITNESS:  Madison and Cicero.

4    THE COURT:  Thank you.

5  BY MR. BLEGEN:

6    Q.    Did you tell anyone else about what Lamarius

7  had said to you?

8    A.    I told Allen.

9    Q.    Do you recall when you told Allen?

10    A.    The next day when I spoke with him.

11    Q.    During the time that you knew Lamarius

12  Robinson, did you become familiar with his handwriting?

13    A.    Yes.

14    Q.    How?

15    A.    I saw him fill out a timecard before.

16    Q.    Had you seen anything else that he had

17  written?

18    A.    Yeah.

19    Q.    Do you recall specifically what you saw?

20    A.    I can't recall, no.

21    Q.    Let me show you what is part of the report.

22    MR. BLEGEN:  For the record that's Allen

23  Robinson's original petition Exhibit I.

24    Judge, can I approach the witness?

—12—

**Robinson 001241**

FILED DATE: 10/14/2022 1:16 PM    09CR0642201

1        THE COURT:  You may, sir.  You may have continuing

2   permission with your witness.

3   BY MR. BLEGEN:

4        Q.    Ma'am, take a look at Exhibit I here.  If you

5   need to see more pages, let me know.

6        A.    That's it.

7        Q.    And do you recognize whose handwriting that

8   is on Exhibit I?

9        A.    Yes.

10       Q.    Whose?

11       A.    Lamarius Robinson's.

12       Q.    You understand that Mr. Robinson went to

13  trial in the case we are here on now several years ago?

14       A.    Yes.

15       Q.    Were you ever -- prior to that trial were you

16  ever contacted by Mr. Robinson's lawyer about being a

17  witness?

18       A.    No.

19       Q.    Were you ever contacted by Mr. Robinson's

20  lawyer about anything else?

21       A.    No.

22       Q.    Had you been called as a witness at Allen

23  Robinson's original trial, would you have testified?

24       A.    Yes.

—**13**—

**Robinson 001242**

FILED DATE: 10/14/2022 1:16 PM 09CR0642201

```
 1        Q.    Would you have testified consistently with
 2   what you've testified to here today?
 3        A.    Yes.
 4        MR. BLEGEN:  That's all the questions, Judge.
 5                          EXAMINATION
 6   BY THE COURT:
 7        Q.    Were you present at the trial at all?
 8        A.    Yes.
 9        Q.    How many days of the trial did you attend?
10        A.    I remember --
11        Q.    Did you attend all of the days of the trial?
12        A.    Yes, I was there.
13        Q.    Did you ever tell your attorney -- or tell
14   your Mr. Allen Robinson's attorney that you wanted to
15   testify?  Was there any conversation at all?
16        A.    No, it was no conversation.
17        Q.    Did you ever tell him that you had
18   information that was important to the case and that you
19   knew Lamarius did it because he admitted it to you?
20   Did you ever pull him aside and tell him that?
21        A.    No.
22        Q.    Why?
23        A.    I told Allen and that was it.
24        THE COURT:  Any further questions, counsel or
```

—**14**—

**Robinson 001243**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1   defense?

2                      REDIRECT EXAMINATION

3   BY MR. BLEGEN:

4        Q.    Did defense counsel ever approach you during

5   the trial?

6        A.    No.

7        Q.    Did you ever have any understanding as to why

8   you were not called as a witness?

9        A.    I didn't understand it, but I didn't question

10  it.

11       MR. BLEGEN:  That's all, Judge.

12       THE COURT:  All right.  Cross.

13       MS. WALLS:  No cross, Judge.

14       THE COURT:  All right.  You may step down.

15       MR. BLEGEN:  Judge, can I tell Ms. Moreland she is

16  free to leave if no one else has any other questions?

17       THE COURT:  State, you have no use for Ms.

18  Moreland?

19       MS. WALLS:  Yes, Judge.

20       THE COURT:  You may release your witness.

21       MR. BLEGEN:  Thank you.

22            Next, we are proceeding by way of

23  stipulation.

24       THE COURT:  Okay.

**―15―**

**Robinson 001244**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1      MR. GARVEY:  The parties would stipulate that if

2  called to testify, Quentin Davis would testify that he

3  is 34 years old and currently resides at the Crossroads

4  Adult Transition Center in Chicago, Illinois.

5          Davis would further testify that he's

6  currently completing service at the custodial portion

7  of his sentence for second degree murder in the case of

8  People v. Davis, number 09 CR 16822 for which he was

9  sentenced to 30 years imprisonment.

10          Davis is currently enrolled in the work

11  release program at Crossroads.

12          Paragraph 2.  Davis would testify that he has

13  a prior conviction for unlawful vehicular invasion from

14  2003 for which he was sentenced to seven years in the

15  custody IDOC.

16          3.  Davis would testify that he grew up on

17  the west side of Chicago.  Davis would further testify

18  that he's known both Allen Robinson and Lamarius

19  Robinson since they were all about five years old.  He

20  has been very close with both of them, and it would be

21  hard to say which one he is closer to as they are both

22  like family to him.

23          4.  Davis would further testify that on

24  December 3rd, 2008, at approximately 9:15 p.m., he was

Robinson 001245

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
 1    at his grandmother's house in the area of 15th Street

 2    and Lawler in Chicago when he received a phone call

 3    from Lamarius Robinson.  Lamarius asked Davis to pick

 4    him up at a gas station at Madison and Cicero.

 5         THE COURT:  May I stop you, 15th and what?

 6         MR. GARVEY:  Lawler.

 7         THE COURT:  Lawler, thank you.  Go ahead.  At a

 8    gas station.  Go ahead.

 9         MR. GARVEY:  5.  Davis would testify that he went

10    to the gas station with his then girlfriend in her car

11    and picked up Lamarius.  They all drove back to Davis'

12    grandmother's house.  Once Lamarius was in Davis'

13    girlfriend car, Lamarius seemed very upset.  Davis

14    would testify that Lamarius showed Davis a chrome and

15    black .45 caliber handgun with the slide lock back,

16    meaning the gun was empty.

17              6.  Davis would testify that once in the car,

18    Lamarius stated words to the effect of, Man, I just

19    fucked up.  I tweaked.  I ain't never did this shit

20    before.  Davis would further testify that Lamarius

21    admitted he had just killed someone, and that's what he

22    meant when he said he had never did this shit before.

23              7.  Davis would testify that Lamarius stated

24    that he was on Lawler Street when he saw 13, who Davis
```

—17—

FILED DATE: 10/14/2022 1:16 PM  09CR0642201

```
 1   knows to be Christopher Hanford coming out of a house
 2   or a gangway.  Lamarius told Davis that he had tried
 3   shooting someone else earlier but could not get him so
 4   he shot 13 instead.
 5          Davis would testify that Lamarius stated that
 6   he ran up on 13 and shot him several times.
 7              8.  Davis --
 8       THE COURT:  Just slow down a smidgen.  Give me one
 9   second to catch up to you.
10       MS. WALLS:  Judge, we have a copy to present to
11   the Court for the court file.
12       THE COURT:  Okay.  All right.  I will take that.
13   Do you have a copy right now?
14       MR. GARVEY:  I can give you this one.
15       THE COURT:  Why don't you finish reading it.  I
16   will still take notes.
17       MS. WALLS:  I have it digitally too so I can give
18   you my signed copy.
19       THE COURT:  Thank you.
20       MR. GARVEY:  Paragraph 8.  Judge?
21       THE COURT:  Yes, ma'am.  Go right ahead.
22       MR. GARVEY:  Davis would further testify that
23   Lamarius told him that after the shooting he called
24   Jenee Moreland to pick him up, and then he called Davis
```

Robinson 001247

FILED DATE: 10/14/2022 1:16 PM  09CR0642201

1  to meet him at the gas station.

2          9.  Davis would testify that after Lamarius

3  told Davis what he had done, Allen Robinson came to

4  Davis' grandmother's house.  Allen and Lamarius began

5  to argue about the shooting of 13.  Davis would testify

6  that the shooting happened in Allen's area around 16th

7  Street and that Allen was upset that he was going to

8  get blamed for the shooting.

9          Davis would testify that Allen yelled at

10 Lamarius that you ain't got to be over there.  The

11 people over there think it's me.  The argument became

12 so heated that Davis made them both leave his

13 grandmother's house.

14          10.  Davis would testify that he was shown a

15 letter addressed to him at the Cook County Jail, which

16 he would identify as attached as affidavit Exhibit C to

17 Allen's post-conviction petition.

18          Davis would testify that it was written by

19 Lamarius, which he could tell from the handwriting, and

20 that it had Lamarius' name and address on the envelope.

21          Davis would testify that he is familiar with

22 the Lamarius' handwriting and signature from other

23 letters and from knowing him for so long.

24          11.  Davis would testify that while he was in

— **19** —

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1   the Cook County Department of Corrections awaiting

2   retrial on his gun case, he began providing information

3   to and cooperating with the Cook County Sheriff's

4   Office within the jail.

5           12.   Davis would further testify that he

6   provided information and cooperated in numerous

7   investigations both for the Cook County sheriff and the

8   Cook County State's Attorney's Office.

9           Davis testified at two trials on the State's

10  behalf.  Davis also testified at a reliability hearing

11  before Judge Ursula Walowski was found to be credible

12  and reliable.  So stipulated.

13      MS. WALLS:  So stipulated.

14      THE COURT:  And we did have an issues discussion

15  that I will go into a little bit further during the

16  course of the proceedings, but with respect to this

17  affidavit, it was related to me that Mr. Davis had also

18  provided a false affidavit on a different

19  post-conviction and that was information unknown to the

20  State at the time and unknown to Judge Walowski before

21  she made any finding of credibility or reliability, is

22  that correct?

23      MS. WALLS:  In our investigation we did reveal an

24  affidavit from Quentin Davis in another case in another

—20—

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
 1   courtroom.  Speaking with him in an interview on that,

 2   he indicated that he, in fact, signed that and it was

 3   not true and he takes responsibility for signing that

 4   affidavit and not being true.

 5        THE COURT:  Okay.  All right.  Go ahead, Counsel.

 6        MR. BLEGEN:  Judge, we are going to call Latanya

 7   Fleming who I will get.

 8        THE COURT:  Good afternoon, ma'am.  Can you please

 9   raise your right hand for me.

10              (WHEREUPON, the witness was duly

11               sworn.)

12        THE COURT:  Thank you.  Please take a seat.  If

13   you are comfortable doing so, you can take your mask

14   off.  You are behind a Plexiglass screen.  While you

15   are testifying, I just ask if you can keep your voice

16   up if you could.  Go ahead, sir.

17                    LATANYA FLEMING,

18   called as a witness herein, having been first duly

19   sworn, was examined and testified as follows:

20                    DIRECT EXAMINATION

21   BY MR. BLEGEN:

22        Q.   Ma'am, could you please state your name and

23   spell your first and last name for the court reporter?

24        A.   Latanya Fleming, L-A-T-A-N-Y-A,
```

**Robinson 001250**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
 1   F-L-E-M-I-N-G.

 2        Q.    How old are you, Ms. Fleming?

 3        A.    50.

 4        Q.    What do you do for a living?

 5        A.    I work for CPS and Home Depot.

 6        Q.    And how long have you had those two jobs

 7   approximately?

 8        A.    About seven years.

 9        Q.    Do you have any children?

10        A.    Yes.

11        Q.    Who are your children?

12        A.    You want their names?

13        Q.    Sure.

14        A.    Allen Robinson and Precious Robinson.

15        Q.    And is Allen Robinson the petitioner in this

16   case here today?

17        A.    I am sorry?

18        Q.    Is Allen Robinson the petitioner in the case

19   you are here to testify about today?

20        A.    Yes.

21        Q.    Can you point to him and describe something

22   he is wearing?

23        THE COURT:  You will stipulate to the ID, Counsel?

24        MS. WALLS:  Yes.
```

—22—

**Robinson 001251**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1          THE COURT:  All right.  That will be accepted.

2          MR. BLEGEN:  Thank you, Judge.

3          THE WITNESS:  The blue shirt on.

4   BY MR. BLEGEN:

5      Q.    Ma'am, where do you live generally, meaning

6   what city do you live in?

7      A.    Chicago.

8      Q.    Let me direct your attention to December 3rd

9   of 2008.  Do you recall where you were working at that

10  time?

11     A.    Yes.

12     Q.    Where?

13     A.    Dominick's.

14     Q.    Dominick's grocery store?

15     A.    Yes, Dominick's grocery store.

16     Q.    Were you working at a particular store?

17     A.    Yes.

18     Q.    Which one?

19     A.    On Madison and Halsted.

20     Q.    And do you recall what your schedule for work

21  was that day, December 3rd of 2008?

22     A.    Yes.

23     Q.    What was your schedule?

24     A.    2:30 to 9:00.

—23—

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1     Q.    P.m.?

2     A.    P.m., yes.

3     Q.    How did you get to work that day?

4     A.    My son Allen Robinson dropped me off.

5     THE COURT:  I am sorry, could you say that again?

6  I couldn't hear you.

7     THE WITNESS:  My son Allen Robinson dropped me off

8  to work.

9  BY MR. BLEGEN:

10     Q.    And approximately what time did he drop you

11  off?

12     A.    About 2:30 or 2:25.

13     Q.    And what vehicle did he drop you off in?

14     A.    In my car.

15     Q.    Do you recall what kind of car you had at the

16  time?

17     A.    Yes.

18     Q.    What kind of car?

19     A.    A red Monte Carlo.

20     Q.    And how were you to get home from work?

21     A.    Allen, my son, Allen Robinson was going to

22  pick me up.

23     Q.    What time was he supposed to come pick you

24  up?

—24—

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
 1          A.    9:00 o'clock.

 2          Q.    And did Allen drop you off at approximately

 3   2:25 on that day?

 4          A.    Yes.

 5          Q.    And did he come to pick you up at the end of

 6   your shift?

 7          A.    Yes.

 8          Q.    Tell us what happened.

 9          A.    Well, I was scheduled to get off at 9:00, but

10   I had to stay because my manager needed me to stay, and

11   I stayed till like 10:30.

12          Q.    When did you next see Allen after he dropped

13   you off at approximately 2:25 in the afternoon?

14          A.    When he came to pick me up.

15          Q.    What time was that?

16          A.    At 9:00 o'clock.

17          Q.    And did the two of you have an interaction?

18          A.    Yes.

19          Q.    What did you say to him and what did he say

20   to you?

21          A.    When he came into the store and I told him I

22   had to end up staying till like later 10:30.

23          Q.    And did you tell him to do anything?

24          A.    Yes.
```

**Robinson 001254**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1      Q.    What did you tell him to do?

2      A.    I asked him to just wait in the car.

3      Q.    Wait in the car where?

4      A.    Wait in the parking lot.

5      Q.    And I take it did you work until your shift

6  ended at 10:30?

7      A.    Yes.

8      Q.    Where was Allen when your shift ended?

9      A.    In the car.

10     Q.    In the parking lot?

11     A.    In the parking lot.

12     Q.    In the Dominick's parking lot?

13     A.    Yes.

14     Q.    After you learned that Allen was charged with

15  a crime that occurred on December 3rd of 2008, did you

16  do anything related to your work records?

17     A.    Yes.

18     Q.    What did you do?

19     A.    I asked my manager to printout my schedule.

20     Q.    And why did you do that?

21     A.    Because it's something I needed.

22     Q.    Related to Allen's case?

23     A.    Yes.

24     Q.    Let me show you what's part of Allen's

Robinson 001255

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1  post-conviction petition, Exhibit D and see if you

2  recognize these documents.  Do you recognize Exhibit D,

3  your affidavit?

4       A.    Yes.

5       Q.    And the next page of Exhibit D, do you

6  recognize that document?

7       A.    Yes.

8       Q.    Okay.  What is it?

9       A.    That's the timesheet.

10      Q.    All right.  And is that the timesheet that

11 your manager printed out for you?

12      A.    Yes.

13      Q.    Does the timesheet indicate on it when it was

14 printed out?

15      A.    Yes.

16      Q.    And when was it printed out?

17      A.    March 30th, 2009.

18      Q.    And is that noted in the upper left corner of

19 that of the first page of the timecard report?

20      A.    Yes.

21      Q.    And does the timecard report indicate your

22 work schedule, the hours you actually worked on that

23 day?

24      A.    Yes.

Robinson 001256

FILED DATE: 10/14/2022 1:16 PM 09CR0642201

1     Q.    And do you see a reference a little bit it's

2  marked out but it's in the center and it's 12/03/08?

3     A.    Yes.

4     Q.    Do you see that?  And when does it indicate

5  you started working on that day?

6     A.    2:30.

7     Q.    Does it actually say -- is it in military

8  time on the timesheet?

9     A.    Yes.

10    Q.    So it says 14:30?

11    A.    Yes.

12    Q.    So it's got REG, do you know what stands for?

13    A.    Regular schedule.

14    Q.    And then the next one --

15    THE COURT:  Hold on one second.  REG, regular

16  schedule.

17    THE WITNESS:  Yes.

18    THE COURT:  Thank you.

19  BY MR. BLEGEN:

20    Q.    The next line down says BRK?

21    A.    Yes.

22    Q.    What does that mean?

23    A.    Break.

24    Q.    So does that mean you were on break at

Robinson 001257

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

```
 1   certain times?

 2       A.    Yes.

 3       Q.    And at the bottom when does it indicate that

 4   your shift ended that day?

 5       A.    10:12 -- I am sorry, 10:30.

 6       Q.    But is it in military time as 22:30?

 7       A.    Yes.

 8       Q.    The third page of exhibits behind your

 9   affidavit, do you recognize the third page of exhibits?

10       A.    Yes.

11       Q.    Is that a document entitled Weekly Work

12   Schedule?

13       A.    Yes.

14       Q.    What is that document?

15       A.    That's the schedule that's printed out

16   weekly.

17       Q.    And is that the schedule that you were

18   supposed to work on December 3rd of 2008?

19       A.    Yes.

20       Q.    Who printed this document for you, do you

21   recall?

22       A.    Yes, my manager.

23       Q.    And do you recall whether your manager

24   printed it at the same time as the other document was
```

Robinson 001258

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1    printed?

2         A.    Yes.

3         Q.    So you think it was also printed on

4    March 30th of 2009?

5         A.    Yes.

6         Q.    And you can see here that there is a

7    reference to December 3rd of 2008?

8         A.    Yes.

9         Q.    Do you see that?  And then do you see your

10   name about halfway down the sheet?

11        A.    Yes.

12        Q.    When does it indicate that your hours were

13   supposed to be on that day?

14        A.    2:30 to 9:00 p.m.

15        Q.    And that was the schedule that got amended

16   when your manager asked you to stay late that day?

17        A.    Yes.

18        Q.    Did you have interactions with Allen's lawyer

19   leading up to his trial in this case?

20        A.    Yes.

21        Q.    How many times do you think you spoke to the

22   lawyer?

23        A.    I don't recall.

24        Q.    More than once?

—30—

**Robinson 001259**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1       A.    Yes, more than once.

2       Q.    More than five times?

3       A.    More than five.

4       Q.    Did you present these records from your work

5    to Allen's lawyer?

6       A.    Yes, I did.

7       Q.    Prior to Allen's trial?

8       A.    Yes.

9       Q.    Did you discuss with the lawyer prior to

10   trial your statements about Allen coming to pick you up

11   at work and you having to stay later, et cetera?

12      A.    Yes.

13      Q.    What you just told us here today?

14      A.    I brought it up to him.

15      Q.    Do you recall what his response was?

16      A.    That he was just -- I just gave it to him,

17   and he was going to submit it, you know, into his, you

18   know.

19      THE COURT:  I am sorry, you gave it to him and

20   then --

21      THE WITNESS:  Just gave it to him, that's it, yes.

22      THE COURT:  About submitting, I missed that.

23   BY MR. BLEGEN:

24      Q.    He was going to submit it did you say?

—31—

Robinson 001260

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1      A.    Well, me just giving it to him so he was

2  taking a look at the documents.  You know, I presented

3  it to him.

4      Q.    Do you recall if he said anything specific to

5  you about what he was going to do with them?

6      A.    No.

7      Q.    Do you have any understanding as to why you

8  were not called at Allen Robinson's trial?

9      A.    No.

10     Q.    Were you present during the trial?

11     A.    Yes.

12     Q.    Did you have discussions with the lawyer

13 during the trial?

14     A.    As to?

15     Q.    Did he discuss with you why you weren't being

16 called?

17     A.    No.

18     Q.    Let me show you what's attached to Allen

19 Robinson's petition as Exhibit J.  I will just take it

20 up.  You can look through the couple of pages and just

21 let me know if you recognize this exhibit.

22     A.    Yes.

23     Q.    And what is it?

24     A.    A letter from Lamarius Robinson.

**Robinson 001261**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1    Q.    And is this a letter from Lamarius that you

2  received sometime after the trial was over?

3    A.    Yes.

4    Q.    Okay.  And is the letter essentially ask you

5  to forward this letter to Allen Robinson?

6    A.    Yes.

7    Q.    If you had been called to testify at Allen's

8  original trial, would you have testified consistently

9  with what you said here today?

10    A.    Yes.

11    MR. BLEGEN:  Can I have just have a moment, Judge?

12    THE COURT:  Sure.

13    MR. BLEGEN:  That's all the questions we have.

14    THE COURT:  Any cross?

15    MS. WALLS:  No, Judge.

16    THE COURT:  All right.  You may step down, ma'am.

17  Thank you.  Give me one second.

18    MR. BLEGEN:  Judge, any issue with Mr. Robinson's

19  mother remaining in the courtroom while the hearing

20  proceedings?

21    THE COURT:  State, do you have any objection on

22  the motion to exclude or are you all right with the

23  defendant's mom staying in the courtroom?

24    MS. WALLS:  No objections.

—33—

**Robinson 001262**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1      THE COURT:  All right.  She may remain in the

2  courtroom.

3      MR. BLEGEN:  Thank you, Judge.

4      THE COURT:  I have a question for the parties

5  because I can't recall and you've reviewed the record

6  of the trial more recently than the Court has.  I

7  generally, although I can't say I do it in every case,

8  but I generally go through the answer to discovery

9  that's on file, be it, you know, if it's beyond a

10  reasonable doubt, and I have a colloquy with the

11  defendant to make certain there is no alibi defense

12  they want to file or any other defense, and I view

13  those to witnesses.

14          Do either of you have a recollection, State

15  or Defense, as to whether that colloquy was in the

16  record of the trial proceedings?

17      MR. GARVEY:  Not to my recollection.

18      MS. WALLS:  No, Judge.  The only note that I have

19  was from the CLR, which was the actual answer that was

20  filed but nothing indicating that you spoke with the

21  defendant.

22      THE COURT:  But the review -- sometimes I don't

23  put it in my notes but reviewing the record, nobody saw

24  that.  It may not have happened in this case, but I

—34—

FILED DATE: 10/14/2022 1:16 PM 09CR0642201

1   generally attempt to do that so I just wanted to know

2   if you had come across it.

3         All right.  Anything further?

4     MR. BLEGEN:  Judge, we will call Mr. Robinson.

5     THE COURT:  All right.  Mr. Robinson, come on up.

6   Mr. Robinson, I am going to ask you before you sit down

7   to raise your right hand.

8           (WHEREUPON, the witness was duly

9            sworn.)

10     THE COURT:  Thank you.  You can take a seat, sir.

11         When you're ready, Counsel, you can go ahead.

12             ALLEN ROBINSON,

13   called as a witness herein, having been first duly

14   sworn, was examined and testified as follows:

15            DIRECT EXAMINATION

16   BY MR. BLEGEN:

17     Q.   Sir, could you please state and spell your

18   first and last name for the court reporter?

19     A.   Allen Robinson, A-L-L-E-N, R-O-B-I-N-S-O-N.

20     Q.   And how old are you?

21     A.   34.

22     Q.   And you currently reside in the Department of

23   Corrections?

24     A.   Yes, sir.

Robinson 001264

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1    Q.    Prior to the trial of your case, did you tell
2  or ask your trial counsel to speak with any potential
3  witnesses?
4    A.    Yes.
5    Q.    Did you ask your trial counsel to speak with
6  Jenee Moreland?
7    A.    Yes.
8    Q.    What did you tell your trial counsel as best
9  you can recall why Ms. Moreland would be an important
10  witness?
11    A.    Because she was in the car with Lamarius
12  pretty much after he did it.
13    Q.    Did you tell your counsel that Lamarius had
14  confessed to Ms. Moreland?
15    A.    Yes.
16    Q.    And how did you know that information?
17    A.    Jenee told me.
18    Q.    Did you ask your trial counsel to speak with
19  Quentin Davis?
20    A.    Yes, I did.
21    Q.    Why?
22    A.    Because he was with Lamarius pretty much
23  after he did it and confessed to him that he did it.
24    Q.    Was there an occasion where you and Lamarius

— 36 —

**Robinson 001265**

FILED DATE: 10/14/2022 1:16 PM    09CR0642201

```
 1    got in an argument at Quentin's grandmother's home?

 2         A.    Yes.

 3         Q.    And was Quentin present for that?

 4         A.    Yes.

 5         Q.    Did he essentially have to put the two of you

 6    out of the house?

 7         A.    Yes.

 8         Q.    I take it you are familiar with the letter

 9    that is signed at least in Lamarius Robinson's name

10    there is a spot where he said I licked this so my DNA

11    would be on it.  Do you know how your lawyer came to

12    get that letter?

13         A.    Yes.

14         Q.    How?

15         A.    I had called him and told him I needed to see

16    him so he came to Cook County and seen me and I gave

17    him a letter.

18         Q.    And maybe this wasn't necessary but did you

19    explain the significance of the letter to your lawyer?

20         A.    Yeah, he read it.

21         Q.    Did you indicate whether anybody was familiar

22    with Lamarius' handwriting?

23         A.    Yes.

24         Q.    To your lawyer?
```

**Robinson 001266**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1     A.    Yes.

2     Q.    Who?

3     A.    I told him that Quentin Davis and Jenee

4 Moreland.

5     Q.    What about yourself, did you tell him?

6     A.    Yeah, myself too.

7     THE COURT:  Just so I'm clear, you talked to

8 Lamarius, and you told Lamarius to come and see you.

9     THE WITNESS:  No.

10    THE COURT:  You told your lawyer to come and see

11 you?

12    THE WITNESS:  My lawyer came to see me.

13    THE COURT:  Okay.  That Lamarius had mailed the

14 letter to you.

15    THE WITNESS:  Mailed the letter to me, yes.

16    THE COURT:  All right.

17    MR. BLEGEN:  Thank you, Judge.  I am sorry if that

18 was confusing.

19    THE COURT:  All right.

20 BY MR. BLEGEN:

21    Q.    Just so the record is clear, it's your

22 understanding that Lamarius sent the letter to you

23 while you were in the County Jail, correct?

24    A.    Yes.

—38—

FILED DATE: 10/14/2022 1:16 PM 09CR0642201

```
1      Q.    And then you asked your lawyer to come to see

2  you so you could talk to him about the letter?

3      A.    Yes.

4      Q.    And did you get a copy of the letter to your

5  lawyer?

6      A.    I gave it to him.  I gave him the original

7  copy.

8      Q.    Did you tell your lawyer at the time anything

9  about your mother and testimony that she could provide?

10     A.    Yes.

11     Q.    What did you tell your lawyer?

12     A.    I told him that my mother knew that I was at

13 her job at the time because I had to pick her up at

14 9:00 o'clock.  I went in and told her that I was

15 outside, and she told me she had to stay a little

16 longer and I waited outside for her.

17     Q.    So there came a point in time in your

18 trial -- let me start over.

19         Did there come a point in time in your trial

20 where you realized that your lawyer was not going to

21 call any of these witnesses that you suggested to him?

22     A.    Yes, and I was kind of upset.  He said that

23 he didn't need to call them because he will win the

24 case without them.
```

—**39**—

FILED DATE: 10/14/2022 1:16 PM  09CR0642201

1     Q.   Did you and your lawyer have any discussions

2  about the letter from Lamarius Robinson, the one where

3  he circles a spot and says he licked it after Lamarius

4  took the Fifth Amendment, do you recall that first off?

5     A.   I kind of recall that.

6     Q.   Did you have any discussions with your lawyer

7  after that?

8     A.   You talking about after the trial?

9     Q.   Let me start over.  Terrible questions.

10     Do you recall at a point in your trial it

11  became clear that Lamarius Robinson was going to not

12  testify about that letter?

13     A.   Yeah, I did.

14     Q.   And did you have a discussion with your

15  lawyer after it became clear that Lamarius was not

16  going to testify about the letter?

17     A.   I told him -- like I really don't understand

18  what you are asking.

19     THE COURT:  I think what he's saying is, you

20  remember being in court and Lamarius was here.

21  Everybody saw him.

22     THE WITNESS:  Yeah.

23     THE COURT:  And he, in fact, took the stand but

24  not in front of the jury.

**Robinson 001269**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1          THE WITNESS:  Yes, I remember.

2          THE COURT:  He got a lawyer appointed to him

3    because the allegation was he might have been involved

4    in this?

5          THE WITNESS:  Yes.

6          THE COURT:  In the murder himself.

7          THE WITNESS:  Yes.

8          THE COURT:  Okay.  So when he took the Fifth

9    Amendment or he wasn't going to testify -- well, first

10   of all, on the stand he did say, did he not, that he

11   didn't do the murder, right?  Did he say that or am I

12   wrong or he didn't write the letter?

13         MS. WALLS:  You asked him directly, Lamarius,

14   directly if he wrote the letter and he said no.

15         THE COURT:  Okay.  That's what I mean.

16              So you heard Lamarius say he didn't write the

17   letter, right?

18         THE WITNESS:  Yes.

19         THE COURT:  And then he wasn't going to testify,

20   so your lawyer wants to know, once that went down in

21   the courtroom, what did you and your lawyer talk about

22   with respect to Lamarius?  Is that what you're asking

23   him?

24         MR. BLEGEN:  Yes.  Maybe I can be more pointed

Robinson 001270

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1    about it.

2         THE COURT:  Okay.

3    BY MR. BLEGEN:

4         Q.    At that time did your lawyer ask you, do you

5    know anyone who knows his handwriting?

6         A.    Yes.

7         Q.    And what did you tell him?

8         A.    I told him Quentin Davis and Jenee Moreland,

9    and I knew it too.  I knew that was his handwriting.

10        Q.    Did you ever get an explanation from your

11   lawyer as to why he didn't call any of those people to

12   authenticate the handwriting?

13        A.    No.

14        MR. BLEGEN:  That's all, Judge.

15        THE COURT:  Any cross-examination?

16        MS. WALLS:  No, Judge.

17        THE COURT:  All right.  You may step down.

18             Any further witnesses for the defense?

19        MR. BLEGEN:  No other witnesses, Judge.

20        THE COURT:  So the defense is resting on the

21   petition?

22        MR. BLEGEN:  Before we rest, you may have said

23   that they were admitted.  I don't recall but can we

24   move to admit all of the exhibits attached to the

**42**

FILED DATE: 10/14/2022 1:16 PM    09CR0642201

1  petition and to supplements?

2       THE COURT:  Counsel for the record for the State,

3  you've got no objection to these items being admitted,

4  is that correct?

5       MS. WALLS:  No, Judge.  No objection.

6       THE COURT:  All right.  With that, you are

7  resting?

8       MR. BLEGEN:  Yes.

9       THE COURT:  State, I presume from our earlier

10  discussions that you are not putting forth any evidence

11  on your end, is that correct?

12      MS. WALLS:  That's correct, Judge.  On the issue

13  of ineffective assistance of trial counsel, we are not

14  opposing the post-conviction petition.  I have called

15  trial counsel several times, he is no longer working.

16  He is retired and living out of the state.  He's never

17  returned my phone calls.

18      THE COURT:  So you -- I would say it's highly

19  unusual in a post-conviction to not have the input of

20  the trial attorney.  It's highly regular to have an

21  ineffective assistance of counsel issue.  That's not

22  unusual in a post-conviction proceeding, but what's

23  highly unusual is not to have the attorney of record

24  weigh in in some fashion.  So you've never been able to

Robinson 001272

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1    speak with him at all?

2         MS. WALLS:  No, Judge.

3         THE COURT:  Did he refuse to talk to you or he

4    just never returned a phone call?

5         MS. WALLS:  He's never returned my phone calls,

6    Judge.  I never spoke to him.

7         THE COURT:  Were any investigators ever sent to

8    try and find him?

9         MS. WALLS:  We know where he is, Judge.  It's not

10   a matter of us not knowing where he is.  He's never

11   cooperated with our office on this.  We have no

12   opposition on the ineffectiveness claims with regards

13   to that.

14            I will also point out the location of where

15   Ms. Fleming works, that Dominick's, is seven and a half

16   miles from the location of the shooting -- sorry, 7.8

17   miles from the location of the shooting.  The

18   information in the post-conviction petition, there is

19   an affidavit that has been entered from the co-worker,

20   Ms. Ethel Lewis that has also corroborated what Ms.

21   Fleming has said that her son Allen Robinson was there

22   at 9:00 o'clock to pick her up, which puts Allen

23   Robinson at that location almost eight miles away from

24   the shooting at 9:00 o'clock.  According to the

**44**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1    reports, the shooting occurred at 9:10 p.m.

2         THE COURT:  All right.  Thank you, Counsel, and I

3    also want to talk a little bit beyond just strict

4    ineffective assistance of counsel issue, and that is

5    that this case obviously is a very serious case.  All

6    post-convictions are, but you can't get a more serious

7    case than first degree murder without question.  And

8    this was in your Conviction Integrity Unit.  The

9    defense had presented these allegations specifically

10   the Lamarius -- I will call it the Lamarius letter

11   allegations, the defense had identified Lamarius as

12   their suspect and that was in your unit for a very

13   significant period of time.  As I said, I think

14   22 months was the time frame that it was there, and

15   throughout the pendency of that time, there was related

16   to the Court in any event on the record and I will go

17   through it, while it was in your CIU Unit and that's

18   purported to be at least as it's been explained to the

19   Court, it's walled off from the Post-Conviction Unit,

20   is that an accurate statement?

21        MS. WALLS:  Yes, they look at different issues.

22        THE COURT:  They look at whether there is an

23   actual innocence claim, and that's separate and apart

24   from you proceeding on a post-conviction, correct?

**Robinson 001274**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1     MS. WALLS:  Correct.  Yes.

2     THE COURT:  And I'm showing that that came in, it

3  was filed on 7/10 of 2014, and the case went to the

4  Conviction Integrity Unit about six months later.  It

5  was just with the regular Post-Conviction Unit, and

6  then it was sent on 1/15 of '15 to the Conviction

7  Integrity Unit.  Then there was a filing of the

8  supplemental petition, but this was all with the CIU

9  Unit appearing in court and weighing in.

10        The State was looking into as early as 12/8

11  of '15, the DNA on a letter from Lamarius Robinson, and

12  then we went on holding it over for DNA updates

13  3/24/16, DNA updates, witness interviews, phone record

14  investigation, at least that's the notes what was

15  placed of record.

16        On 5/12 of '16, I was told biology was done.

17  There had been a DNA analyst assigned.  Update on a

18  police witness that they were attempting to interview.

19  Then I was told on 7/28 of '16 the CIU Unit

20  investigation was complete, and we had another few

21  court dates for 4-17 materials and one last interview

22  it sounded like and then on 11/10 of '16, the CIU Unit

23  after looking at the letter with Lamarius, which is at

24  issue here, sent it back to the Post-Conviction Unit

Robinson 001275

FILED DATE: 10/14/2022 1:16 PM 09CR0642201

1   and their finding, which is obviously the Court is not

2   bound by, but their finding was no actual innocence was

3   involved after that what appeared to be an extensive

4   investigation.

5        MS. WALLS:  Well, Judge, I don't know if on that

6   last court date that was stated in court according to

7   the half sheet ASA Barbara Plitz was in court on that

8   day.  She was from the Post-Conviction Unit.  Just

9   according to the half sheet, it indicates that the PC

10  was given back to the Post-Conviction Unit.

11       I don't know if anyone from the CIU Unit was

12  present in court on that day or made any findings on

13  the record as to their investigation.

14       THE COURT:  Well, presumably you would agree with

15  me that regardless of what exact words came out of

16  somebody's mouth, that when the CIU Unit completes an

17  investigation and puts it back in your lap, they have

18  not found actual innocence, is that accurate?

19       MS. WALLS:  It could be, Judge.  I don't know what

20  their basis was for giving it back to us.  I did not

21  get the case until after that.  I don't know what their

22  basis was to giving it back to us but --

23       THE COURT:  Let me ask the defense then.  If you

24  are not going to give me that, I will ask the defense.

**47**

**Robinson 001276**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1          Ms. Garvey, I presume that you were in close

2   contact with the attorney on the CIU Unit during all

3   these dates as they were pursuing the investigation,

4   you requested of Lamarius' letter, I will call it,

5   correct?  And what was their position when they told

6   you they are giving it back to the regular

7   Post-Conviction Unit?

8      MS. GARVEY:  First of all, I didn't request CI to

9   get involved in this case.

10      THE COURT:  Okay.  Thank you for that correction.

11      MS. GARVEY:  It was early on in the formation of

12   that Unit, and apparently they were taking any

13   post-conviction at that time that alleged actual

14   innocence so I did not ask them to get involved.

15      THE COURT:  All right.  Thanks for that

16   correction.

17      MR. GARVEY:  And at the end after they had

18   interviewed all of my witnesses, I was merely told,

19   yeah, we are not doing anything in this case.

20      THE COURT:  Did you as a lawyer who practices in

21   this field, did you take that to mean -- although I am

22   sure you disagreed with it strongly -- but did you take

23   that to mean that their finding was of no actual

24   innocence, and it was just going to go back to the

**48**

FILED DATE: 10/14/2022 1:16 PM 09CR0642201

1    regular PC route and you could fight it out in court?

2         MR. GARVEY:  My understanding was that their

3    definition of actual innocence is a much higher

4    standard.  Basically I would have had to have video

5    evidence of Mr. Robinson at the Dominick's at the time

6    of the shooting in order for me to convince them that

7    he was actually innocent.

8              A third-party confession is not going to meet

9    their requirements.  They are going to look for DNA.

10   They are going to look for videos of somebody in a

11   completely different country or location.  That's my

12   professional opinion of how they determine actual

13   innocence.  So I don't take that to mean that he is not

14   actually innocent that they concluded.

15        THE COURT:  Well, I know you're not agreeing --

16   let's be clear, I know that you are not in agreement

17   with whatever their assessment was most certainly

18   but --

19        MR. GARVEY:  My position is their standard for

20   actual innocence is far and above anything that most

21   lawyers can meet.

22        THE COURT:  All right.  And what additional -- so

23   at that point it went back to the Post-Conviction Unit

24   which was defending the case and now that's changed.

**49**

**Robinson 001278**

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1          What else has changed since it went from the

2   CIU Unit back to the regular Post-Conviction Unit,

3   Ms. Walls, what's changed?

4        MS. WALLS:  Judge, we have done additional

5   investigation.

6        THE COURT:  Who have you interviewed and found out

7   information that the CIU Unit didn't have?  What

8   happened?

9        MS. WALLS:  Judge, I'm not at liberty to put that

10  on the record.

11       THE COURT:  What part are you're not at liberty to

12  put on the record?

13       MS. WALLS:  I will not go into the extent and the

14  results of our investigation on the record, your Honor.

15          The actual innocence claim is with regards to

16  Oscar Russell that's currently pending.  The

17  information in the hearing that you received today is

18  all with regards to ineffective assistance of trial

19  counsel.  And as your Honor will see when you read the

20  exhibits, the DNA testing is in those exhibits and did

21  indicate that Lamarius Robinson was a contributor to

22  the letter.

23       THE COURT:  Okay.  All right.  I will take it

24  under advisement and go through your exhibits.

—50—

**Robinson 001279**

FILED DATE: 10/14/2022 1:16 PM 09CR0642201

```
 1            Are you free on Monday?  There is no
 2   additional record, I take it, that you wish to make,
 3   State?
 4        MS. WALLS:  No, Judge.
 5        MR. BLEGEN:  Judge, we will make ourselves
 6   available.
 7        THE COURT:  Monday or Tuesday.
 8        MR. BLEGEN:  Let's do it Monday.  I don't know if
 9   both of us will be able to be here.
10        THE COURT:  We could do any day next week.  I just
11   don't need an incredible amount of time is my point.
12        MS. WALLS:  Tuesday.
13        MR. BLEGEN:  Actually Monday is better for me.
14   Unfortunately Tuesday I'm tied up in the morning.
15        THE COURT:  We can do it in the afternoon.  We can
16   do it at 11:00, 12:00, 1:00.
17        MS. WALLS:  I am fine.  I can do Monday afternoon
18   or Tuesday morning or even Thursday after 11:00.
19        MR. BLEGEN:  Can we do early afternoon on Monday?
20        THE COURT:  Pick a time, yes.
21        MR. BLEGEN:  11:00.
22        THE COURT:  All right.  Monday at 11:00.  All
23   right.  By agreement held on call, Monday's date is
24   5/2.
```

Robinson 001280

FILED DATE: 10/14/2022 1:16 PM   09CR0642201

1          As to IDOC, if we write the date May 2nd on

2    the paperwork that you brought with him, the mittimus,

3    will that bring him to us or does there have to be some

4    other phone call made?

5         DEPUTY SHERIFF:  That should bring him.

6         THE COURT:  Okay.  All right.  We'll see everybody

7    at Monday at 11:00.

8                   (Which were all the proceedings had

9                    in the above-entitled cause.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

— **52** —

**Robinson 001281**

FILED DATE: 10/14/2022 1:16 PM  09CR0642201

```
 1   STATE OF ILLINOIS  )
                        )
 2   COUNTY OF C O O K  )

 3
         IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 4            COUNTY DEPARTMENT - CRIMINAL DIVISION

 5           I, CATRICE M. PRINCE, CSR No. 084-3765

 6   an Official Court Reporter for the Circuit Court

 7   of Cook County, County Department, Criminal

 8   Division, do hereby certify that I reported in

 9   shorthand the proceedings had at the hearing in

10   the aforementioned cause; that I thereafter caused

11   the foregoing to be transcribed into typewriting,

12   which I hereby certify to be a true and accurate

13   transcript taken to the best of my ability of the

14   Report of Proceedings had before the HONORABLE

15   MARY M. BROSNAHAN, Judge of said court.

16

17

18   _____

19            Official Court Reporter
              Illinois CSR License No. 084-3765
20

21

22

23   Dated this 18th day of August, 2022.

24
```

—53—

Robinson 001282